JOHN J. SANSONE, County Counsel (State Bar No. 103060)
County of San Diego
By MORRIS G. HILL, Senior Deputy (State Bar No. 97621)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-4877;  Fax: (619) 531-6005
E-mail: morris.hill@sdcounty.ca.gov

Attorneys for Defendants Bonnie Dumanis and Laura Gunn (apparently also sued as
    "District Attorney's Office")


# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| CYNTHIA SOMMER,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA;<br>ROB TERWILLIGER; RICK RENDON;<br>MARK RIDLEY; S.D. ADAMS; JOSE<br>CENTENO; COUNTY OF SAN DIEGO<br>MEDICAL EXAMINER'S OFFICE;<br>GLENN N. WAGNER; COUNTY OF<br>SAN DIEGO DISTRICT ATTORNEY'S<br>OFFICE; BONNIE DUMANIS; LAURA<br>GUNN; and DOES 1 through 100,<br>inclusive,<br><br>    Defendants. | No. 09-cv-2093-WQH(RBB)<br><br>Date:  November 30, 2009<br>Time:  11:00 a.m.<br>Dept.:  4 - Courtroom of the<br>Honorable William Q. Hayes<br>Trial Date:  None<br><br>**[NO ORAL ARGUMENT UNLESS<br>REQUESTED BY THE COURT]** |

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS COMPLAINT ON BEHALF OF DEFENDANTS
BONNIE DUMANIS AND LAURA GUNN (APPARENTLY ALSO SUED AS
"DISTRICT ATTORNEY'S OFFICE")

---

# TOPICAL INDEX

**Page**

TABLE OF AUTHORITIES ................................................................-iii-

I     INTRODUCTION ......................................................................1

II    PLAINTIFF'S ALLEGATIONS AGAINST DUMANIS AND GUNN .......2

III   STANDARD FOR MOTION TO DISMISS .................................5

IV    STANDARD FOR PROSECUTORIAL IMMUNITY ..................................7

      A.    Relevance Of Prosecutorial Immunity In This Case ...........................7

            1. Federal Individual Capacity Liability .................................7

            2. Official Capacity Liability Under Federal Law ..............................9

            3. California Prosecutorial Immunity .................................10

V     REQUEST FOR JUDICIAL NOTICE .........................................11

VI    ARGUMENT ........................................................12

      A.    Devereaux Claim .......................................................12

            1. Authority ......................................................12

            2. Plaintiff Has Not Alleged a Devereaux Claim .................................12

      B.    Liability for Non-Disclosure of Exculpatory Evidence ......................14

            1. Authority .......................................................14

            2. Plaintiff Has Not Alleged A Youngblood Claim ............................15

**TOPICAL INDEX**
**(Cont'd)**

**Page**

C.   Federal Injunction Against State Prosecution ......................................15

    1.  Authority ..........................................................................................15

    2.  Plaintiff Has Not Alleged Bobbitt Standing ...................................15

D.   Federal Injunction Against Law Enforcement Activities ...................15

    1.  Authority ..........................................................................................15

    2.  Plaintiff Lacks Standing To Enjoin The Criminal Justice System ..16

E.   Effect Of Arrest Warrant .....................................................................18

F.   Claims Under California Law Are Barred By Failure To Present
    A Timely Administrative Claim ...........................................................18

    1.  Authority ..........................................................................................18

    2.  Plaintiff Cannot Allege A California Law Cause Of Action
      Because She Cannot Allege Administrative Claims Compliance ......21

VI   CONCLUSION ...........................................................................................21

# TABLE OF AUTHORITIES

**Page**

Amylou R. v. County of Riverside, 28 Cal.App.4th 1205 (1994) ...................10, 11

Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993) .......................................8

Arizona v. Youngblood, 488 U.S. 51 (1988) ....................................................14, 15

Asgari v. City of Los Angeles, 15 Cal.4th 744 (1997) ...........................................11

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) .........................................................7, 13

Ashelman v. Pope, 793 F.2d 1072 (9th Cir. 1986) .................................................7

Bell Atlantic Corp. v. Twombley, 550 U.S. 544 (2007) ...........................................6

Bishop Paiute Tribe v. County of Inyo, 291 F.3d 549 (9th Cir. 2002) ..................10

Bobbitt v. United Farm Workers' Nat'l Union, 442 U.S. 289 (1979) ...................15

Brady v. Maryland, 373 U.S. 83 (1963) .....................................................9, 13, 14

Broam v. Bogan, 320 F.3d 1023 (9th Cir. 2003) ................................................8, 9

Buckley v. Fitzsimmons, 509 U.S. 259 (1993) ............................................7, 8, 14

Burns v. Reed, 500 U.S. 478 (1991) .......................................................................7

California v. Trombetta, 467 U.S. 479 (1984) .......................................................14

City of San Jose v. Superior Court of Santa Clara County (Lands Unlimited),
      12 Cal.3d 447 (1974) ...................................................................................19

County of Sacramento v. Superior Court of Sacramento County (James),
      42 Cal.App.3d 1135 (1974) .........................................................................19

Cousins v. Lockyer, 568 F.3d 1063 (9th Cir. 2009) ................................................8

# TABLE OF AUTHORITIES
### (Cont'd)

<u>Page</u>

Daniels v. Williams, 474 U.S. 327 (1986) ..............................................13

Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001) ................................12, 13, 14

Falls v. Superior Court, 42 Cal.App.4th 1031 (1996) ............................................10

Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797  (2005) ....................................20

Harden v. S.F. Bay Area Rapid Transit Dist., 215 Cal.App.3d 7 (1989) ..............11

Hicks v. Miranda, 422 U.S. 332 (1975) ..................................................15

Howard Jarvis Taxpayers Assn. v. City of La Habra,
      25 Cal.4th 809 (2001) ................................................................19, 20

Ileto v. Glock, Inc., 349 F.3d 1191 (9th Cir. 2003) ...................................6

Imbler v. Pachtman, 424 U.S. 409 (1976) ................................................7

Jablon v. Dean Witter & Co., 614 F.2d 677 (9th Cir. 1980) ...................................6

Jean v. Collins 221 F.3d 656 (4th Cir. 2000) ...........................................13

Jeffers v. Gomez, 267 F.3d 895 (9th Cir. 2001) ......................................14

Kalina v. Fletcher, 522 U.S. 118 (1997) ...........................................8, 9, 11

Kugler v. Helfant, 421 U.S. 117 (1975) ..................................................16

McCarthy v. Mayo, 827 F.2d 1310 (9th Cir. 1987) ......................................8

McMillian v. Monroe County, Alabama, 520 U.S. 781 (1997) ...............................9

Miller v. Filter, 150 Cal.App.4th 652 (2007) ..........................................10

Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989) ..................................14

# TABLE OF AUTHORITIES
## (Cont'd)

**Page**

Morley v. Walker, 175 F.3d 756 (9th Cir. 1999) ......................................................6

Navarro v. Block, 250 F.3d 729 (9th Cir. 2001) .....................................................5

Norgart v. Upjohn Co., 21 Cal.4th 383 (1999) ....................................................19

Ovando v. City of Los Angeles, 159 Cal.App.4th 42 (2008) ...........................20, 21

Parrino v. FHP, Inc., 146 F.3d 699 (9th Cir. 1988) ..............................................6

Paterson v. City of Los Angeles, 174 Cal.App.4th 1393 (2009) ...........................11

Pitts v. County of Kern, 17 Cal.4th 340 (1998) ...................................................10

Poppell v. City of San Diego, 149 F.3d 951 (9th Cir. 1998) .................................10

Pyle v. Kansas, 317 U.S. 213 (1942) .................................................................12

Rosenthal v. Vogt, 229 Cal.App.3d 69 (1991) .......................................................8

Shaw v. Garrison, 467 F.2d 113 (5th Cir. 1972) .............................................17, 18

Shirk v. Vista Unified School Dist., 42 Cal. 4th 201 (2007) .................................20

State v. Superior Court (Bodde), 32 Cal.4th 1234 (2004) ...............................19, 21

Sullivan v. County of Los Angeles, 12 Cal.3d 710 (1974) .....................................11

Thompson v. Davis, 295 F.3d 890 (9th Cir. 2002) .................................................6

Van de Kamp v. Goldstein, ___ U.S. ___, 129 S. Ct. 855 (2009) ..........................9

Wallace v. Kato, 549 U.S. 384 (2007) ................................................................18

Weiner v. San Diego County, 210 F.3d 1025 (9th Cir. 2000) ...............................10

## TABLE OF AUTHORITIES
### (Cont'd)

**Page**

Wiley v. County of San Diego, 19 Cal.4th 532 (1998) ...........................................20

Williams ex rel. Tabiu v. Gerber Products Co., 523 F.3d 934 (9th Cir. 2008) ........6

Younger v. Harris, 401 U.S. 66 (1971) ...................................................................15

## STATUTES

Federal Rules of Civil Procedure
    Rule 8(a) ...........................................................................................2
    Rule 8(a)(2) .......................................................................................7
    Rule 12(b)(6) .............................................................................2, 5, 6

Federal Rules of Evidence
    Rule 201(d) ..................................................................................11, 12

Government Code
    Section 821.6 ...............................................................................10, 11
    Section 905 ........................................................................................19
    Section 905.2 .....................................................................................19
    Section 911.4, subd. (a) .....................................................................19
    Section 911.4, subd. (a), (b) ..............................................................19
    Section 911.6, subds. (a), (c) ............................................................19
    Section 945.4 .....................................................................................19
    Section 946.6, subd. (a) .....................................................................19

42 United States Code
    Section 1983 ...............................................................................2, 9, 10

1  JOHN J. SANSONE, County Counsel (State Bar No. 103060)
   County of San Diego
2  By MORRIS G. HILL, Senior Deputy (State Bar No. 97621)
   1600 Pacific Highway, Room 355
3  San Diego, California 92101-2469
   Telephone: (619) 531-4877;  Fax: (619) 531-6005
4  E-mail: morris.hill@sdcounty.ca.gov

5  Attorneys for Defendants Bonnie Dumanis and Laura Gunn (apparently also sued as
            "District Attorney's Office")

6

7

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  CYNTHIA SOMMER,                    )   No. 09-cv-2093-WQH(RBB)
                                       )
12            Plaintiff,               )   MEMORANDUM OF POINTS AND
                                       )   AUTHORITIES IN SUPPORT OF
13      v.                             )   MOTION TO DISMISS COMPLAINT ON
                                       )   BEHALF OF DEFENDANTS BONNIE
14  UNITED STATES OF AMERICA;          )   DUMANIS AND LAURA GUNN
    ROB TERWILLIGER; RICK RENDON;      )   (APPARENTLY ALSO SUED AS
15  MARK RIDLEY; S.D. ADAMS; JOSE      )   "DISTRICT ATTORNEY'S OFFICE")
    CENTENO; COUNTY OF SAN DIEGO       )
16  MEDICAL EXAMINER'S OFFICE;         )   Date:  November 30, 2009
    GLENN N. WAGNER; COUNTY OF         )   Time:  11:00 a.m.
17  SAN DIEGO DISTRICT ATTORNEY'S      )   Dept.:  4 - Courtroom of the
    OFFICE; BONNIE DUMANIS; LAURA      )   Honorable William Q. Hayes
18  GUNN; and DOES 1 through 100,      )   Trial Date:  None
    inclusive,                         )
19                                     )   [NO ORAL ARGUMENT UNLESS
              Defendants.              )   REQUESTED BY THE COURT]
20  _____)

21                        I

22                   INTRODUCTION

23      United States Marine Sergeant Todd Sommer died in early 2002.  Some samples of

24  bodily tissues and fluids gathered at his federal Naval autopsy were sent to the Armed

25  Forces Institute of Pathology ("AFIP"), where they were later tested.  The AFIP reported

26  finding arsenic in lethal concentrations in some samples.  There was a lengthy

27  investigation by federal agents.  Almost four years after the death, plaintiff Cynthia

28  Sommer, his widow, was charged with murdering him.  She was convicted in early 2007.

The judge granted plaintiff a new trial. In early 2008, while awaiting the new trial, the San Diego District Attorney's Office caused some untested tissue samples from the autopsy to be sent to a different, non-federal laboratory in Canada for testing. Those tests came back negative. The District Attorney's Office promptly asked the Superior Court to dismiss plaintiff's criminal case without prejudice. That motion was promptly granted, and plaintiff was promptly released from jail.

This motion to dismiss arises under Federal Rules of Civil Procedure, rules 8(a) and 12(b)(6). The moving defendants are District Attorney Bonnie Dumanis and Deputy District Attorney Laura Gunn, who are apparently also being sued under the name "District Attorney's Office." Members of the District Attorney's Office are employees of the County of San Diego, but plaintiff has not named the County as a defendant. The "District Attorney's Office" is the name commonly used to describe the organization administered by the District Attorney, who is an elected official. The "District Attorney's Office" is not a separate legal entity in and of itself.

II

PLAINTIFF'S ALLEGATIONS AGAINST DUMANIS AND GUNN

Paragraph numbers correspond to paragraphs in plaintiff's complaint. The moving defendants are sued individually and in their official capacities under the Fourth, Fifth and Fourteenth Amendments, 42 United States Code section 1983 and the laws "of the State of California." (¶ 6.) Plaintiff alleges diversity jurisdiction because she is a Michigan resident, and more than $75,000 is in controversy. (¶ 9.)

Allegedly Sergeant Todd Sommer "suffered a cardiac arrhythmia and died." (¶ 1.) Allegedly "Dumanis and Gunn knew or should have known during the investigation that preceded Ms. Sommer's arrest that there was no evidence on which to arrest, charge and convict Mrs. Sommer for the death of her husband. They knew or should have known that the AFIP test results were false and that there was no evidence to support their theory that Mrs. Sommer poisoned her husband with arsenic." (¶ 32.) Allegedly "Defendants, and each of them, were consumed with finding any 'evidence' irrespective of its

- 2 -

credibility, to establish probable cause to arrest and convict Mrs. Sommer because of their own personal ambitions and biases."  "Dumanis and Gunn had political ambitions and believed that a high-profile arrest and conviction would serve their personal goals and make them and the DAO[1] famous."  "Dumanis and Gunn colluded with Naval investigators to fabricate a motive for Ms. Sommer to kill her husband."  (¶ 33.) Allegedly "Naval investigators told Dumanis and Gunn about Mrs. Sommer's 'promiscuity' and breast implants" but knew "this information was irrelevant" and could not "refute" evidence that Todd Sommer died of natural causes.  "Dumanis, Gunn and Naval investigators sought to change Todd Sommer's death certificate to list his cause of death as homicide by arsenic so that they could make their pieces fit."  (¶ 34.)  Allegedly "Dumanis, Gunn and Naval Investigators convinced Chief Medical Examiner Wagner "to adopt the corrupt, false, and possibly fabricated AFIP test results, and to change Todd Sommer's death certificate to identify his cause of death as homicide by arsenic without objective cause or support."  (¶ 35.)

Allegedly "Defendants and each of them knew that buried in a box in a closet at the Balboa Naval Hospital were additional tissue samples that would have further invalidated the AFIP test results.  They knew or should have known that the AFIP test results were corrupt, false and possibly fabricated.  They also knew or should have known that testing the remaining preserved tissues would have exonerated Mrs. Sommer because it would have further proven that Todd Sommer was not murdered, but died of natural causes.  Defendants chose not to send the preserved tissue samples out for testing."  (¶ 42.)

Allegedly "on November 30, 2005, Mrs. Sommer was arrested and charged with murdering her husband by arsenic poisoning.  She was held throughout trial without bail."  (¶ 47.)  "On January 30, 2007, Mrs. Sommer was wrongly convicted of murdering her husband by arsenic poisoning."  (¶ 51.)  "On November 30, 2007, the court granted a

---

[1] As used by plaintiff, "DAO" stands for District Attorney's Office.

new trial." (¶ 52.)  "After the new trial was granted," Mrs. Sommer's attorney Allen

Bloom allegedly "sought information about the approximately thirty tissue samples

which had been originally listed in the autopsy report.  Defendant Gunn informed Mr.

Bloom that the tissues no longer existed.  Upon making a second inquiry on Gunn

regarding these samples, Mr. Bloom was informed a second time they were no longer in

existence.  A formal written discovery request for information about these tissue samples

resulted in Gunn and/or her investigators visiting the Navy Med autopsy site and

retrieving the 'non-existent' tissue samples they had left buried in the closet of the Balboa

Naval Hospital."  (¶ 53.)

On March 28, 2008, defendants sent the as-yet-untested tissue samples to Canada,

where testing found that "[n]one of the tissue samples showed the presence of any arsenic

whatsoever," allegedly proving "that Ms. Sommer had been convicted of a crime that had

never occurred.  Defendants Gunn and Dumanis' attempts to hide and not disclose this

exculpatory evidence were now exposed.  Dumanis and Gunn had no choice but to

acknowledge Mrs. Sommer was innocent and dismiss all charges."  (¶ 54.)  Allegedly a

memorandum dated August 31, 2007 was on the tissue samples box regarding their

retention, showing "the District Attorney's prior knowledge of the tissues' importance

and their obvious relevance to Plaintiff's pending criminal case."  "In fact, Defendants

knew of these samples at all times, knew they were untested, and knew their testing

would resolve the conflicting test results from the AFIP tested samples."  "All the while

Plaintiff remained convicted, imprisoned and seeking a new trial, said motion opposed by

defendants."  (¶ 55.)

"On April 17, 2008, almost two and one-half years after she had been incarcerated,

Mrs. Sommer . . . was released from custody."  (¶ 56.)  Allegedly Dumanis and Gunn

"refused to dismiss the charges with prejudice, preserving their desperate and reckless

hope to again charge her with murder . . . their investigation of Mrs. Sommer continued

after April 17, 2008, without any evidence of homicide."  (¶ 58.)

///

- 4 -

1    Count one alleges that the "State Defendants" violated plaintiff's "rights

2    guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States

3    Constitution, the Civil Rights Act of 1871, and the laws of the State of California."

4    (¶ 63.)  The "State Defendants" knew "that the results of the testing conducted by AFIP

5    Environmental were corrupt, false, fabricated, and completely lacking in credibility.  The

6    "State Defendants . . . colluded during their investigation" to use "corrupt, false, and

7    fabricated" evidence "to establish probable cause to effectuate the arrest, incarceration,

8    and subsequent conviction of Mrs. Sommer for the death of her husband.  (¶ 64.)  The

9    "State Defendants" knew "that the deliberate fabrication of false evidence and

10   suppression of exculpatory evidence would result in the wrongful arrest, incarceration

11   and subsequent conviction of Mrs. Sommer.  (¶ 65.)  The "State Defendants . . . had the

12   power to prevent or aid Plaintiff from being wrongfully arrested and later convicted . . .

13   [and] neglected or refused to come forward with the truth, and expose the Federal

14   Defendant's [sic] conspiracy to deprive Plaintiff of the equal protection of the laws."

15   (¶ 66.)  "Defendants DAO and Examiner's Office had a policy and custom of using,

16   authorizing, ratifying, and/or covering up the use of corrupt, false, and fabricated

17   evidence during their investigations."  (¶ 68.)

18        Counts two and three target federal defendants only.  Count four requests the Court

19   to issue injunctive orders that the criminal case against plaintiff is dismissed "with

20   prejudice," that defendants "cease further investigation against Plaintiff," that a

21   "correction" to Todd Sommer's death certificate "that the cause of his death was natural"

22   be performed, and that the DAO, the Examiner's Office, and the United States "require

23   their agents and employees to undergo additional mandatory training and testing" that

24   they comply with their "legal duties."  (¶¶ 87-88.)

25                                        III

26                      STANDARD FOR MOTION TO DISMISS

27        A motion to dismiss under rule 12(b)(6) tests the sufficiency of the complaint.

28   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "A district court should grant a

- 5 -

motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008), quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* "While a complaint attacked by a rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 550 U.S. at 1964-1965. In reviewing a motion to dismiss under rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir. 1988).

In considering a motion to dismiss, a court can begin by identifying allegations that are no more than conclusions, and are therefore not entitled to the assumption of truth. Legal conclusions can provide the framework of a complaint, but they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity, then determine whether they plausibly give rise to an entitlement to relief. Determining whether a plausible claim for relief has been stated is a context-specific task that requires the court to draw on its judicial experience and common sense. Where well-pleaded facts do not permit the court to infer more than a mere possibility of

- 6 -

misconduct, the complaint has alleged -- but not shown -- that the pleader is entitled to relief, and has not met the requirements of rule 8(a)(2).  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  These considerations are especially weighty when, as here, the defendants challenging the pleading are governmental actors.  It is counter-productive to require the substantial diversion of time and resources necessary to defend civil litigation that might otherwise be directed to the proper execution of governmental duties.  *Id* at 1953.

IV

STANDARD FOR PROSECUTORIAL IMMUNITY

A.   <u>Relevance Of Prosecutorial Immunity In This Case</u>.

The complaint alleges that defendants "duped the jury" and that plaintiff was "wrongly convicted of murdering her husband by arsenic poisoning."  (¶ 50.)  Dumanis and Gunn are prosecuting attorneys.  There are no factual, non-conclusory allegations showing that Dumanis and Gunn did anything that would fall outside the prosecutorial function, or that they had any relationship with plaintiff other than that of prosecutor and criminal defendant.  The federal and state standards for prosecutorial immunity are set forth below.

1.   Federal Individual Capacity Liability.

"[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.  *Id*. at 269.  "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties."  *Burns v. Reed*, 500 U.S. 478, 486-487 (1991).

Prosecutorial immunity protects eligible government officials who perform functions "intimately associated with the judicial phase of the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  "Such immunity applies even if it leaves the genuinely wronged [plaintiff] without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty."  *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th

- 7 -

Cir. 1986).  Acts undertaken by a prosecutor "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State," are entitled to the protection of absolute immunity.  *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997).  "The intent of the prosecutor when performing prosecutorial acts plays no role in the immunity inquiry."  *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987).

In *Buckley*, 509 U.S. 259, the Supreme Court denied absolute immunity to prosecutors who were sued for fabricating evidence "during the early stages of the investigation" where "police officers and assistant prosecutors were performing essentially the same investigative function."  *Id*. at 262-263.  The Supreme Court reasoned that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."  *Id*. at 274.

In *Kalina*, 522 U.S. 118, the Supreme Court denied absolute prosecutorial immunity to a prosecutor who filed the equivalent of an affidavit personally attesting to facts and swearing they were true under penalty of perjury, in support of a motion for an arrest warrant.  The prosecutor had filed an information charging burglary, a motion for an arrest warrant, and a "Certification for Determination of Probable Cause."  The Supreme Court reasoned that in personally attesting, the prosecutor performed an act that any competent witness might have performed, and was thus not entitled to absolute immunity.  *Id*. at 129-130.  "Even when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness."  *Id*. at 131.

Absolute immunity bars claims for damages against prosecutors performing "quasi-judicial" functions.  *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003).  The party asserting absolute immunity bears the burden of establishing that it is warranted.  *Antoine v. Byers & Anderson, Inc*., 508 U.S. 429, 432 (1993).  Courts generally apply federal absolute prosecutorial immunity only to federal claims.  *See, e.g., Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009); *Rosenthal v. Vogt*, 229 Cal.App.3d 69 (1991).

- 8 -

"[I]n deciding whether to accord a prosecutor immunity from a civil suit for damages, a court must first determine whether a prosecutor has performed a quasi-judicial function. If the action was part of the judicial process, the prosecutor is entitled to the protection of absolute immunity whether or not he or she violated the civil plaintiff's constitutional rights." *Broam*, 320 F.3d at 1029 (internal citation omitted).  For example, a prosecutor is absolutely immune from liability for filing an information or motion, *see Kalina*, 522 U.S. at 129, "for failure to investigate the accusations against a defendant before filing charges," "for the knowing use of false testimony at trial," for his or her decision not to preserve or turn over exculpatory material in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and "for gathering additional evidence after probable cause is established or criminal proceedings have begun," *Broam*, 320 F.3d at 1029-1030.  A prosecutor's absolute immunity from section 1983 claims extends to claims that the prosecution failed to disclose impeachment material due to failure to properly train or supervise prosecutors or to establish an appropriate information system, even though such claims attack the prosecutor's office's administrative procedures, and even though, as a general proposition, performance of administrative or investigatory functions confers only qualified, not absolute, immunity. *See Van de Kamp v. Goldstein*, ___ U.S. ___, 129 S. Ct. 855, 858-861 (2009).

           2.     Official Capacity Liability Under Federal Law.

An official capacity claim under 42 United States Code section 1983 is governed by the same standards as a claim against a local governmental entity.  To hold a local government liable for an official's conduct, a plaintiff must first establish that the official (1) had final policymaking authority "concerning the action alleged to have caused the particular constitutional or statutory violation at issue" and (2) was the policymaker for the local governing body for the purposes of the particular act. *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 785 (1997).  State law defines the official's "actual function … in a particular area" for section 1983 purposes and this function must be evaluated to determine whether he or she acts for the state or county. *McMillian*, 520

- 9 -

1    U.S. at 786.  In *Pitts v. County of Kern*, 17 Cal.4th 340 (1998), the California Supreme

2    Court concluded that a district attorney acts on behalf of the state rather than the county

3    in preparing to prosecute crimes and in training and developing policies for prosecutorial

4    staff. *Pitts* involved section 1983 claims brought against Kern County, its district attorney

5    and employees by persons convicted of child molestation whose convictions were

6    reversed on appeal.  The Ninth Circuit has reached the same result, holding that "under

7    California law a county district attorney acts as a state official when deciding whether to

8    prosecute an individual."  *Weiner v. San Diego County*, 210 F.3d 1025, 1030 (9th Cir.

9    2000).  However, in *Bishop Paiute Tribe v. County of Inyo*, 291 F.3d 549 (9th Cir. 2002),

10   *vacated on other grounds,* 538 U.S. 701 (2003), the Ninth Circuit held the district

11   attorney was not preparing to prosecute or prosecuting criminal violations when the

12   district attorney obtained and executed a search warrant in order to investigate allegations

13   of welfare fraud.  *Bishop Paiute Tribe v. County of Inyo*, 291 F.3d at 564-565.

14                  3.    California Prosecutorial Immunity.

15          The immunity provided by California Government Code section 821.6 for

16   instituting or prosecuting any judicial proceeding, even if maliciously or without probable

17   cause, applies to any public employee acting in the scope of employment, including a

18   public prosecutor.  *Miller v. Filter*, 150 Cal.App.4th 652, 666 (2007); *Amylou R. v.*

19   *County of Riverside*, 28 Cal.App.4th 1205, 1209-1210 (1994).  *See also Falls v. Superior*

20   *Court,* 42 Cal.App.4th 1031, 1045 (1996).

21          When public employees act on behalf of a public entity, the entity is also immune

22   from liability pursuant to California Government Code section 821.6.  California

23   Government Code section 815.2(b) provides that a public entity is not liable for an injury

24   resulting from an act or omission of an employee of the public entity where the employee

25   is immune from liability.  *See Poppell v. City of San Diego*, 149 F.3d 951, 970 (9th Cir.

26   1998) ("The City of San Diego cannot be held liable for such acts where its employees

27   are immune from liability.").

28   ///

1    Immunity under section 821.6 covers "actions taken in preparation for formal

2    proceedings, including investigation, which is an essential step toward the institution of

3    formal proceedings." *Paterson v. City of Los Angeles*, 174 Cal.App.4th 1393, 1405

4    (2009) (citation omitted).  It also applies to government employees in malicious

5    prosecution cases involving "the government employees' acts in filing charges or

6    swearing out affidavits of criminal activity against the plaintiff." *Sullivan v. County of*

7    *Los Angeles*, 12 Cal.3d 710, 720 (1974).  The immunity extends to emotional distress

8    claims to the extent that the conduct challenged involves the institution of formal

9    proceedings. *Amylou R.,* 28 Cal.App.4th at 1209-1210.  Section 821.6 does not apply,

10   however, to false arrest or false imprisonment claims where the employee "knowingly

11   imprison[s] a person without proper legal authority." *Sullivan*, 12 Cal.3d at 720; *see also*

12   *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 752 (1997).  A public employee is not

13   shielded from liability where the "public employee [takes] a very active role in actually

14   securing the arrest warrant and [participates] in having it served by a fellow [public

15   employee] under his own authority." *Harden v. S.F. Bay Area Rapid Transit Dist*., 215

16   Cal.App.3d 7, 17 (1989).

17                                                V

18                          REQUEST FOR JUDICIAL NOTICE

19       1.     Declaration For Arrest Warrant.

20       Plaintiff alleges she was arrested, but she does not allege that her arrest was

21   without a warrant.  (¶ 47.)  That makes a difference in whether she can plausibly allege

22   false arrest or false imprisonment.  Judicial notice is requested of the Declaration in

23   Support of Arrest Warrant executed by Rob Terwilliger, a criminal investigator employed

24   by the Naval Criminal Investigative Service ("NCIS") in West Palm Beach, Florida, on

25   November 29, 2005, pursuant to Federal Rules of Evidence, rule 201(d).  A copy is

26   lodged as Exhibit "A."  Agent Terwilliger's declaration shows that he attested to the facts

27   establishing probable cause.  Thus the *Kalina v. Fletcher* exception to prosecutorial

28   immunity is not applicable.  *Kalina*, 522 U.S. at 129-130 [prosecutor not entitled to

                                              - 11 -

absolute immunity for personally attesting to truth of facts establishing probable cause].
This relates to issues involving false arrest or false imprisonment.

2.      Pre-Trial Disclosure Document And Discovery Receipt.

Judicial notice is requested of the NCIS list of post mortem specimens retained by
AFIP and the Balboa Naval Hospital, dated December 14, 2005, bearing Bates number
1169.  Judicial notice is also requested of the discovery receipt signed by plaintiff's
retained criminal defense attorney on March 20, 2006, acknowledging receipt of 1206
pages of discovery.  The range of page numbers included page number 1169, the page on
which samples were disclosed to plaintiff and her criminal defense attorney before trial.
These documents are lodged as Exhibit "B."  Judicial notice is requested pursuant to
Federal Rules of Evidence, rule 201(d).  This relates to *Brady*-type issues.

3.      Superior Court Order Denying Claims Presentation Relief.

Judicial notice is requested pursuant to Federal Rules of Evidence, rule 201(d) of
the Superior Court order denying plaintiff's petition for relief from claims presentation
requirements, in light of plaintiff's failure to present a legally-sufficient claim to support
a California law cause of action against the moving defendants.  A copy of the order is
lodged as Exhibit "C."  This relates to plaintiff's failure and inability to allege California
administrative claims presentation compliance, a prerequisite for stating any cause of
action based on California law.

VI

ARGUMENT

A.      *Devereaux* Claim.

1.      Authority.

In *Pyle v. Kansas*, 317 U.S. 213, 216 (1942), the Supreme Court held that the
knowing use by the prosecution of perjured testimony in order to secure a criminal
conviction violates the Constitution.  The Ninth Circuit used *Pyle* as the basis for holding
that the wrongfulness of charging someone on the basis of *deliberately* fabricated
evidence is sufficiently obvious, and *Pyle* is sufficiently analogous, that the right to be

- 12 -

free from such charges is a constitutional right.  To support such a claim, plaintiff must, *at a minimum*, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation despite the fact that they knew or should have known that the plaintiff was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.  *Devereaux v. Abbey,* 263 F.3d 1070, 1075-1076 (9th Cir. 2001).

By contrast, there is no constitutional right not to be deprived of liberty as a result of false evidence *negligently* gathered by a government officer, because "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property."  *Daniels v. Williams,* 474 U.S. 327, 328 (1986); *see also Jean v. Collins* 221 F.3d 656, 660 (4th Cir. 2000) (en banc) (emphasis in original).

Withholding exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, cannot support a *Devereaux* claim -- "if it did, then any prisoner with a successful *Brady* claim would be able to bring a § 1983 action against the prosecutor for deliberate fabrication of evidence, and would be able to get past summary judgment."  *Devereaux*, 263 F.3d at 1079.

2.    Plaintiff Has Not Alleged a *Devereaux* Claim.

As noted in the foregoing discussion of the standard for a motion to dismiss, the Court's analysis should begin by identifying allegations that are mere conclusions.  Such conclusory allegations are not entitled to the assumption of truth.  *Iqbal*, 129 S.Ct. at 1950.  The complaint offers conclusory allegations that Dumanis and Gunn knew or should have known "during the investigation" that arsenic test results were "false," and there was "no evidence on which to arrest, charge or convict" plaintiff.  (¶ 32.)  However, to avoid prosecutorial immunity, plaintiff would need to offer factual allegations showing that "during the early stages of the investigation," Dumanis and Gunn "were performing essentially the same investigative function" as the federal investigators whose efforts

- 13 -

1 | culminated in the Exhibit "A" declaration by Agent Terwilliger for the arrest warrant.

2 | *Buckley*, 509 U.S. at 262-263.

3 |       With or without prosecutorial immunity, plaintiff offers no non-conclusory factual

4 | allegations showing that anyone *deliberately* fabricated evidence.  That includes both the

5 | allegations about arsenic evidence and the allegations about plaintiff's breast implants,

6 | about her promiscuity, and about financial benefits resulting from the death.  As far as

7 | plaintiff's non-conclusory factual allegations show, the originally-tested tissue samples

8 | contained lethal levels of arsenic (there is no factual allegation to the contrary), and the

9 | other information, such as breast implants and promiscuity, was factually true.

10 |       Finally, with or without potential *Brady* liability, plaintiff offers no non-conclusory

11 | factual allegations showing that the tissue samples that Gunn "had left buried in the closet

12 | of the Balboa Naval Hospital" were not disclosed in the regular order of pretrial criminal

13 | discovery.  Even if a *Brady* violation was actionable under *Devereaux*, plaintiff has not

14 | alleged such a violation.

15 |       **B.**   <u>Liability for Non-Disclosure of Exculpatory Evidence</u>.

16 |         **1.**   Authority.

17 |       A police officer's failure to preserve or collect potential exculpatory evidence does

18 | not violate the Due Process Clause unless the officer acted in bad faith.  *Arizona v.*

19 | *Youngblood*, 488 U.S. 51, 58 (1988); *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir.

20 | 1989).  "The presence or absence of bad faith . . . turns on the police's knowledge of the

21 | exculpatory value of the evidence at the time it was lost or destroyed."  *Youngblood,* 488

22 | U.S. at 57.  *See Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001) (stating plaintiff must

23 | "put forward specific, nonconclusory factual allegations that establish improper motive")

24 | (internal quotations omitted).  A plaintiff must allege specific, nonconclusory facts

25 | showing that a defendant engaged in "a conscious effort to suppress exculpatory

26 | evidence."  *California v. Trombetta*, 467 U.S. 479, 488 (1984).

27 | ///

28 | ///

- 14 -

1

2.       Plaintiff Has Not Alleged A *Youngblood* Claim.

2

Plaintiff's own allegations negate any potential *Youngblood* claim.  Plaintiff

3

alleges that she got out of jail because post-trial testing of tissue samples proved her

4

innocence.  (¶ 54.)  For that to have happened, exculpatory evidence must have been

5

collected and preserved, not lost or destroyed.

6

C.       Federal Injunction Against State Prosecution.

7

1.       Authority.

8

Plaintiff requests the Court to "order the dismissal of the criminal case against

9

plaintiff 'with prejudice'."  (¶ 87.)  To enjoin a threatened state criminal prosecution, a

10

plaintiff must show a "real and immediate threat" of prosecution.  *Bobbitt v. United Farm*

11

*Workers' Nat'l Union*, 442 U.S. 289, 298 (1979).

12

2.       Plaintiff Has Not Alleged *Bobbitt* Standing.

13

The criminal case against plaintiff was dismissed without prejudice.  (¶ 58.)  No

14

legal impediment prevents plaintiff from facing new criminal charges related to the death

15

of her husband.  That merely puts her in the same legal position as every other person

16

who is capable of being charged with a crime.  It does not show that there is a "real and

17

immediate threat" that she will be prosecuted.

18

In a somewhat analogous context, the Supreme Court in *Hicks v. Miranda*, 422

19

U.S. 332, 349 (1975), held that the abstention principles of *Younger v. Harris*, 401 U.S.

20

66 (1971), should apply to state prosecutions that are filed after a plaintiff files a pre-

21

emptive federal lawsuit.  However, without an impending prosecution, there is no basis

22

for *Hicks/Younger* abstention, and plaintiff's *Bobbitt* claim should be dismissed for lack

23

of standing.

24

D.       Federal Injunction Against Law Enforcement Activities.

25

1.       Authority.

26

Plaintiff seeks injunctive orders to cease further investigation of plaintiff, to "order

27

the correction of Todd Sommer's death certificate" to show natural death, and to require

28

///

- 15 -

1  federal and local law enforcement agents "to undergo additional mandatory training and

2  testing" regarding handling of evidence during criminal investigations.  (¶¶ 87-89.)

3            2.      **Plaintiff Lacks Standing To Enjoin The Criminal Justice System.**

4        Plaintiff has no constitutional stake in how law enforcement does its job within the

5  criminal justice system.  See, e.g., *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768-

6  769 (2005) (explaining that "the benefit that a third party may receive from having

7  someone else arrested for a crime generally does not trigger" constitutional protections);

8  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (reiterating that "a private citizen

9  lacks a judicially cognizable interest in the prosecution or non-prosecution of another");

10  *Thomas v. Mundell*, 2009 U.S. App. LEXIS 15586, *16-*18 (9th Cir. 2009) (holding that

11  "crime victims" lacked standing to challenge probation programs because "the criminal

12  justice system is not operated primarily for the benefit of victims, but for the benefit of

13  society as a whole" (quoting *Kelly v. Robinson*, 479 U.S. 36, 52 (1986)); *Devereaux v.

14  Perez*, 218 F.3d 1045, 1053 (9th Cir. 2000) (holding, in child sexual abuse investigation,

15  that no constitutional due process right exists to have child witnesses "interviewed in a

16  particular manner or pursuant to a certain protocol").

17        In *Kugler v. Helfant*, 421 U.S. 117 (1975), the Supreme Court, stressing the

18  importance of federalism and comity, indicated that federal injunctive relief interfering

19  with criminal prosecutions could be granted in only truly exceptional cases.  In the

20  absence of exceptional circumstances creating a threat of irreparable injury "both great

21  and immediate," a federal court must not intervene by way of either injunction or

22  declaratory judgment in a pending state criminal prosecution.  *Id*. at 123.  Plaintiff would

23  first have to show some form of strong irreparable injury, beyond that typically required

24  for equitable relief; and second, that California courts are not able to provide protection.

25  *Kugler* stressed that a party would have to show irreparable injury beyond the ordinary

26  "cost, anxiety, and inconvenience" of having to defend against a criminal prosecution.

27  *Id*. at 124.

28  ///

1    Apparently the only published appellate case in which a re-prosecution related to

2 murder was ever successfully enjoined by a federal court is *Shaw v. Garrison*, 467 F.2d

3 113 (5th Cir. 1972).  Some facts may seem vaguely familiar to anyone who has seen the

4 movie "JFK."  The Fifth Circuit upheld injunctive relief the district court had awarded to

5 criminal defendant Clay Shaw, enjoining further state court prosecution by New Orleans

6 District Attorney Jim Garrison.  Immediately after a jury acquitted Mr. Shaw of

7 conspiring to murder President Kennedy, the District Attorney charged him with perjury

8 in his testimony about those disputed transactions.  The district court stressed the "unique

9 nature of this case," and included specific findings of bad faith and harassment of Shaw

10 by Garrison.  *Id.* at 114.  As the Court of Appeals noted, the jury in the previous

11 prosecution of Shaw had taken only fifty-five minutes of deliberation after a 42-day trial

12 to acquit the defendant, and that as a result "[w]hatever ambitions [Garrison] may have

13 had as the man who solved the Kennedy assassination crumbled to bits."  *Id.* at 115.

14 Nevertheless, the next business day, Garrison charged Shaw with perjury based on this

15 testimony in the conspiracy trial.

16    The Court of Appeals recited the various facts cited by the district court for

17 reaching the conclusion that Garrison was acting in bad faith, and held that the findings

18 were not clearly erroneous.  *Id.* at 122.  Those facts included that the prosecution relied

19 entirely on the sodium pentothal-assisted, hypnosis-assisted testimony of a witness who

20 had later issued conflicting testimony and who had then refused to testify further on Fifth

21 Amendment grounds; that Garrison had a financial interest in the prosecution in the sales

22 of an already-published book, and three more under contract; that Garrison used private

23 funds to conduct his criminal investigation, funds that were provided by a group that

24 demanded results, and that no witnesses were available for the perjury prosecution who

25 had not already been presented in the trial at which Shaw had been acquitted.  It was clear

26 that there was *no possibility* of any new evidence to support the new perjury charge.

27    In this case, plaintiff's alleges that tests of tissue samples at different laboratories

28 at different times yielded different results, so the first tests must have been wrong.  Why

- 17 -

is there *no possibility* that the second tests were wrong?  Even if right, why is there *no possibility* of unnatural death?  Plaintiff cannot make the kind of non-conclusory factual allegations that succeeded in *Shaw v. Garrison.*

Plaintiff has no standing to request orders that prosecutors (or others in the criminal justice system) be ordered to do anything simply on the basis that she could be prosecuted otherwise.  A guilty person would be as likely to seek such an order as an innocent one.  The way in which a death is characterized (natural death or otherwise) in a death certificate does not preclude changes in the death certificate if or when information is discovered.

     E.    <u>Effect Of Arrest Warrant.</u>

Plaintiff does not allege warrantless arrest.  She was arrested pursuant to a judicially-issued warrant.  An arrest pursuant to judicial authority is not a false arrest or imprisonment as a matter of law.  See *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (potentially-false warrantless arrest ended when the arrestee was bound over by a magistrate or arraigned; after judicial action, any damages for unlawful detention must arise under the "entirely distinct" tort of malicious prosecution).  There are no non-conclusory allegations showing that Dumanis and Gunn arrested plaintiff.  Agent Terwilliger's declaration (Exhibit "A") shows why plaintiff cannot allege false arrest or false imprisonment in an amended complaint.

     F.    <u>Claims Under California Law Are Barred By Failure To Present A Timely Administrative Claim.</u>

        1.    Authority.

Plaintiff has not expressly pleaded a cause of action for violation of California law, but plaintiff's count one states that "State Defendants" violated federal law as well as "the laws of the State of California."  (¶ 63.)  Thus it appears plaintiff's cause of action against Dumanis and Gunn is pleaded under both federal and state law.

///

///

- 18 -

1    An action for "money or damages" may not be maintained against a "public

2    entity," unless a written claim has first been timely presented to the defendant entity, and

3    rejected in whole or part.  Gov. Code §§ 905, 905.2, 945.4.

4         It is not the purpose of the claims statutes to prevent surprise.  Rather,
          the purpose of these statutes is to provide the public entity sufficient
5         information to enable it to adequately investigate claims and to settle them,
          if appropriate, without the expense of litigation.  [Citations omitted.]  It is
6         well-settled that claims statutes must be satisfied even in face of the public
          entity's actual knowledge of the circumstances surrounding the claim.  Such
7         knowledge -- standing alone -- constitutes neither substantial compliance nor
          basis for estoppel.  [Citations omitted.]

8

9    *City of San Jose v. Superior Court of Santa Clara County (Lands Unlimited),* 12 Cal.3d

10   447, 455 (1974).  A plaintiff's failure to allege facts demonstrating or excusing claims

11   presentation compliance as to causes of action against public employees or public entities

12   subjects a complaint to demurrer.  *State v. Superior Court (Bodde)*, 32 Cal.4th 1234,

13   1239 (2004).

14        A person who fails to present a timely claim may apply to the public entity for

15   leave to present a late claim.  Gov. Code, § 911.4, subd. (a).  The application must be

16   presented to the public entity "within a reasonable time not to exceed one year after the

17   *accrual* of the cause of action …."  Gov. Code, § 911.4, subd. (a), (b).  (Emphasis

18   added.)  If the public entity denies the application or the application is denied by

19   operation of law (Gov. Code, § 911.6, subds. (a), (c)), the claimant may petition the court

20   for relief from the claim presentation requirement.  Gov. Code, §§ 911.6, subds. (a), (c),

21   946.6, subd. (a).  That section authorizes a court to relieve a petitioner from the claim

22   presentation requirement based on specified grounds.  It grants the court discretion to

23   determine whether the statutory grounds are satisfied and contemplates factual findings

24   by the court in connection with that exercise of discretion.  *County of Sacramento v.*

25   *Superior Court of Sacramento County (James)*, 42 Cal.App.3d 1135, 139 (1974).

26        A cause of action ordinarily *accrues* when the wrongful act occurs, the liability

27   arises, and the plaintiff is entitled to prosecute an action.  *Howard Jarvis Taxpayers Assn.*

28   *v. City of La Habra*, 25 Cal.4th 809, 815 (2001); *Norgart v. Upjohn Co.*, 21 Cal.4th 383,

- 19 -

397 (1999).  In other words, a cause of action accrues " ' " 'upon the occurrence of the last element essential to the cause of action.' " ' "  *Howard Jarvis Taxpayers Assn.,* 25 Cal.4th at 815.  The delayed discovery rule is an exception to the general rule, and provides that a cause of action does not accrue until a plaintiff discovers, or reasonably should discover, the cause of action. "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.]"  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807  (2005).  The elements that the plaintiff must suspect are the generic elements of wrongdoing, causation, and harm.  *Ibid.*  A plaintiff who suspects that he or she has suffered an injury caused by the wrongdoing of another is charged with the knowledge that a reasonable investigation would reveal, and the limitations period begins to run at that time.  *Fox*, 35 Cal.4th at 807–808 & fn. 2.

The date of accrual for purposes of the claim presentation requirement is the same date on which the cause of action would accrue for purposes of the statute of limitations in an action against a private party.  *Shirk v. Vista Unified School Dist.,* 42 Cal. 4th 201, 208-209 (2007).  The holding in *Ovando v. City of Los Angeles,* 159 Cal.App.4th 42 (2008), provides useful guidance on calculating the date of accrual.  The plaintiff alleged public defender misconduct that resulted in his criminal conviction.  (Allegations against the prosecutor were barred by Government Code section 821.6.)  The lawsuit was preceded by the plaintiff's application to the county for leave to present a late claim.  That application stated that the plaintiff "was unable to reach or meaningfully communicate with an attorney" during his incarceration, and therefore "was unable to learn of the requirements of the six-month claim filing requirement, and . . . unable to communicate with an attorney as to the viability of any of his claims and thereby learn of the filing requirements."  The plaintiff also alleged that he did not discover and had no reason to discover the alleged legal malpractice until after he was released from prison, and that the time to present the claim was tolled by the public defender's continuing representation in habeas corpus proceedings.  He filed a Superior Court petition for relief

- 20 -

from claims presentation requirements when the county denied his late claim application, asserting that his cause of action accrued on his release from prison after his conviction was overturned.  He reasoned that *Wiley v. County of San Diego,* 19 Cal.4th 532 (1998), precluded earlier accrual because a plaintiff alleging legal malpractice in a criminal case must allege and prove actual innocence, and he could not establish actual innocence until his conviction was overturned.  The Court of Appeal rejected that argument, concluding that any impediment to *proving* a cause of action does not delay the *accrual* of the cause of action, because it does not compel the conclusion that the plaintiff did not suspect, or have reason to suspect the factual basis of the claim.  The plaintiff's convictions did not prevent him from suspecting, or actually knowing, that he was innocent.  *Ovando*, 159 Cal.App.4th at 69-70.  That would also be true for the present plaintiff.  If she did not murder her husband, she always knew that.  She would not have first suspected she did not murder him on the day she was released from jail.

> 2.   Plaintiff Cannot Allege A California Law Cause Of Action Because She Cannot Allege Administrative Claims Compliance.

Plaintiff has not alleged, and cannot allege, that the administrative claim required by California law was presented on her behalf, and thus she cannot allege a California law cause of action.  Plaintiff cannot make such an allegation in an amended complaint, because she previously petitioned the Superior Court to be relieved from claims presentation requirements after her application to present a claim was denied.  The Superior Court denied her petition.  A copy of that order is lodged as Exhibit "C;" judicial notice requested.  Under *Bodde*, 32 Cal.4th at 1239, plaintiff's claims arising under California law must be dismissed for failure to allege claims compliance, and Exhibit "C" shows why it would be futile to grant plaintiff leave to amend on that issue.

## VI

## CONCLUSION

Plaintiff's allegations fail to plausibly show that she could establish the elements of any federal theory of civil liability against Dumanis or Gunn.  As to liability under

- 21 -

California law, plaintiff cannot allege presentation of an administrative claim, which is a necessary element of any cause of action under California law against a public employee or entity.  Plaintiff cannot allege standing for injunctive relief intended to prevent or impede future criminal prosecution.

Plaintiff's innocence is not before the Court, nor is it relevant.  Presumptively-innocent people are prosecuted on a daily basis in our criminal justice system without offending the Constitution.  Plaintiff's allegations of being convicted on the basis of obviously-flawed evidence are only plausible if one assumes her own defense counsel rendered woefully ineffective assistance, and this is not a legal malpractice suit against plaintiff's retained criminal defense attorney.  The complaint should be dismissed with prejudice as to Dumanis and Gunn.

DATED:  October 23, 2009          Respectfully submitted,

JOHN J. SANSONE, County Counsel

By: s/ MORRIS G. HILL, Senior Deputy
Attorneys for Defendants Bonnie Dumanis and
Laura Gunn (apparently also sued as "District
Attorney's Office")
E-mail: morris.hill@sdcounty.ca.gov

- 22 -