**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CYNTHIA SOMMER,

Plaintiff,

vs.

UNITED STATES OF AMERICA, ROB TERWILLIGER, RICK RENDON, MARK RIDLEY, S.D. ADAMS, JOSE CENTENO, COUNTY OF SAN DIEGO MEDICAL EXAMINER'S OFFICE, GLENN N. WAGNER, COUNTY OF SAN DIEGO DISTRICT ATTORNEY's OFFICE, BONNIE DUMANIS, LAURA GUNN, and DOES 1 through 100, inclusive,

Defendants.

CASE NO. 09cv2093 WQH (WMc)

**ORDER**

HAYES, Judge:

The matters before the Court are the Motion to Dismiss filed by Defendants Bonnie Dumanis and Laura Gunn, the District Attorney and Deputy District Attorney for the County of San Diego (Doc. # 4), the Motion to Dismiss filed by Defendant Glenn N. Wagner, the Medical Examiner for the County of San Diego (Doc. # 5), and the Motion to Dismiss filed by Defendant the United States of America (Doc. # 15).

**BACKGROUND**

Plaintiff Cynthia Sommer initiated this action by filing a Complaint on September 24,

2009. (Doc. # 1). Plaintiff alleges claims for: (1) violation of 42 U.S.C. § 1983; (2) violation of 42 U.S.C. §§ 1985 and 1986; (3) violation of the Federal Tort Claims Act ("FTCA"); and (4) a permanent injunction. On October 23, 2009, Defendants Bonnie Dumanis ("Dumanis"), San Diego's District Attorney, and Laura Gunn ("Gunn"), San Diego's Deputy District Attorney, filed their Motion to Dismiss. (Doc. # 4). On October 27, 2009, Defendant Glenn N. Wagner ("Wagner"), the Medical Examiner for the County of San Diego, filed his Motion to Dismiss. (Doc. # 5). On December 21, 2009, Defendant the United States of America filed its Motion to Dismiss. (Doc. # 15). On January 26, 2010, Plaintiff filed a Non-Opposition to the United States of America's Motion to Dismiss. (Doc. # 18).

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff alleges that in February of 2002, Plaintiff's husband, Todd Sommer, a 23-year-old Sergeant in the United States Marine Corps, died of a cardiac arrhythmia. (Doc. # 1 at ¶ 1). Plaintiff alleges she was tried and convicted for murdering her husband. *Id.* at ¶¶ 1-2.

Plaintiff alleges Todd Sommer collapsed in the early morning of February 18, 2002. *Id.* at ¶ 12. Plaintiff alleges she called 911 and attempted CPR. *Id.* Plaintiff alleges Todd Sommer was pronounced dead at the hospital approximately half an hour later. *Id.* at ¶ 13. Plaintiff alleges Dr. Stephen L. Robinson performed an autopsy and concluded that Todd Sommer had died of cardiac arrhythmia. *Id.* at ¶¶ 14-18. Plaintiff alleges Dr. Robinson did not find any signs of poisoning. *Id*. at ¶ 17. Plaintiff alleges Dr. Robinson preserved tissue samples during the autopsy. *Id.* Plaintiff alleges Dr. Robinson forwarded the report to Dr. Brian D. Blackbourne, then the Chief Medical Examiner for the County of San Diego. *Id.* at ¶ 19. Plaintiff alleges Dr. Blackbourne agreed with Dr. Robinson that Todd Sommer had died of natural causes. *Id.* Plaintiff alleges Dr. Blackbourne issued a death certificate which identified the manner of death as natural and the probable cause of death as cardiac arrhythmia of undetermined etiology. *Id.*

Plaintiff alleges that despite the results of the autopsy and the Medical Examiner's opinion, "Defendants refused to accept those results and embarked upon an investigation intended to find criminal conduct" by Plaintiff. *Id.* at ¶ 21. Plaintiff alleges that instead of

relying on scientific evidence, Defendants focused on her "conduct and breast implants" which they believed "proved that she had murdered her husband." *Id.* at ¶ 22. Plaintiff alleges that Defendants were "[d]esperate for any evidence to justify their continued investigation" and sent tissue samples to the Environmental Division of the Armed Forces Institute of Pathology ("AFIP"). *Id.* at ¶ 23. Wagner, now the Chief Medical Examiner for the County of San Diego, was at that time the director of AFIP "and was responsible for final oversight of all work performed at the lab." *Id.*

Plaintiff alleges AFIP "purportedly found extremely high levels of arsenic in two of six tissue samples," which shows "the samples were negligently or intentionally contaminated" because "arsenic is ubiquitous." *Id.* at ¶ 24. Plaintiff alleges all of the tissue samples, as well as Todd Sommer's blood and urine, "should have shown high levels of arsenic" if the test results were accurate. *Id.* Plaintiff alleges Defendant Jose Centeno, the lab director, "believed that the two tissue[ samples] that tested positive for arsenic had likely been contaminated, possibly coming into contact with arsenic . . . ." *Id.* Plaintiff alleges Defendants knew or should have known that AFIP was not a competent testing facility and that Defendants chose the lab because they knew "a competent testing facility would conclusively prove that Todd Sommer did not die of arsenic poisoning." *Id.* at ¶ 25. Plaintiff alleges the Environmental Division of AFIP did not normally perform this type of testing and performed the tests on a newly purchased piece of equipment which the lab technicians were using for the first time. *Id.* at ¶ 26. Plaintiff alleges Defendants were also aware that there had been "over sixteen breaks in the chain of custody" after AFIP had received the samples and that "[t]issues that are not properly maintained are susceptible to contamination," which can "produce false positives for arsenic." *Id.* at ¶ 27. Plaintiff alleges the level of arsenic found by the tests "clearly showed AFIP's test results were inaccurate" because "[t]he results were so unusually high that such findings had never been seen in the history of reported arsenic testing and exceeded any previously reported contamination levels by approximately . . . 1250%." *Id.* Plaintiff alleges the test results were "contradicted by the autopsy results . . . [which] showed no indication of . . . damage to the internal organs or blood vessels." *Id.* at ¶ 28. Plaintiff alleges Todd

Sommer did not exhibit symptoms of arsenic poisoning before his death. *Id.*

Plaintiff alleges "[d]uring their investigation prior to Mrs. Sommer's arrest, Defendants consulted with several qualified independent forensic toxicologists . . . . [who] refused to concur in the results of the testing performed by AFIP [because] the results were demonstrably false." *Id.* at ¶ 29. Plaintiff alleges one such expert, Alphonse Poklis, "a highly respected forensic pathologist and [] leading expert in arsenic poisoning," told Defendants there was "no evidence that Todd Sommer died of arsenic poisoning" and that the test results were "false." *Id.* at ¶ 30. Plaintiff alleges Defendants Dumanis and Gunn "knew or should have known during the investigation . . . that there was no evidence" that Plaintiff killed Todd Sommer. *Id.* at ¶ 32. Plaintiff alleges Dumanis and Gunn "believed that a high-profile arrest and conviction would serve their personal goals and make the D[istrict] A[ttorney's] O[ffice] famous." *Id.* at ¶ 33. Plaintiff alleges Dumanis and Gunn sought to change Todd Sommer's death certificate to homicide by arsenic poisoning "so that they could make their pieces fit" and go forward with a prosecution. *Id.* at ¶ 34. Plaintiff alleges Dumanis and Gunn convinced Wagner, who had left his position as head of AFIP to become the Chief Medical Examiner for the County of San Diego during the Sommer investigation, to change the death certificate. *Id.* at ¶ 35.

Plaintiff alleges Wagner "knew or should have known that the AFIP test results were corrupt, false, and possibly fabricated," especially in light of an email exchange between Wagner and Centeno, the scientist who conducted the test. *Id.* at ¶ 36. Plaintiff alleges Wagner emailed Centeno to ask for an explanation of the high level of arsenic found in two samples while the other four samples and Todd Sommer's blood and urine were negative. *Id.* Plaintiff alleges Centeno replied that he did not have a good explanation and that he suspected the tissue samples had become contaminated. *Id.* Plaintiff alleges Wagner knew or should have known that the test results were fabricated, but nonetheless changed Todd Sommer's cause of death to cover up the problems at AFIP and avoid "public embarrassment" and protect his "professional image." *Id.* at ¶ 39. Plaintiff alleges Defendants, including Wagner, were aware of another set of samples "buried in a box in a closet at the Balboa Naval Hospital," but

"chose not to send the preserved tissue samples out for testing." *Id.* at ¶¶ 38, 42.

Plaintiff alleges that she was arrested and charged with murdering Todd Sommer on November 30, 2005. *Id.* at ¶ 47. Plaintiff alleges Defendants used the publicity surrounding her arrest and trial to "maliciously disclose[] personal and private information about [her] further sensationalizing the case." *Id.* at ¶ 49. Plaintiff alleges she was convicted of her husband's murder on January 30, 2007. *Id.* at ¶ 50. Plaintiff alleges on November 30, 2007, her conviction was overturned and she was granted a new trial. *Id.* at 52. Plaintiff alleges her criminal defense attorney sought access to the additional tissue samples, and Defendant Gunn twice told Plaintiff's attorney that the samples "no longer existed." *Id.* at ¶ 53. Plaintiff alleges that "without notifying Mrs. Sommer or her attorney" that the samples had been located, Defendants had these additional samples "tested at a highly respected private testing facility in Canada." *Id.* at ¶ 54. Plaintiff alleges that "[n]one of the tissue samples showed the presence of any arsenic whatsoever . . . . prov[ing] . . . Mrs. Sommer had been convicted of a crime that had never occurred." *Id.* On April 17, 2008, Plaintiff was released from custody. *Id.* at ¶ 56. Plaintiff alleges she had lost custody of her children and incurred $500,000 in legal fees. *Id.* Plaintiff alleges her reputation was ruined and that many people still believe she murdered her husband. *Id.* at ¶ 57.

Plaintiff alleges Defendants Dumanis and Gunn refused to dismiss the criminal charges against her with prejudice and continued to investigate her even after she had been released. *Id.* at ¶ 58. Plaintiff alleges Defendants have also refused to change Todd Sommer's official cause of death from homicide to natural causes. *Id.* at ¶ 60.

In support of Plaintiff's first claim for violation of § 1983, Plaintiff alleges the "State Defendants," including Dumanis, Gunn, and Wagner, "knew or had reason to know that the results of the testing conducted by AFIP Environmental were corrupt, false, fabricated, and completely lacking in credibility." *Id.* at ¶ 64. Plaintiff alleges the State Defendants "knew or should have known that the deliberate fabrication of false evidence . . . would result in [Plaintiff's] wrongful arrest, incarceration, and subsequent conviction . . . ." *Id.* at ¶ 65. Plaintiff alleges the state defendants acted with "malice and with the intent to vex, annoy, and

harass Plaintiff" and to "inflict severe emotional distress" on Plaintiff. *Id.* at ¶ 67. Plaintiff alleges the District Attorney's Office and the Medical Examiner's Office "had a policy and custom of using, authorizing, ratifying, and/or covering up the use of corrupt, false, and fabricated evidence during their investigations." *Id.* at ¶ 68. Plaintiff alleges that she was deprived of her clearly established rights under the Fourth, Fifth, and Fourteenth Amendments. *Id.* at ¶ 69.

In support of her second claim for violation of §§ 1985 and 1986, Plaintiff alleges that the Federal Defendants, including the United States, violated her Fourth, Fifth, and Fourteenth Amendment rights by colluding to use "evidence they knew or should have known was corrupt, false, and fabricated" to build a case against Plaintiff and that in doing so, they acted under color of law. *Id.* at ¶ 72.

In support of her third claim for violation of the Federal Tort Claims Act, Plaintiff alleges agents and employees of the United States "negligently or intentionally used fabricated or contaminated evidence they knew or should have known was corrupt, false, and completely lacking in credibility" against Plaintiff. *Id.* at ¶ 79. Plaintiff alleges this constitutes "fraud, negligence, false imprisonment, assault, battery, defamation, intentional and negligent infliction of emotional distress, and invasion of privacy." *Id.* at ¶ 81.

In support of her fourth claim for a permanent injunction, Plaintiff alleges that the Defendants' wrongful conduct should be enjoined. *Id.* at ¶ 84. Plaintiff seeks the dismissal of the criminal charges against her with prejudice and seeks an order requiring the Medical Examiner's Office to change Todd Sommer's death certificate to state that he died of natural causes. *Id.* at ¶¶ 87- 88. Plaintiff also seeks an order requiring the District Attorney's Office, the Medical Examiner's Office, and the United States to require their employees to be trained to "comply with their legal duties with respect to the proper handling and use of evidence during criminal investigations." *Id.* at ¶ 89.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure

8(a) provides: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g.*, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss."). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

## ANALYSIS

### I. Dumanis and Gunn's Motion to Dismiss

#### A. Contentions of the Parties

Defendants Dumanis and Gunn, the District Attorney and Deputy District Attorney for San Diego, contend that Plaintiff's Complaint fails to state a claim against them pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6). (Doc. # 4 at 1). Dumanis

and Gunn contend that there are no "factual, non-conclusory allegations showing that Dumanis and Gunn did anything that would fall outside the prosecutorial function," and that they are therefore entitled to prosecutorial immunity. (Doc. # 4-1 at 14). Dumanis and Gunn contend that Plaintiff cannot allege false imprisonment or false arrest because she was arrested pursuant to a warrant. *Id.* at 18. Dumanis and Gunn contend that Plaintiff has failed to allege a due process violation because she has alleged "no non-conclusory factual allegations showing that anyone *deliberately* fabricated evidence." *Id.* at 21 (*citing Devereaux v. Abbey*, 263 F.3d 1070, 1075-76 (9th Cir. 2001)). Dumanis and Gunn contend that *Brady* violations for failure to turn over exculpatory evidence are not actionable unless there was bad faith, which Plaintiff fails to allege. *Id.* at 21. Dumanis and Gunn contend that Plaintiff does not plead facts which establish "a real and immediate threat" of prosecution, so she does not have standing to seek to enjoin them from prosecuting her. *Id.* at 22. Dumanis and Gunn contend that Plaintiff does not have standing to pursue her claims to have her husband's death certificate amended or to force Defendants to change the way law enforcement personnel are trained. *Id.* at 22-23. Dumanis and Gunn contend that to the extent Plaintiff is seeking relief under California law, she is barred because she failed to timely present an administrative claim to the State of California. *Id.* at 25-30.

Plaintiff contends that her allegations that Dumanis and Gunn ignored the initial autopsy findings, the inconsistencies in the lab test results, the opinion of several independent forensic toxicologists, and numerous breaks in the chain of custody sufficiently support a *Devereaux* claim that Dumanis and Gunn fabricated evidence and continued their investigation after they knew or should have known that Plaintiff was innocent. (Doc. # 7 at 6). Plaintiff contends that she has alleged facts that would establish that Dumanis and Gunn were acting in an investigatory capacity rather than a prosecutorial capacity when they worked jointly with investigators to fabricate a case against her. *Id.* at 7. Plaintiff contends that Dumanis and Gunn are not entitled to absolute prosecutorial immunity because their actions were not taken in a prosecutorial capacity. *Id.* at 8-10. Finally, Plaintiff contends that she has standing to seek injunctive relief because she has

been harassed and prosecuted in bad faith by Dumanis and Gunn. *Id.* at 11.

**B. Prosecutorial Immunity and Fabrication of Evidence**

Prosecutors are absolutely immune from suit for actions taken in their capacity as prosecutors. *See, e.g., Waggy v. Spokane County Wa.*, 594 F.3d 707, 710 (9th Cir. 2010). "'A state prosecuting attorney enjoys absolute immunity from liability under § 1983 for [her] conduct in pursuing a criminal prosecution insofar as [s]he acts within [her] role as an advocate for the State and her actions are intimately associated with the judicial phase of the criminal process.'" *Id.* (alterations in original) (*quoting Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009)). When prosecutors are acting in their official capacity, but not performing prosecutorial functions, they are protected only by the qualified immunity that protects all public officials. *See, e.g., Buckley v. Fitzimmons*, 509 U.S. 259, 278 (1993). There is a presumption that "qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties," and only uniquely prosecutorial functions will justify granting absolute immunity to prosecutors despite that presumption. *Id.* The burden rests on the prosecutor to show that she is entitled to prosecutorial immunity. *Id.*

In *Buckley*, the lead case on prosecutorial immunity, the plaintiff alleged that "during the early stages of the investigation" of a kidnapping, prosecutors had knowingly selected an expert who was "allegedly well known for her willingness to fabricate unreliable expert testimony" to match boot prints left at the scene to the plaintiff's boots. *Id.* at 262-63. The plaintiff alleged that prosecutors had "shopped for experts until they found one who would provide the opinion they sought." *Id.* at 273. The plaintiff alleged the prosecutors conspired to manufacture this evidence after three separate studies conducted by state and federal forensic experts failed to link the plaintiff to the boot prints. *Id.* at 262. After the expert the prosecutors had selected died, the plaintiff alleged the prosecutors were unable to prosecute him because they could not locate another expert willing to testify that there was a match between the boot prints at the scene of the crime and the plaintiff's boots. *Id.* at 260. The Supreme Court held that these alleged acts were investigatory, not prosecutorial, and that

prosecutorial immunity does not apply when a prosecutor is acting in an investigative capacity "during the preliminary investigation of an unsolved crime." *Id.* at 275. "When the functions of prosecutors and detectives are the same . . . the immunity that protects them is also the same," therefore the prosecutors' actions were only protected by qualified, rather than absolute, immunity. *Id.* at 276. "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial." *Id.* Before probable cause exists to arrest anyone, "[a] prosecutor neither is, nor should consider himself to be, an advocate." *Id.* at 274.

"As the Supreme Court has acknowledged, the distinction between the roles of 'prosecutor' and 'investigator' is not always clear." *al-Kidd v. Ashcroft*, 580 F.3d 949, 958 (9th Cir. 2009). "While the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom, absolute prosecutorial immunity will be given only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Id.* (citations omitted). In essence, if a prosecutor is not "*preparing to prosecute or prosecuting criminal violations*," then her actions are not protected by absolute immunity. *Bishop Paiute Tribe v. County of Inyo*, 291 F.3d 549, 565 (9th Cir. 2002) (citation omitted). The operative question is "whether the prosecutor's actions are *closely associated* with the judicial process." *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) (*quoting Milstein v. Cooley*, 257 F.3d 1004, 1009 (9th Cir. 2001)).

In *Devereaux*, the Ninth Circuit recognized "a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that is deliberately fabricated by the government." *Devereaux*, 263 F.3d at 1075. In order to state a § 1983 claim based upon a prosecutor's deliberate fabrication of evidence, a plaintiff must plead facts that, if true, would establish that: "(1) Defendants continued their investigation of [the plaintiff] despite the fact that they knew or should have known that [the plaintiff] was

innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Id.* at 1076. Accusations that evidence was improperly or negligently collected do not support a § 1983 claim. *See id.* at 1076-77. "Failing to follow guidelines or carry out an investigation in a manner that will ensure an error-free result is one thing; intentionally fabricating false evidence is quite another." *Id.*

Plaintiff alleges that Dumanis and Gunn continued to investigate her despite knowing forensic facts that proved Todd Sommer was not poisoned with arsenic. Plaintiff alleges Dumanis and Gunn understood the significance of those forensic facts and nonetheless continued the investigation for the purpose of fabricating evidence. Plaintiff alleges that Dumanis and Gunn knew or should have known that the AFIP laboratory results showing arsenic—the only indication Todd Summer's death was by homicide—were false in light of other forensic evidence. Plaintiff alleges that in addition to apparent inconsistencies between the positive test for arsenic and the other forensic testing, Dumanis and Gunn consulted "several qualified independent forensic toxicologists . . . [who] refused to concur in the results of the testing performed by AFIP." (Doc. # 1 at ¶ 29). Plaintiff alleges Dumanis and Gunn contacted Alphonse Polkis, "a highly respected forensic pathologist and [a] leading expert in arsenic poisoning . . . [who stated] that there was no evidence that Todd Sommer died of arsenic poisoning and that the AFIP test results were false." *Id.* at ¶ 30. Plaintiff alleges Centeno, who performed the testing at AFIP, told Dumanis and Gunn "the tissue samples appeared to be contaminated." *Id.*

Accepting as true all facts alleged in the Complaint and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that the Complaint contains sufficient factual allegations to support a § 1983 due process claim against Dumanis and Gunn for deliberate fabrication of evidence during the investigation of Todd Sommer's death. Plaintiff has made specific, non-conclusory allegations that, if proven, would be sufficient to establish that Dumanis and Gunn continued to investigate Plaintiff despite knowing or having sufficient evidence that they should have known that Todd Sommer was not murdered.

Plaintiff's allegations in this case mirror those made by the plaintiff in *Buckley*—that the prosecutors, "shopped for experts until they found one who would provide the opinion they sought" and ignored the consensus view of other forensic experts regarding the same evidence. *See Buckley*, 509 U.S. at 272. In addition to the forensic inconsistencies, Plaintiff alleges several other flaws with the arsenic testing that should have alerted Dumanis and Gunn to her innocence, including their knowledge that AFIP did not generally perform forensic arsenic testing, that AFIP had no experience using the equipment AFIP used for the arsenic testing, and that there were numerous breaks in the chain of custody of the tissue samples that AFIP tested.

Plaintiff's allegations detailing the participation of Dumanis and Gunn in the early stages of the investigation, if true, would be sufficient to establish that they were acting in an investigatory, rather than a prosecutorial, capacity. Prosecutors are not entitled to prosecutorial immunity against a claim of fabrication of evidence during the "preliminary investigation" of a possible crime. *See Buckley*, 509 U.S. at 275.

Dumanis and Gunn's Motion to Dismiss on the grounds that Plaintiff failed to state a *Devereaux* claim for intentional fabrication of evidence is denied. Dumanis and Gunn's Motion to Dismiss all claims against them on the grounds of prosecutorial immunity is denied.

**C. Injunctive Relief**

In general, a federal court may not enjoin a pending state court criminal prosecution. *See, e.g., Younger v. Harris*, 401 U.S. 37 (1971); *see also* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."). A limited exception allows federal courts to enjoin future unconstitutional state criminal prosecutions pursuant to § 1983 if prosecution has been threatened but there is no state criminal prosecution pending. *See, e.g.*, *Wooley v. Maynard*, 430 U.S. 705, 710 (1977); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). Absent a sufficiently "credible threat of prosecution," however, a plaintiff lacks standing to seek an injunction because the potential harm to the plaintiff is merely hypothetical. *See Babbit v.*

*United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). A second exception to the general rule in *Younger* exists for bad faith prosecutions. *See Kulger v. Helfant*, 421 U.S. 117, 126 n. 6 (1975). A prosecution is in bad faith if it "has been brought without reasonable expectation of obtaining a valid conviction." *Id.*

Plaintiff has failed to allege facts that could establish that she is under a sufficient threat of prosecution to support standing to enjoin a future criminal prosecution. Plaintiff has not alleged that any Defendant has threatened to re-prosecute her, nor has she alleged any facts which suggest that any Defendant imminently intends to re-prosecute her. Because Plaintiff has not alleged an imminent threat of prosecution, she has not alleged a sufficiently certain harm to have standing to seek an injunction. Dumanis and Gunn's Motion to Dismiss Plaintiff's claim for an injunction against future prosecution is granted.

Plaintiff also lacks standing to seek an injunction ordering the District Attorney's Office to require its personnel to undergo additional training. Plaintiff has alleged no facts which could establish that she has personal stake in the future operation of the District Attorney's Office. *See, e.g., Thomas v. Mundell*, 572 F.3d 756 (9th Cir. 2009) (a county attorney and crime victims lack standing to sue to enjoin the functioning of specialized Spanish-speaking and Native American DUI courts which allegedly produced lighter sentences). Dumanis and Gunn's Motion to Dismiss Plaintiff's claim for an injunction ordering the District Attorney's Office to require its personnel to undergo additional training is granted.

## II. Wagner's Motion to Dismiss

### A. Contentions of the Parties

Defendant Wagner, the Chief Medical Examiner for the County of San Diego, contends that Plaintiff has, at most, alleged *Brady* violations and negligence, which cannot be the basis of a § 1983 claim against Wagner. (Doc. # 5-1 at 16). Wagner contends that Plaintiff has not alleged a *Devereaux* claim for fabrication of evidence because she has offered "no non-conclusory factual allegations showing that anyone *deliberately* fabricated evidence." *Id.* at 17. Wagner contends that the existence of the untested tissue samples was disclosed to Plaintiff's attorney during pretrial discovery. *Id.* Wagner attaches the discovery receipt in

support of his contention that Plaintiff's attorney received the disclosure. (Doc. # 5-2, Ex. B). Wagner contends that Plaintiff has not alleged a bad faith failure to collect or preserve exculpatory evidence, which is fatal to a claim pursuant to *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). (Doc. # 5-1 at 17). Wagner contends that Plaintiff has not alleged facts which establish that she has standing to sue to enjoin state prosecution because she is not under an imminent threat of prosecution. *Id.* at 18.

Wagner contends that Plaintiff lacks standing to seek an injunction requiring Todd Sommer's death certificate to be changed or requiring law enforcement personnel to undergo additional training because "Plaintiff has no constitutional stake in how law enforcement does its job." *Id.* at 20. Wagner contends that concerns of comity and federalism constrain federal courts from enjoining state law enforcement activity. *Id.* at 21. Wagner contends that Plaintiff cannot assert a claim for false arrest because her arrest was pursuant to a warrant. *Id.* at 22. Wagner contends that Plaintiff is barred from presenting any state law claims because she failed to timely present an administrative claim. *Id.* at 22-23.

Wagner further contends that Plaintiff has failed to allege a § 1985 or § 1986 claim against him as a "federal defendant" because she has not alleged a conspiracy against her to deprive her of a constitutional right due to membership in a protected class. *Id.* at 19. Wagner contends that he cannot be held liable as the supervisor of AFIP at the time the arsenic testing was done because Plaintiff fails to allege a sufficient causal connection between any action Wagner took and the alleged constitutional violation. *Id.* at 19-20.

Plaintiff contends that the Complaint contains non-conclusory factual allegations which plausibly support a § 1983 claim against Wagner on the grounds that he knowingly or recklessly falsified Todd Sommer's death certificate based on test results he knew or should have known were false. (Doc. # 11 at 2). Plaintiff contends that her allegations that the test results conflicted with the autopsy findings, that the arsenic level found by the test were higher than any prior test results, that the lab results conflicted with the scientific literature on arsenic poisoning, that the test results were doubted by Wagner's own employee who performed the test, and that the reliability of the test results were called into question by several independent

forensic experts are sufficient to state a § 1983 claim. *Id.* at 2, 4-5. Plaintiff contends that she has alleged a *Monell* supervisory liability claim against Wagner for "a policy and custom of using, authorizing, ratifying, and/or covering up the use of corrupt, false, and fabricated evidence." *Id.* at 8. Plaintiff contends that she has standing to seek injunctive relief from future prosecution because Wagner and the other Defendants' actions show their "desperate and reckless hope to again charge her with murder." *Id.* at 9 (citing Compl. at ¶ 58). Plaintiff contends that Wagner's refusal to change the cause of death on Todd Sommer's death certificate from homicide to natural causes shows Defendants' determination to further pursue criminal charges against her. *Id.* Plaintiff contends that the threat of prosecution is sufficiently imminent to allow her to proceed against Wagner. *Id.* at 9-10.

**B. Request for Judicial Notice**

Wagner asks the Court to take judicial notice of a declaration in support of the arrest warrant by Defendant Rob Terwilliger (Doc. # 5-2, Ex. A), a NCIS list of Post Mortem Specimens Retained by AFIP (Doc. # 5-2, Ex. B), the discovery receipt for that document signed by Plaintiff's criminal defense attorney, *id.*, and an Order Denying Petition for Relief from Claim Requirement issued by the Superior Court for the State of California for the County of San Diego (Doc. # 5-2, Ex. C).

Plaintiff objects to Wagner's request for judicial notice. (Doc. # 12 at 1). Plaintiff contends that the request is improper and "asks the [C]ourt to take judicial notice of information that is not relevant to Plaintiff's claims or Defendant's Motion to Dismiss." *Id.* Plaintiff contends that Exhibit A, Defendant Terwilliger's Declaration in Support of Arrest Warrant, is irrelevant because Plaintiff has not filed claims for false arrest or false imprisonment. *Id.* at 2. Plaintiff contends that it would be improper for the Court to take judicial notice of the declaration because "it is subject to reasonable dispute" because it "is not signed by the Judge or otherwise . . . filed in or seen by the [state] court." *Id.* Plaintiff contends that "[t]here is no way for this Court to make a determination of whether Terwilliger, a defendant in this case, actually signed the document." *Id.* Plaintiff contends that Exhibit B, the NCIS list of Post Mortem Specimens Retained by AFIP, is irrelevant because Plaintiff is

not attempting to allege any claims based on *Brady* violations. *Id.* at 2-3. Plaintiff contends that it is not clear from the documents that Wagner submitted that Plaintiff's criminal trial attorney actually received the version of the list Wagner has presented to this Court. *Id.* at 3. Plaintiff contends that judicial notice should be denied because the document is reasonably subject to dispute. *Id.* Finally, Plaintiff contends the Order Denying Petition for Relief from Claim Requirement is irrelevant because Plaintiff is not alleging any state law claims against any Defendant. *Id.* at 3-4.

In general, courts do not consider "matters outside the pleadings" at the motion to dismiss stage. *See* Fed. R. Civ. Pro. 12(b)(6), 12(d). A motion to dismiss for failure to state a claim challenges the sufficiency of the plaintiff's pleadings in the complaint and does not address whether a plaintiff will be able to produce evidence to prove those claims. *Id.* In order to consider "matters outside the pleadings," a court must generally convert a motion to dismiss into a motion for summary judgment and give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* At this early stage in the proceedings, no discovery has been conducted, and converting the motion to dismiss into a summary judgment motion would be inappropriate. The Court can, therefore, only consider evidence which falls under certain exceptions to the general rule that "matters outside the pleadings" cannot be considered. *See, e.g., Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (9th Cir. 1991). For example, "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino*, 146 F.3d at 706. Wagner does not identify any exception which would allow the Court to consider the documents he has submitted to the Court. The Court therefore declines to take judicial notice of Exhibit A, Defendant Terwilliger's Declaration in Support of Arrest Warrant, Exhibit B, the NCIS list of Post Mortem Specimens Retained by AFIP, or Exhibit C, the Order Denying Petition for Relief from Claim Requirement.

**C. Section 1983 Claim**

In order to state a claim for a violation of § 1983, a plaintiff must allege deprivation of

a constitutional right by a government official acting "under color of state law." *Broam*, 320 F.3d at 1028. "[A] coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment." *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). The plaintiff in *Galbraith* alleged that the medical examiner "deliberately lied about the autopsy in the autopsy report, in his communications with other investigators, and on the witness stand at the preliminary hearing in order to cover up his incompetence, and that these lies proximately caused Galbraith's arrest and prosecution for murder." *Id.* at 1127. The plaintiff in *Galbraith* alleged that the medical examiner "recklessly disregarded the truth by asserting in his autopsy report that [the plaintiff's deceased wife] was strangled by an assailant while ignoring abundant evidence that pointed to suicide." *Id.* The Ninth Circuit concluded that allegations of deliberate or reckless falsification of evidence by a medical examiner leading to the plaintiff's wrongful prosecution for murder were sufficient to state a § 1983 claim for deprivation of liberty under the Fourth Amendment against the medical examiner. *Id.*

In this case, Plaintiff has alleged that Wagner knew or should have known that the AFIP testing was not reliable but nonetheless relied on it to conclude that Todd Sommer had been poisoned. Plaintiff has set forth in detail factual allegations which support her allegation that Wagner deliberately or recklessly falsified Todd Sommer's cause of death on the death certificate, including the inconsistencies in the forensic evidence, the opinions of other experts, and the breaks in the chain of custody. Plaintiff alleges facts which, if proven, would be sufficient to establish that Wagner's determination that Todd Sommer had been poisoned was central to Plaintiff's arrest and prosecution. Accepting as true all facts alleged in the Complaint and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Plaintiff's factual allegations are sufficient to state a § 1983 claim for deprivation of liberty by the reckless or deliberate falsification of evidence in violation of the Fourth Amendment. Wagner's Motion to Dismiss is denied as to Plaintiff's § 1983 claim against Wagner.

To support a § 1983 claim for supervisory liability, a plaintiff must allege more than

mere knowledge of a subordinate's violation of the plaintiff's constitutional rights. *See, e.g.*, *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000). Supervisors may be held liable for "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Id.* Plaintiff alleges the bare elements of a § 1983 claim for supervisory liability, but such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Ashcroft*, 129 S. Ct. at 1949 ( 2009) (*citing Bell Atl. Corp.*, 550 U.S. 544). Plaintiff has not supported her conclusory legal statements with factual allegations sufficient to state a plausible claim for relief against Wagner for supervisory libaility. Wagner's Motion to Dismiss is granted as to Plaintiff's *Monell* claim for supervisory liability.

**D. Section 1985 and 1986 Claims**

Plaintiff has not presented any argument in opposition to Wagner's Motion to Dismiss the §§ 1985 and 1986 claims. The Court concludes that Plaintiff's allegations in support of her §§ 1985 and 1986 claims are insufficient to state a claim against Wagner. Plaintiff has not alleged membership in a protected class, which is required by § 1985(3) in order to state a claim based on a deprivation of rights and privileges and by § 1986 to state a claim for conspiracy to violate § 1985. 42 U.S.C. §§ 1985(3), 1986. Therefore, to the extent that Plaintiff has alleged a §§ 1985 and 1986 claim against Wagner, Wagner's Motion to Dismiss is granted as to those claims.

**E. Injunctive Relief**

Plaintiff lacks standing to enjoin future prosecution for the reasons discussed above. In any event, as Wagner is not a prosecutor, Wagner is not a proper defendant for a claim for such injunctive relief. To the extent that Plaintiff alleged a claim against Wagner for an injunction against future prosecution, Wagner's Motion to Dismiss is granted as to that claim.

Plaintiff also lacks standing to seek an injunction requiring Wagner to change Todd Sommer's death certificate. Plaintiff's alleged injury from the erroneous death certificate is

the "threat of a direct injury and harassment by the [District Attorney's Office] and NCIS investigators seeking to charge her again with murder without any evidence of homicide." (Doc. # 11 at 9). Plaintiff has linked her claim for injunctive relief requiring Wagner to change Todd Sommer's death certificate to her claim for injunctive relief against future prosecution, which she does not have standing to bring. Wagner's Motion to Dismiss is granted as to Plaintiff's claim for injunctive relief.

Plaintiff lacks standing to seek an injunction ordering the Medical Examiner's Office to require its personnel to undergo additional training for the reasons discussed above. Wagner's Motion to Dismiss is granted as to Plaintiff's claim for injunctive relief.

## III. The United States' Motion to Dismiss

The United States contends that Plaintiff's second claim for violation of 42 U.S.C. §§ 1985 and 1986 should be dismissed because the United States has not waived sovereign immunity. (Doc. # 15-1 at 3). The United States contends that the only avenue of relief available to Plaintiff against the United States is the Federal Tort Claims Act, which is the basis of Plaintiff's third claim. Plaintiff conceded that her second claim against the United States should be dismissed. (Doc. # 17). Plaintiff's second claim for violation of §§ 1985 and 1986 is dismissed as to the United States.

## CONCLUSION

IT IS HEREBY ORDERED THAT:

(1) The Motion to Dismiss filed by Defendants Bonnie Dumanis and Laura Gunn (Doc. # 4) is **DENIED** as to Plaintiff's § 1983 claim and **GRANTED** as to Plaintiff's claim for an injunction against future prosecution.

(2) The Motion to Dismiss filed by Defendant Glenn N. Wagner (Doc. # 5) is **GRANTED** as to Plaintiff's § 1983 claim for *Monell* supervisory liability, Plaintiff's §§ 1985 and 1986 claims, and Plaintiff's claims for injunctive relief and is otherwise **DENIED**.

(3) The Motion to Dismiss filed by Defendant the United States of America (Doc. # 15) is **GRANTED** as to the second claim for relief for violation of 42 U.S.C. §§ 1985 and 1986.

DATED: May 10, 2010

**WILLIAM Q. HAYES**
United States District Judge