# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA SOMMER,<br><br>　　　　　　　　　　Plaintiff,<br>vs.<br>UNITED STATES OF AMERICA, ROB TERWILLIGER, RICK RENDON, MARK RIDLEY, S.D. ADAMS, JOSE CENTENO, COUNTY OF SAN DIEGO MEDICAL EXAMINER'S OFFICE, GLENN N. WAGNER, COUNTY OF SAN DIEGO DISTRICT ATTORNEY's OFFICE, BONNIE DUMANIS, LAURA GUNN, and DOES 1 through 100, inclusive,<br><br>　　　　　　　　　　Defendants. | CASE NO. 09cv2093 WQH (WMc)<br><br>**ORDER** |

HAYES, Judge:

　　The matters before the Court are the motions to dismiss filed by the "Unnamed Putative Defendant County of San Diego" (Doc. # 32), by Rob Terwilliger (Doc. # 35), by Jose Centano[1] (Doc. # 37), by Rick Rendon and Mark Ridley (Doc. # 38), by S.D. Adams (Doc. # 41), and by Glenn N. Wagner in his federal capacity (Doc. # 54).

## BACKGROUND

　　On September 24, 2009, Plaintiff initiated this action by filing her Complaint. (Doc.

---

[1] Jose Centano's last name is spelled "Centeno" in the caption and in the Complaint, however, his own filings use "Centano." The Court uses "Centano" in the order, except where the Court quotes the Complaint.

# 1). On May 6, 2010, the "Unnamed Putative Defendant County of San Diego" moved to dismiss the Complaint. (Doc. # 32). On May 10, 2010, Defendant Rob Terwilliger moved to dismiss the Complaint. (Doc. # 35).

On May 10, 2010, the Court denied Defendants Bonnie Dumanis and Laura Gunn's Motion to Dismiss as to Plaintiff's 42 U.S.C. § 1983 claim and granted their motion to dismiss Plaintiff's claim for an injunction barring Dumanis and Gunn from prosecuting Plaintiff. (Doc. # 36 at 19-20). The Court granted Defendant Glenn N. Wagner's motion to dismiss as to Plaintiff's § 1983 claim for *Monell* supervisory liability, Plaintiff's §§ 1985 and 1986 claims, and Plaintiff's claims for injunctive relief and otherwise denied the motion. *Id.* The Court granted Defendant the United States of America's motion to dismiss Plaintiff's §§ 1985 and 1986 claims.

On May 14, 2010, Defendant Jose Centano moved to dismiss the Complaint. (Doc. # 37). On May 25, 2010, Defendant S.D. Adams moved to dismiss the Complaint. (Doc. # 41). On June 18, 2010, Defendant Glenn N. Wagner moved to dismiss the Complaint's claims against him in his federal capacity. (Doc. # 54).

## ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges that in February of 2002, Plaintiff's husband, Todd Sommer, a 23-year-old Sergeant in the United States Marine Corps, died of a cardiac arrhythmia. (Doc. # 1 at ¶ 1). Plaintiff alleges she was wrongfully tried and convicted for murdering her husband. *Id.* at ¶¶ 1-2.

Plaintiff alleges Todd Sommer collapsed in the early morning of February 18, 2002. *Id.* at ¶ 12. Plaintiff alleges she called 911 and attempted CPR. *Id.* Plaintiff alleges Todd Sommer was pronounced dead at the hospital approximately half an hour later. *Id.* at ¶ 13. Plaintiff alleges Dr. Stephen L. Robinson performed an autopsy and concluded that Todd Sommer had died of cardiac arrhythmia. *Id.* at ¶¶ 14-18. Plaintiff alleges Dr. Robinson did not find any signs of poisoning. *Id.* at ¶ 17. Plaintiff alleges Dr. Robinson preserved tissue samples during the autopsy. *Id.* Plaintiff alleges Dr. Robinson forwarded the report to Dr. Brian D. Blackbourne, then the Chief Medical Examiner for the County of San Diego. *Id.* at

1  ¶ 19. Plaintiff alleges Dr. Blackbourne agreed with Dr. Robinson that Todd Sommer had died
2  of natural causes. *Id.* Plaintiff alleges Dr. Blackbourne issued a death certificate which
3  identified the manner of death as natural and the probable cause of death as cardiac arrhythmia
4  of undetermined etiology. *Id.*

5  Plaintiff alleges that despite the results of the autopsy and the Medical Examiner's
6  opinion, "Defendants refused to accept those results and embarked upon an investigation
7  intended to find criminal conduct" by Plaintiff. *Id.* at ¶ 21. Plaintiff alleges that Defendant
8  Terwilliger, an NCIS agent, "personally disapproved of Mrs. Sommer's behavior, later
9  referring to her as a 'party girl.'" *Id.* Plaintiff alleges that instead of relying on scientific
10 evidence, Defendants focused on her "conduct and breast implants" which they believed
11 "proved that she had murdered her husband." *Id.* at ¶ 22. Plaintiff alleges that Defendant
12 Ridley, also an NCIS agent "disregarded the medical opinions of two highly respected
13 pathologists, the other medical professionals they had consulted with, and a body of medical
14 literature in forming his own unsupported 'medical' opinion that 'twenty-three year old young
15 men don't just die.'" *Id.* Plaintiff alleges that "Ridley thought the investigation just 'needed
16 additional work' and that eventually [n]aval investigators would find something to implicate
17 her." *Id.*

18 Plaintiff alleges that Defendants were "[d]esperate for any evidence to justify their
19 continued investigation" and sent tissue samples to the Environmental Division of the Armed
20 Forces Institute of Pathology ("AFIP"). *Id.* at ¶ 23. Defendant Centano was the lab director
21 for AFIP's Environmental Division and oversaw all work performed at the lab. *Id.* Defendant
22 Wagner, now the Chief Medical Examiner for the County of San Diego, was at that time the
23 director of AFIP "and was responsible for final oversight of all work performed at the lab."
24 *Id.*

25 Plaintiff alleges AFIP "purportedly found extremely high levels of arsenic in two of six
26 tissue samples," which shows "the samples were negligently or intentionally contaminated"
27 because "arsenic is ubiquitous." *Id.* at ¶ 24. Plaintiff alleges all of the tissue samples, as well
28 as Todd Sommer's blood and urine, "should have shown high levels of arsenic" if the test

1  results were accurate. *Id.* Plaintiff alleges Centano "believed that the two tissue [samples] that
2  tested positive for arsenic had likely been contaminated, possibly coming into contact with
3  arsenic . . . ." *Id.* Plaintiff alleges Defendants knew or should have known that AFIP was not
4  a competent testing facility and that Defendants chose the lab because they knew "a competent
5  testing facility would conclusively prove that Todd Sommer did not die of arsenic poisoning."
6  *Id.* at ¶ 25. Plaintiff alleges the Environmental Division of AFIP did not normally perform this
7  type of testing and performed the tests on a newly purchased piece of equipment, an
8  Inductively Coupled Plasma Mass Spectrometer, which the lab technicians were using for the
9  first time. *Id.* at ¶ 26.

10  Plaintiff alleges Defendants were also aware that there had been "over sixteen breaks
11  in the chain of custody" after AFIP had received the samples and that "[t]issues that are not
12  properly maintained are susceptible to contamination," which can "produce false positives for
13  arsenic." *Id.* at ¶ 27. Plaintiff alleges the level of arsenic found by the tests "clearly showed
14  AFIP's test results were inaccurate" because "[t]he results were so unusually high that such
15  findings had never been seen in the history of reported arsenic testing and exceeded any
16  previously reported contamination levels by approximately . . . 1250%." *Id.* Plaintiff alleges
17  the test results were "contradicted by the autopsy results . . . [which] showed no indication of
18  . . . damage to the internal organs or blood vessels." *Id.* at ¶ 28. Plaintiff alleges Todd
19  Sommer did not exhibit symptoms of arsenic poisoning before his death. *Id.*

20  Plaintiff alleges "[d]uring their investigation prior to Mrs. Sommer's arrest, Defendants
21  consulted with several qualified independent forensic toxicologists . . . . [who] refused to
22  concur in the results of the testing performed by AFIP [because] the results were demonstrably
23  false." *Id.* at ¶ 29. Plaintiff alleges one such expert, Alphonse Poklis, "a highly respected
24  forensic pathologist and [] leading expert in arsenic poisoning," told Defendants there was "no
25  evidence that Todd Sommer died of arsenic poisoning" and that the test results were "false."
26  *Id.* at ¶ 30. Plaintiff alleges Defendants Dumanis and Gunn "knew or should have known
27  during the investigation . . . that there was no evidence" that Plaintiff killed Todd Sommer.
28  *Id.* at ¶ 32. Plaintiff alleges Dumanis and Gunn "believed that a high-profile arrest and

conviction would serve their personal goals and make the D[istrict] A[ttorney's] O[ffice] famous." *Id.* at ¶ 33. Plaintiff alleges Dumanis and Gunn sought to change Todd Sommer's death certificate to homicide by arsenic poisoning "so that they could make their pieces fit" and go forward with a prosecution. *Id.* at ¶ 34. Plaintiff alleges Dumanis and Gunn convinced Wagner, who had left his position as head of AFIP to become the Chief Medical Examiner for the County of San Diego during the Sommer investigation, to change the death certificate. *Id.* at ¶ 35.

Plaintiff alleges Wagner "knew or should have known that the AFIP test results were corrupt, false, and possibly fabricated," especially in light of an email exchange between Wagner and Centano, who conducted the test. *Id.* at ¶ 36. Plaintiff alleges Wagner emailed Centano to ask for an explanation of the high level of arsenic found in two samples while the other four samples and Todd Sommer's blood and urine were negative. *Id.* Plaintiff alleges Centano replied that he was "surprised by the high arsenic levels." *Id.* Plaintiff alleges Centano further stated he "thought the tissue samples were contaminated during collection" and "I don't have a good interpretation of these results." *Id.* Plaintiff alleges that "[d]espite the concern expressed by independent toxicologists and his own doubts about the validity of the results, [] Centeno. . . agreed to approve and adopt the results and to opine, without proper basis, that Todd Sommer had died from massive arsenic poisoning." *Id.* at ¶ 37.

Plaintiff alleges Wagner knew or should have known that the test results were fabricated, but nonetheless changed Todd Sommer's cause of death to cover up the problems at AFIP and avoid "public embarrassment" and protect his "professional image." *Id.* at ¶ 39. Plaintiff alleges Defendants, including Wagner and S.D. Adams, were aware of another set of samples "buried in a box in a closet at the Balboa Naval Hospital," but "chose not to send the preserved tissue samples out for testing." *Id.* at ¶¶ 38, 42. Plaintiff alleges Defendants instead "sealed them back up in the box and left them buried in a closet until Mrs. Sommer had been arrested, convicted, and spent almost two and a half years in jail for a murder that never happened." *Id.* at ¶ 42.

Plaintiff alleges naval investigators interviewed Mrs. Sommer in Florida on November

29, 2005. *Id.* at ¶ 44. Plaintiff alleges she agreed to allow the interview to be tape recorded. *Id.* Plaintiff alleges that according to naval investigators, the tape recorder either malfunctioned, or one of them forgot to press the record button. *Id.* at ¶ 45. Plaintiff alleges the naval investigators therefore made their report of the interview based on their recollections of Mrs. Sommer's statements. *Id.* Plaintiff alleges the naval investigators' report "played a key role in Defendants investigation" and was used to establish probable cause to arrest her. *Id.* at ¶ 46.

Plaintiff alleges that she was arrested and charged with murdering Todd Sommer on November 30, 2005. *Id.* at ¶ 47. Plaintiff alleges Defendants used the publicity surrounding her arrest and trial to "maliciously disclose[] personal and private information about [her] further sensationalizing the case." *Id.* at ¶ 49. Plaintiff alleges she was convicted of her husband's murder on January 30, 2007. *Id.* at ¶ 50. Plaintiff alleges on August 31, 2007, Adams prepared a

> 'Special Attention' memorandum to 'All whom it may concern' and attached it to the box containing the tissue samples [from Todd Sommer's autopsy.] The subject line read in bold capital letters '**RETENTION OF AUTOPSY MATERIALS IN THE CASE OF SERGEANT TODD SOMMER, USMC, A02-13.**' In the memorandum, Adams acknowledged both his and the District Attorney's prior knowledge of the tissues' importance and their obvious relevance to Plaintiff's pending criminal case.  Notwithstanding this acknowledgment, neither Adams, Dumanis, nor Gunn disclosed the tissues['] existence to anyone [acting] on behalf of Plaintiff.

*Id.* at ¶ 55.

Plaintiff alleges her criminal defense attorney sought access to the additional tissue samples, and Defendant Gunn twice told Plaintiff's attorney that the samples "no longer existed." *Id.* at ¶ 53. Plaintiff alleges that "without notifying Mrs. Sommer or her attorney" that the samples had been located, Defendants had these additional samples "tested at a highly respected private testing facility in Canada." *Id.* at ¶ 54. Plaintiff alleges that "[n]one of the tissue samples showed the presence of any arsenic whatsoever . . . . prov[ing] . . . Mrs. Sommer had been convicted of a crime that had never occurred." *Id.* Plaintiff alleges on November 30, 2007, her conviction was overturned and she was granted a new trial. *Id.* at 52. On April 17, 2008, Plaintiff was released from custody. *Id.* at ¶ 56. Plaintiff alleges she had lost custody

of her children and incurred $500,000 in legal fees. *Id.* Plaintiff alleges her reputation was ruined and that many people still believe she murdered her husband. *Id.* at ¶ 57.

Plaintiff alleges Defendants Dumanis and Gunn refused to dismiss the criminal charges against her with prejudice and continued to investigate her even after she had been released. *Id.* at ¶ 58. Plaintiff alleges Defendants have also refused to change Todd Sommer's official cause of death from homicide to natural causes. *Id.* at ¶ 60. Plaintiff alleges "[t]he Defendants, and each of them, knew or had reason to know that Mrs. Sommer would be deprived of her constitutional rights . . . if they utilized inculpatory evidence that was corrupt, false, and fabricated to arrest and convict Mrs. Sommer for the death of her husband." *Id.* at ¶ 61. Plaintiff alleges "Defendants and each of them, acted recklessly and with gross negligence" and "colluded during their investigation to use evidence that they knew or should have known was false . . . ." *Id.*

In support of Plaintiff's first claim for violation of § 1983, Plaintiff alleges the "State Defendants," including Dumanis, Gunn, and Wagner, "knew or had reason to know that the results of the testing conducted by AFIP Environmental were corrupt, false, fabricated, and completely lacking in credibility." *Id.* at ¶ 64. Plaintiff alleges the State Defendants "knew or should have known that the deliberate fabrication of false evidence . . . would result in [Plaintiff's] wrongful arrest, incarceration, and subsequent conviction . . . ." *Id.* at ¶ 65. Plaintiff alleges the state defendants acted with "malice and with the intent to vex, annoy, and harass Plaintiff" and to "inflict severe emotional distress" on Plaintiff. *Id.* at ¶ 67. Plaintiff alleges the District Attorney's Office and the Medical Examiner's Office "had a policy and custom of using, authorizing, ratifying, and/or covering up the use of corrupt, false, and fabricated evidence during their investigations." *Id.* at ¶ 68. Plaintiff alleges that she was deprived of her clearly established rights under the Fourth, Fifth, and Fourteenth Amendments. *Id.* at ¶ 69.

In support of her second claim for violation of her constitutional rights and of §§ 1985 and 1986, Plaintiff alleges that the Federal Defendants, including the United States, violated her Fourth, Fifth, and Fourteenth Amendment rights by colluding to use "evidence they knew

or should have known was corrupt, false, and fabricated" to build a case against Plaintiff and that in doing so, they acted under color of law. *Id.* at ¶ 72.

In support of her third claim for violation of the Federal Tort Claims Act, Plaintiff alleges agents and employees of the United States "negligently or intentionally used fabricated or contaminated evidence they knew or should have known was corrupt, false, and completely lacking in credibility" against Plaintiff. *Id.* at ¶ 79. Plaintiff alleges this constitutes "fraud, negligence, false imprisonment, assault, battery, defamation, intentional and negligent infliction of emotional distress, and invasion of privacy." *Id.* at ¶ 81.

In support of her fourth claim for a permanent injunction, Plaintiff alleges that the Defendants' wrongful conduct should be enjoined. *Id.* at ¶ 84. Plaintiff seeks the dismissal of the criminal charges against her with prejudice and seeks an order requiring the Medical Examiner's Office to change Todd Sommer's death certificate to state that he died of natural causes. *Id.* at ¶¶ 87- 88. Plaintiff also seeks an order requiring the District Attorney's Office, the Medical Examiner's Office, and the United States to require their employees to be trained to "comply with their legal duties with respect to the proper handling and use of evidence during criminal investigations." *Id.* at ¶ 89.

## APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

1 requires more than labels and conclusions, and a formulaic recitation of the elements of a cause
2 of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to
3 dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*,
4 --- U.S. ----, 129 S. Ct. 1937, 1950 (2009). However, a court is not "required to accept as true
5 allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable
6 inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g.,
7 Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general
8 statement that Wal-Mart exercised control over their day-to-day employment is a conclusion,
9 not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted
10 conclusion in reviewing a motion to dismiss."). "In sum, for a complaint to survive a motion
11 to dismiss, the non-conclusory factual content, and reasonable inferences from that content,
12 must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret
13 Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

14 *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389
15 (1971), held that violation of the Fourth Amendment "by a federal agent acting under color of
16 his authority gives rise to a cause of action for damages consequent upon his unconstitutional
17 conduct." *Bivens* has been expanded by subsequent case law to allow suits for violations of
18 the due process clause of the Fifth Amendment. *Iqbal*, 129 S.Ct. at 1948 (citing *Davis v.
19 Passman*, 442 U.S. 228 (1979)). *Bivens* suits may only be maintained against federal officials
20 in their personal capacity and not in their official capacities. *Ibrahim v. Dep't of Homeland
21 Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008). In *Bivens* actions, "[g]overnment officials may not
22 be held liable for the unconstitutional conduct of their subordinates under a theory of
23 respondeat superior." *Iqbal*, 129 S.Ct. at 1948-51. "A plaintiff must plead more than a merely
24 negligent act by a federal official in order to state a colorable claim under *Bivens*." *O'Neal v.
25 Eu*, 866 F.2d 314, 314 (9th Cir. 1988).

26 Qualified immunity shields "officials performing discretionary functions . . . insofar as
27 their conduct does not violate clearly established statutory or constitutional rights." *Harlow
28 v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity analysis is the same for § 1983

1  claims against state officials and *Bivens* claims against federal officials. *Johnson v. Fankell*, 520 U.S. 911, 914-15. Under *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 129 S.Ct. 808, 818-19 (2009), the test for whether qualified immunity applies is "whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case."

## ANALYSIS

### I. "Unnamed Putative Defendant County of San Diego"

The County of San Diego contends that it was not named as a defendant to this action, but was served with process by Plaintiff. (Doc. # 32-1 at 1). The County of San Diego contends that it is listed in the Complaint as a geographic location only and that there are no other factual allegations pertaining to it. *Id.* at 2. The County of San Diego contends that it was served seven months after the Complaint was filed and that Plaintiff did not seek leave for untimely service pursuant to Federal Rule of Civil Procedure 4(m). *Id.*

Plaintiff contends that her claims against other Defendants, including District Attorney Bonnie Dumanis, the County of San Diego's District Attorney's Office, County Medical Examiner Glenn N. Wagner, and the County of San Diego Medical Examiner's Office are in effect claims against the County of San Diego. (Doc. # 43 at 2-3).

In its reply, the County of San Diego contends that to the extent Plaintiff's position is that the County of San Diego is the same entity as the District Attorney's Office and the Medical Examiner's Office, this theory is foreclosed by Ninth Circuit caselaw. (Doc. # 47 at 2).

Plaintiff did not name the County of San Diego as a defendant in this action. The County of San Diego is not the same entity as the District Attorney's Office or the Medical Examiner's Office. *See Streit v. County of L.A.*, 236 F.3d 552, 565 (9th Cir. 2001). The County of San Diego's motion is denied as moot because it is not a defendant to this action.

### II. Rob Terwilliger

Terwilliger, a Naval Criminal Investigative Service (NCIS) Agent, contends that Plaintiff has failed to allege facts which show that he knew AFIP's test results were false,

1  corrupt, or fabricated. (Doc. # 35-1 at 7). Terwilliger contends that Plaintiff has made
2  conclusory allegations that he colluded with other defendants, but has not offered factual
3  support for that conclusion. *Id.* Terwilliger contends that the only reference in the Complaint
4  to his personal involvement in the case is an allegation that he referred to Plaintiff as a "party
5  girl." *Id.* Terwilliger contends that Plaintiff has lumped him in with other Defendants and has
6  not established facts that show any causal connection between Terwilliger's conduct and harm
7  to Plaintiff. *Id.* at 8-9.

8  Plaintiff contends that she has stated a valid claim against Terwilliger because her
9  allegations about the actions of "Defendants" or "Naval Investigators" include Terwilliger.
10 (Doc. # 42 at 6). Plaintiff contends that her allegations establish that Terwilliger was "directly
11 and substantially involved" in the events leading to her prosecution because he was the affiant
12 whose declaration was submitted in support of a request for a warrant for Plaintiff's arrest. *Id.*
13 at 7. Plaintiff requests that this Court take judicial notice of Terwilliger's affidavit in support
14 of a warrant for Plaintiff's arrest which she has attached to her opposition. (Doc. # 42-1).

15 In his reply, Terwilliger contends it is not proper for the Court to take judicial notice
16 of the affidavit because it is not referenced in the Complaint, it is not authenticated, and it is
17 missing a case number, file stamp, and signature of a judge. (Doc. # 48 at 6). Terwilliger
18 contends Plaintiff was arrested in Florida and the document Plaintiff submitted references the
19 State of California Superior Court, which suggests this document is not the final version of
20 Terwilliger's declaration. *Id.*

21 In general, courts do not consider "matters outside the pleadings" at the motion to
22 dismiss stage. *See* Fed. R. Civ. P. 12(b)(6), 12(d). A motion to dismiss for failure to state a
23 claim challenges the sufficiency of the plaintiff's pleadings in the complaint and does not
24 address whether a plaintiff will be able to produce evidence to prove those claims. *Id.* In order
25 to consider "matters outside the pleadings," a court must generally convert a motion to dismiss
26 into a motion for summary judgment and give all parties "a reasonable opportunity to present
27 all the material that is pertinent to the motion." *Id.* At this early stage in the proceedings, no
28 discovery has been conducted, and converting the motion to dismiss into a summary judgment

motion would be inappropriate. The Court can, therefore, only consider evidence which falls under certain exceptions to the general rule that "matters outside the pleadings" cannot be considered. *See, e.g., Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (9th Cir. 1991). For example, "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino*, 146 F.3d at 706. Plaintiff does not identify any exception which would allow the Court to consider the documents she has submitted to the Court. The Court therefore declines to take judicial notice of Defendant Terwilliger's Declaration in Support of Arrest Warrant.

The only allegations in the Complaint which pertain to Terwilliger allege that he was involved in the investigation and made disparaging remarks about Plaintiff. *See* Compl., Doc. # 1 at ¶ 21. Plaintiff's allegations that pertain to "Defendants" or "naval investigators" are insufficient to put Terwilliger on notice of specific acts which form the basis of Plaintiff's claims against him. Even if the allegations directed at "Defendants" or "naval investigators" generally are taken into account, Plaintiff has not alleged facts which could, if proven true, establish that Terwilliger personally violated Plaintiff's constitutional rights or violated federal statutes. Terwilliger's motion to dismiss is granted.

**III.   Jose Centano**

Centano, a scientist with AFIP, contends that Plaintiff has failed to make a claim against him personally and relies on an untenable respondeat superior theory. (Doc. # 37-1 at 7). Centano contends that respondeat superior cannot support a *Bivens* claim. *Id.* at 8. Centano contends that Plaintiff's allegations "sound in negligence" which is not a proper basis for a *Bivens* claim. *Id.* at 9. Centano contends that Plaintiff has failed to allege that Centano had an "improper motive" and fabricated evidence. *Id.* Centano contends that Plaintiff has failed to show a causal connection between anything Centano did and an alleged constitutional violation. *Id.* at 10. Centano contends that "decisions NCIS and the state defendants made were necessary to secure a conviction" and these "intervening acts [] broke the chain of causation between Dr. Centano's alleged actions" and Plaintiff's conviction. *Id.* at 10.

Centano alleges a *Bivens* claim cannot be based on alleged Fourteenth Amendment violations because the Fourteenth Amendment only applies to the states. *Id.* at 3, n.3. Centano alleges he is entitled to qualified immunity. *Id.* at 4.

Plaintiff contends that she is not pursuing a respondeat superior theory against Centano, rather alleging a claim against Centano based on his own actions. (Doc. # 45 at 3-4). Plaintiff contends that the actions of the other state and federal defendants which lead to Plaintiff's conviction do not break the chain of causation between Centano's actions and Plaintiff's conviction. *Id.* at 7. Plaintiff contends that "Centano was directly involved in and essentially responsible for the testing of the original tissue samples" and that Centano "agreed to approve/adopt the results knowing they were contaminated, contrived and/or fabricated" after Centano became the director of AFIP. *Id.* at 8-9.

In her Complaint, Plaintiff alleges the Environmental Division of AFIP,[2] which Centano ran, "did not have the expertise to properly perform heavy metal testing on human tissue samples." Compl., Doc. # 1 at ¶ 25. Plaintiff alleges "this was the first time AFIP Environmental lab technicians had conducted these types of tests or tested biological tissues." *Id.* Plaintiff alleges AFIP's environmental division normally tested water and soil samples, not human tissue. *Id.* Plaintiff alleges the testing at the Environmental Division of AFIP was conducted on new lab equipment which the staff of the lab had not previously operated. *Id.* Plaintiff alleges Centano personally tested the tissue samples. *Id.* at ¶ 37. Plaintiff alleges that the results which showed high levels of arsenic in some tissues but not others led Centano to "believe[] that the two tissues that tested positive for arsenic had likely been contaminated, possibly coming into contact with arsenic at Naval Med, during transportation to AFIP, or while at the AFIP lab." *Id.* at ¶ 24. Plaintiff alleges Wagner sent an email to Centano asking about the test results. *Id.* at ¶ 36. Plaintiff alleges that Centano sent a reply email which stated

---

[2] Centano asserts he is in fact the head of the Biophysical Toxicology and that there is no "Environmental Division." *See* Doc. # 37-1 at 1, n.2. Centano contends that this Court should take judicial notice of AFIP's website because Plaintiff "directly referenced its organizational structure" and materials incorporated by reference can be considered on 12(b)(6) motions. *Id.* Plaintiff referenced AFIP, not AFIP's website. The Court declines to take judicial notice of AFIP's website.

1  he was "surprised by the high arsenic levels" and suspected contamination. *Id.* at ¶ 36.
2  Plaintiff alleges Centano further stated "I don't have a good interpretation of these results." *Id.*
3  Plaintiff alleges that "[d]espite the concern expressed by the independent toxicologists and his
4  own doubts about the validity of the results, Centeno . . . agreed to approve and adopt the
5  results and to opine, without proper basis, that Todd Sommer had died from massive arsenic
6  poisoning." *Id.* at 37. Plaintiff alleges these "corrupt, false, and fabricated test results" were
7  used to "dupe[] the jury into believing that Todd Sommer died of massive amounts of arsenic
8  poisoning." *Id.* at ¶ 50.

9  The Ninth Circuit addressed § 1983 actions for Fourth Amendment violations based
10 on reckless or intentional falsification of autopsy results by a coroner acting under color of
11 state law in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). Section
12 § 1983 actions are analogous to *Bivens* actions in that both actions seek redress for
13 constitutional violations by government officials acting under color of law. *See Bivens*, 403
14 U.S. at 389.

15 In Galbraith, the Ninth Circuit held that "a coroner's reckless or intentional falsification
16 of an autopsy report that plays a material role in the false arrest and prosecution of an
17 individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment." *Id.* The
18 plaintiff in *Galbraith* alleged that the medical examiner "deliberately lied about the autopsy
19 in the autopsy report, in his communications with other investigators, and on the witness stand
20 at the preliminary hearing in order to cover up his incompetence, and that these lies
21 proximately caused Galbraith's arrest and prosecution for murder." *Id.* at 1127. The plaintiff
22 in *Galbraith* alleged that the medical examiner "recklessly disregarded the truth by asserting
23 in his autopsy report that [the plaintiff's deceased wife] was strangled by an assailant while
24 ignoring abundant evidence that pointed to suicide." *Id.* The Ninth Circuit concluded that
25 allegations of deliberate or reckless falsification of evidence by a coroner leading to the
26 plaintiff's wrongful prosecution for murder were sufficient to state a § 1983 claim for
27 deprivation of liberty under the Fourth Amendment against the coroner. *Id.*

28 Although Centano is not a coroner, Plaintiff's allegations, if true, could establish that
   Centano's expert opinion on the validity of forensic testing was similarly central to Plaintiff's

arrest, prosecution, and conviction for a murder that never took place. Plaintiff has set forth in detail factual allegations which support her allegation that Centano deliberately or recklessly falsified Todd Sommer's cause of death by verifying results Centano knew to be incorrect. Plaintiff alleges facts which, if proven, would be sufficient to establish that Centano knew that other experts did not believe the results were accurate and believed himself that the tissue samples were contaminated, yet nonetheless offered his expert opinion that Todd Sommer died of arsenic poisoning. Plaintiff alleges facts which, if proven, would be sufficient to establish that Centano's determination that Todd Sommer had been poisoned was central to Plaintiff's arrest and prosecution. Accepting as true all facts alleged in the Complaint and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Plaintiff's factual allegations are sufficient to state a *Bivens* claim for deprivation of liberty by the reckless or deliberate falsification of evidence in violation of the Fourth Amendment.

Because the Court has determined that Plaintiff has plead a Fourth Amendment *Bivens* claim, the Court must examine qualified immunity. Pursuant to *Saucier*, 533 U.S. at 201, the test for whether qualified immunity applies is "whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The test is not whether "the very action in question has previously been held unlawful" rather it is whether "in the light of the preexisting law the unlawfulness [was] apparent." *Id.*
In light of the similarities between this case and *Galbraith*, the Court concludes that Centano is not entitled to qualified immunity at this stage of the proceedings.

Although Plaintiff has stated a *Bivens* claim for violation of the Fourth Amendment against Centano, Plaintiff's allegations that Centano also violated the Fourteenth Amendment cannot be the basis of a *Bivens* action. The due process and equal protection clauses of the Fourteenth Amendment do not apply against the federal government, only against the state governments. *See* U.S. Const. amend. XIV, § 2. Plaintiff's claim against Centano for violation

1  of the Fourteenth Amendment is dismissed.[3]

## IV.  Rick Rendon and Mark Ridley

Rendon and Ridley, both NCIS agents, contend that Plaintiff has failed to make specific, factual allegations that state any cause of action against them. (Doc. # 38-1 at 7).  Rendon contends that he is not mentioned anywhere in the Complaint aside from the caption. *Id.* Ridley contends the only allegations that specifically refer to him allege that he believed Plaintiff's actions after her husband's death, particularly getting breast implants, showed that Plaintiff was culpable and that 23-year-old men "don't just die." *Id.*  Rendon and Ridley contend that the other allegations in the Complaint which generically refer to "Defendants" or to "naval investigators" do not put Rendon and Ridley on notice of what actions they specifically took which have lead to the claims against them. *Id.* at 7-8.  Rendon and Ridley contend that there is no causal connection between any of their actions and Plaintiff's claimed constitutional violation. *Id.* at 9.

Plaintiff contends that her allegations against Rendon and Ridley are sufficient to state a claim. (Doc. # 46 at 6).  Plaintiff contends that "Ridley and Rendon were actively participating in the ongoing investigation of an 'unsolved murder' and they continued their investigation of Plaintiff when they knew or should have known that she was innocent and that no crime had taken place." *Id.*  Plaintiff contends that she has alleged that Ridley and Rendon "played a specific and direct role in the fabrication of evidence which ultimately lead to Plaintiff's wrongful arrest and conviction." *Id.* at 7.

Aside from identifying Rendon as a party to this action, Plaintiff does not mention Rendon at all in her Complaint and makes no factual allegations about his actions.  Plaintiff's allegations that pertain to "Defendants" or "naval investigators" are insufficient to put Rendon on notice of his specific acts which form the basis of Plaintiff's claims against him.  Even if the allegations directed at "Defendants" or "naval investigators" generally are taken into account, Plaintiff has not alleged facts which could, if proven true, establish that Rendon personally violated Plaintiff's constitutional rights or violated federal statutes.  Rendon's

---

[3] Centano did not move to dismiss Plaintiff's §§ 1985 and 1986 claims or Plaintiff's *Bivens* claim based on violation of the Fifth Amendment.

motion to dismiss is granted.

Plaintiff's only allegations about Ridley's actions are that (1) Ridley "disregarded the medical opinions of two highly respected pathologists, the other medical professionals they had consulted with, and a body of medical literature in forming his own unsupported 'medical' opinion that 'twenty-three year old young men don't just die;'" and (2) Ridley "thought the investigation just 'needed additional work' and that eventually [n]aval investigators would find something to implicate her." *Id.* Plaintiff fails to connect Ridley's belief that Plaintiff had killed her husband to Plaintiff's eventual arrest, conviction, and prosecution for murder. Plaintiff's allegations that pertain to "Defendants" or "naval investigators" are insufficient to put Ridley on notice of his specific acts which form the basis of Plaintiff's claims against him. Even if the allegations directed at "Defendants" or "naval investigators" generally are taken into account, Plaintiff has not alleged facts which could, if proven true, establish that Ridley personally violated Plaintiff's constitutional rights or violated federal statutes. Ridley's motion to dismiss is granted.

**V.     S.D. Adams**

Adams, a pathologist and Navy Medical Officer who became AFIP's Regional Medical Examiner in 2003, contends that he had no involvement in Sgt. Sommer's autopsy, no involvement in the autopsy report, and no input in the death certificate. (Doc. # 41-1 at 6). Adams contends that his only act relating to this case was "taping a memorandum to the receptacle holding Sgt. Sommer's remains at NMCSD that said '**RETENTION OF AUTOPSY MATERIALS IN THE CASE OF SERGEANT TODD SOMMER, USMC, A02-13**.'" *Id.* Adams contends that this is the only fact the Court should consider because it is the only fact Plaintiff has alleged against him in particular. *Id.* Adams contends this Court should not consider Plaintiff's allegations directed generically at "Defendants" because these allegations do not inform Adams as to what specific actions Plaintiff is complaining of. *Id.* at 7.

Plaintiff contends that her allegations against Adams are sufficient to state a claim. (Doc. # 50 at 3). Plaintiff contends that "it cannot be disputed that [Adams] was substantially and thoroughly familiar with the details concerning the death of Todd Sommer and the

subsequent investigation of Plaintiff" because "Adams had replaced Dr. Robinson as the Regional Armed Forces Medical Examiner for San Diego, California at Navy Med at some time in 2003." *Id.* Plaintiff contends she has included sufficient detail to make her claims plausible and that she has pleaded facts related to Adams's personal involvement in her case. *Id.* at 7-8.

Plaintiff alleged that Adams was aware that additional tissue samples existed, that Adams labeled the box containing the samples and placed it in storage, and that Adams did not alert Plaintiff's attorneys to the existence of the samples. Plaintiff has failed to allege facts which could establish that Adams's acts violated her constitutional or statutory rights. Plaintiff has not alleged any facts which could plausibly suggest that Adams acted improperly by placing the labeled box in storage or that Adams is personally culpable for any constitutional violation for failing to turn the samples over.

Plaintiff's allegations that pertain to "Defendants" or "naval investigators" are insufficient to put Adams on notice of his specific acts which form the basis of Plaintiff's claims against him. Even if the allegations directed at "Defendants" or "naval investigators" generally are taken into account, Plaintiff has not alleged facts which could, if proven true, establish that Adams personally violated Plaintiff's constitutional rights or violated federal statutes. Adams's motion to dismiss is granted.

**VI.  Glenn N. Wagner in his Federal Capacity**

Wagner contends that Plaintiff has not made sufficient factual allegations about acts he took in his capacity as a federal employee to allege a claim against him pursuant to *Bivens*.[4] (Doc. # 54-1 at 5). Wagner contends that Plaintiff's allegations which refer to "Defendants" generally do not put him on notice of the basis of Plaintiff's suit against him in his federal capacity. *Id.* Wagner contends that he left his position as the head of AFIP in 2003, and therefore cannot be held responsible for Plaintiff's 2005 arrest or 2007 prosecution. *Id.* at 7, 9. Wagner contends that Plaintiff has made conclusory allegations that he was involved in a "cover up," but has not plead a *Bivens* claim against him. *Id.* at 7. Wagner contends that

---

[4] The Court previously dismissed Plaintiff's claims against Wagner in his federal capacity pursuant to 42 U.S.C. §§ 1985 and 1986. Doc. # 36 at 18.

Plaintiff relies on a respondeat superior theory, which is not a basis for liability under *Bivens*. *Id.* Wagner contends that he cannot be held responsible for Plaintiff's conviction because he did not bring the criminal charges against her. *Id.* Wagner contends he is entitled to qualified immunity. *Id.*

Plaintiff contends that this Court's previous order denying Wagner's motion to dismiss the suit against him in his capacity as San Diego County's Medical Examiner controls. (Doc. # 56 at 3). Plaintiff contends that this motion is untimely. *Id.* Plaintiff contends that although a "significant portion of the alleged misconduct" by Wagner occurred after Wagner had left AFIP, there are sufficient factual allegations about Wagner's conduct while he was still a federal employee to state a claim against him in his federal capacity. *Id.* Plaintiff contends Wagner was "actively participating in an ongoing investigation" of Plaintiff when he knew or should have known that "no crime had taken place." *Id.* at 7.

In his reply, Wagner contends that there is a significant difference between a § 1983 claim against state actors and a *Bivens* claim against federal officials. (Doc. # 57 at 2). Wagner contends that this Court's previous order denying Wagner's motion to dismiss the § 1983 claims brought against him in his capacity as County Medical Examiner does not control. *Id.* at 3. Wagner contends that *Bivens* only provides a remedy against an official acting under color of *federal* law and that Wagner's acts as a county employee cannot be the basis for a claim against Wagner in his federal capacity. *Id.* at 4.

This Court's previous ruling denying Wagner's motion to dismiss Plaintiff's § 1983 claims against him for his own actions does not mean that Plaintiff has sufficiently plead a *Bivens* claim against Wagner. Only acts which Wagner took in his capacity as director of AFIP can establish *Bivens* liability. *See* 403 U.S. at 389. Acts taken in Wagner's capacity as county medical examiner were not taken under "color of his authority" as a "federal agent." *See id.* The only allegation Plaintiff makes as to Wagner's actions in his former capacity as a federal agent is that Wagner "was the director of AFIP and had final oversight of all testing that was performed there." *See* Compl., Doc. # 1 at ¶ 39. The fact that Wagner was the director of AFIP when the initial testing of Todd Sommer's tissue samples occurred cannot be the basis for *Bivens* liability. *See Iqbal*, 129 S.Ct. at 1948-51. Although Plaintiff now

contends Wagner was "directly involved" in the testing, *see* Opposition, Doc. # 56 at 9, she did not allege any facts which could establish Wagner's personal involvement. Plaintiff alleged that Centano, not Wagner, was the AFIP employee who conducted the testing. *See* Compl., Doc. # 1 at ¶ 37. Plaintiff has failed to allege facts which state a *Bivens* claim against Wagner. Wagner's motion to dismiss the claims against him in his federal capacity is granted.

## CONCLUSION

IT IS HEREBY ORDERED that:

(1) "Unnamed Putative Defendant" County of San Diego's Motion to Dismiss (Doc. # 32) is **DENIED AS MOOT** because the County is not a defendant to this action.

(2) Rob Terwilliger's Motion to Dismiss (Doc. # 35) is **GRANTED**.

(3) Jose Centano's Motion to Dismiss (Doc. # 37) is **GRANTED** as to Plaintiff's Fourteenth Amendment claim and otherwise **DENIED**.

(4) Rick Rendon and Mark Ridley's Motion to Dismiss (Doc. # 38) is **GRANTED**.

(5) S.D. Adams's Motion to Dismiss (Doc. # 41) is **GRANTED**.

(6) Glenn N. Wagner's Motion to Dismiss as to claims brought against him in his federal capacity (Doc. # 54) is **GRANTED**.

(7) If Plaintiff wishes to file a motion for leave to amend, she must contact chambers for a hearing date prior to filing her motion.

DATED: September 10, 2010

**WILLIAM Q. HAYES**
United States District Judge