1

2                    IN THE UNITED STATES DISTRICT COURT

3               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

4            HONORABLE BERNARD G. SKOMAL, MAGISTRATE JUDGE

5

6       _____ )

7       SOMMER,                          )   CASE NO. 09 CV 2093-WQH-BGS
                                         )
8              PLAINTIFF,                )
                                         )
9              VS.                       )   MAY 20, 2011
                                         )
10      UNITED STATES OF AMERICA,        )   FRIDAY, 1:30 PM
        ET AL.,                          )
11                                       )
               DEFENDANT.                )   MOTION HEARING
12      _____ )   (TELEPHONIC)

13

14                      TRANSCRIPT OF PROCEEDINGS

15

16      APPEARANCES:

17      FOR THE PLAINTIFF:          ROBERT E. ROSENTHAL, ESQ.
                                    ANDREW BLAKE KREEFT, ESQ.
18                                  BOHNEN, ROSENTHAL & KREEFT
                                    787 MUNRAS AVE, STE. 200
19                                  MONTEREY, CA  93940

20      FOR DEFENDANT USA:          BETH CLUKEY, AUSA
                                    880 FRONT ST., RM 6293
21                                  SAN DIEGO, CA 92101

22      FOR DEFENDANT COUNTY:       MORRIS G. HILL, ESQ.
                                    COUNTY OF SAN DIEGO
23                                  1600 PACIFIC HWY, RM 355
                                    SAN DIEGO, CA  92101

24

25

```
 1       SAN DIEGO, CALIFORNIA, MAY 20, 2011, FRIDAY, 1:30 PM
 2                  (TELEPHONIC CONFERENCE)
 3          THE CLERK:  CALLING CASE NUMBER 09-2093 ON
 4  CALENDAR TODAY BEFORE JUDGE SKOMAL FOR A DISCOVERY DISPUTE
 5  HEARING.
 6       WILL COUNSEL PLEASE STATE THEIR APPEARANCES FOR THE
 7  RECORD, BEGINNING WITH PLAINTIFFS' COUNSEL.
 8          MR. ROSENTHAL:  ROBERT ROSENTHAL AND ANDY KREEFT
 9  FOR PLAINTIFF.
10          MS. CLUKEY:  BETH CLUKEY AND STEVE POLIAKOFF FOR
11  THE UNITED STATES.
12          MR. HILL:  MORRIS HILL FOR DEFENDANTS DUMANIS,
13  GUNN AND WAGNER.
14          THE COURT:  AND ANYONE ELSE WITH YOU, MR. HILL?
15          MR. HILL:  NO, SIR.  I'M HERE ALL ALONE, I'M
16  AFRAID.
17          THE COURT:  ALL RIGHT.  THANK YOU FOR CALLING IN
18  TODAY.  I HAVE READ EVERYBODY'S PAPERS.  THIS IS ON FOR THE
19  PLAINTIFFS REQUEST FOR PROTECTIVE ORDER.  EVERYBODY HAS
20  FILED A PAPER.  I HAVE READ THEM.  I HAVE IDEAS ON THE
21  MATTER.
22       MR. ROSENTHAL, DO YOU WANT TO ADD ANYTHING TO YOUR
23  PAPERS?
24          MR. ROSENTHAL:  THE ONLY THING AT THIS POINT I
25  WOULD ADD, YOUR HONOR, IS IN LOOKING AT THE BASIS OR
```

1    REASONS GIVEN BY THE GOVERNMENT FOR ESTABLISHING RELEVANCE

2    AND APPROPRIATENESS QUESTIONS, AFTER READING THEM, I STILL

3    DON'T SEE ANY VALID BASIS OR RELEVANCE.  I WOULD JUST SAY

4    THAT IN A GENERAL SENSE, I'M HAPPY, OBVIOUSLY TO DISCUSS

5    EACH OF THE PARTICULAR QUESTIONS THAT I RAISED.

6         THE COURT:  CAN I ASK YOU A QUESTION?  WHEN YOU'RE

7    IN TRIAL IS ONE OF YOUR PREMISES THAT YOUR CLIENT IS

8    INNOCENT?

9         MR. ROSENTHAL:  ONE OF MY PREMISES IS THAT MY

10   CLIENT WAS MALICIOUSLY PROSECUTED AND WRONGFULLY ARRESTED

11   AND INCARCERATED AND THAT COMES, THAT STEMS FROM THE

12   PEOPLE'S MOTION TO DISMISS.  AND THE PEOPLE, CONTRARY TO

13   WHAT THE DISTRICT ATTORNEY SAYING WAS THAT THIS IS, I THINK

14   THE STATEMENT WAS, WELL THIS WAS, THIS WAS, THE MATTER WAS

15   DISCUSSED, DISMISSED BECAUSE OF INEFFECTIVE COUNSEL, THE

16   TRIAL WAS RESET FOR INEFFECTIVE COUNSEL.  THE REALITY WAS

17   THAT WHILE THE CONVICTION WAS SET ASIDE FOR INEFFECTIVE

18   COUNSEL, THE DISTRICT ATTORNEY FILED A MOTION TO DISMISS

19   AND IN THEIR MOTION, BOTH IN THE WRITTEN MOTION AS WELL AS

20   IN THE STATEMENT PLACED ON THE RECORD, IT WAS CLEAR THAT IT

21   WAS DUE TO DISCOVERY OF NEW EVIDENCE AND I'M READING FROM

22   THE ORDER, FROM THE MOTION RATHER, THAT THE PEOPLE NOW

23   CONCLUDED THAT THIS CASE CAN NO LONGER BE PROVEN BEYOND A

24   REASONABLE DOUBT.  AND RESPECT THAT THE COURT DISMISS THE

25   ACTION.  AND FURTHERMORE, IN ANOTHER PLACE ON PAGE TWO,

| | |
|---|---|
| 1 | LINES 23 THROUGH 27, IN THE RECITATION OF FACTS, THEY STATE |
| 2 | THE PEOPLE RECEIVED AN E-MAIL FROM THE QUEBEC TOXICOLOGY |
| 3 | CENTER INDICATING THERE WAS NO ARSENIC IN ANY OF THE |
| 4 | SAMPLES.  PEOPLE CONFIRMED WITH THE QUEBEC TOXICOLOGY |
| 5 | CENTER THIS MORNING THAT FURTHER TESTING WOULD BE OF |
| 6 | LIMITED UTILITY AND DR. KOSNAK INFORMED THE PEOPLE VERBALLY |
| 7 | THAT HE CANNOT STATE TO A REASONABLE CERTAINTY THAT TODD |
| 8 | SOMMER DIED OF ARSENIC POISONING. |
| 9 | THAT'S THE PREMISE WE WILL BE GOING TO TRIAL ON WHICH |
| 10 | NECESSARILY MEANS, YOUR HONOR, THAT OUR CLIENT IS INNOCENT. |
| 11 | THE COURT:  THAT'S WHAT I FIGURED.  OKAY. |
| 12 | ANYTHING ELSE YOU WANT TO ADD, MS. ROSENTHAL? |
| 13 | MR. ROSENTHAL:  I'M WILLING TO ADDRESS ANY |
| 14 | QUESTIONS THAT YOU HAVE WITH REGARD TO THE OPPOSITION THAT |
| 15 | IS RAISED.  I'VE GOT RESPONSES TO THAT. |
| 16 | THE COURT:  NOW IS THE TIME TO TELL ME YOUR |
| 17 | RESPONSES BECAUSE I'M ABOUT TO TELL YOU MY ORDER SO WHERE |
| 18 | WE ARE GOING FROM HERE SO I'M GIVING YOU AN OPPORTUNITY TO |
| 19 | SAY WHATEVER YOU WANT TO SAY. |
| 20 | MR. ROSENTHAL:  ALL RIGHT.  I'LL CONTINUE.  I'LL |
| 21 | POINT OUT THAT THE FACT THAT THIS DISMISSAL WAS DUE TO |
| 22 | NEWLY DISCOVERED EVIDENCE AND IT WAS NOT ON A TECHNICAL |
| 23 | BASIS.  I THINK THE PRIVACY FACTORS THE COURT ASKED ABOUT |
| 24 | THE NEED FOR THE INFORMATION AGAINST THE PRIVACY RIGHTS OF |
| 25 | MY CLIENT, AND THE DISTRICT ATTORNEY WOULD HAVE THE COURT |

```
 1    BELIEVE THAT IT'S OKAY TO ASK QUESTIONS REGARDING PERSONAL

 2    NATURE, BECAUSE OF THE DAMAGE TO HER REPUTATION WE'VE

 3    ASSERTED.  IT'S NOT WHETHER THE PLAINTIFF WAS VICARIOUS OR

 4    POSED NUDE ON THE INTERNET, THAT'S NOT WHAT IS RELEVANT.

 5    WHAT'S RELEVANT IS THE DISCLOSURE OF THIS INFORMATION

 6    THROUGH THE TRIAL, THAT OTHERWISE WOULD NEVER HAVE BEEN

 7    DISCLOSED AND WOULD HAVE REMAINED PRIVATE, BUT FOR THE

 8    ARREST AND HER TRIAL, A TRIAL THAT NEVER SHOULD HAVE

 9    OCCURRED.  SO TRUE OR FALSE, THE PERSONAL INFORMATION THAT

10    THEY'RE SEEKING WOULD NEVER HAVE BEEN PUBLISHED.  IT

11    WOULDN'T HAVE BEEN PUBLISHED ON NATIONAL TV, WOULDN'T HAVE

12    BEEN PUBLISHED ON THE INTERNET, BUT FOR THIS TRIAL.

13           THE COURT:  I GUESS I'M PLAYING THE DEVIL'S

14    ADVOCATE, I THINK THAT SOME OF THAT INFORMATION, THE

15    DEFENDANTS WOULD STATE NOT ONLY GO TO DAMAGES, BUT MIGHT GO

16    TO A MOTIVE TO KILL HER HUSBAND.  AND IN TERMS OF THE

17    ACTUAL CONDUCT THAT THE INVESTIGATORS AND THE DA'S OFFICE

18    CONDUCTED IN TRYING YOUR CLIENT, THERE WERE CERTAIN THINGS

19    THEY RELIED ON THAT IN THEIR OPINION, PROBABLY FROM READING

20    THEIR PAPERS WENT TO THEIR MOTIVE.  SHE WAS NOT HAPPY IN

21    HER MARRIAGE AND SHE WAS LOOKING TO HAVE OTHER MEN AND

22    PARTNERS AND WANTED TO HAVE COSMETIC SURGERY TO LOOK OR

23    ENHANCE HER SEARCH FOR OTHER MEN AND PARTNERS AND THEY

24    RELIED ON THAT AND I THINK THEY CAN GO INTO ASKING HER

25    QUESTIONS ABOUT IT TO SEE IF THEY JUST MADE THAT STUFF UP
```

```
 1    OR INDEED IT WAS TRUE.

 2            MR. ROSENTHAL:  TWO POINTS.  ONE, OUR CLAIM IS

 3    BASED ON WHAT THEY KNEW OR DIDN'T KNOW OR SHOULD HAVE KNOWN

 4    PRIOR TO THE PROSECUTION.  NOT WHAT THEY DISCOVERED TODAY.

 5            THE COURT:  WHY IS THAT?  I DON'T SEE THAT.  I

 6    THINK IF YOU ARE GOING TO GO IN THERE AND SAY, "MY CLIENT

 7    IS INNOCENT.  SHE WAS WRONGLY CONVICTED.  THEY FABRICATED

 8    EVIDENCE.  SHE HAS ALL THESE DAMAGES.  LOOK AT ALL THE TIME

 9    SHE SPENT IN JAIL."

10        WHY CAN'T THEY COME IN HERE AND SAY, "HEY, ON THE

11    CONTRARY.  THERE'S PLENTY OF EVIDENCE THAT SAYS SHE'S

12    GUILTY.  WE NEVER SAID SHE WAS INNOCENT."

13        IF SHE IS GUILTY, SHE HAS NO DAMAGES.

14            MR. ROSENTHAL:  BUT THERE IS NO EVIDENCE OF GUILT.

15            THE COURT:  THIS IS WHAT DISCOVERY IS ALL ABOUT.

16            MR. ROSENTHAL:  THIS ISN'T ABOUT HER GUILT OR

17    INNOCENCE?

18            THE COURT:  WHY NOT?  SHE HAS PUT IT IN PLAY.

19            MR. ROSENTHAL:  SHE HAS.  SHE PUT IT IN PLAY THAT

20    AT AGE 12, SHE WAS DOING DRUGS?  THAT AT AGE 15, SHE WAS

21    CAUGHT SHOPLIFTING?

22            THE COURT:  HOLD ON.  LET ME STOP YOU FOR A

23    MINUTE, MR. ROSENTHAL.  I'M NOT ASKING ABOUT THE PARTICULAR

24    QUESTIONS.  I'M ASKING ABOUT THE TOPIC AREA.  ANY PERSONAL

25    QUESTIONS SURROUNDING THE DEATH OF MS. SOMMER'S HUSBAND
```

1    CANNOT BE IN PLAY.

2         SPECIFICALLY, YOU STATE IN YOUR MOVING PAPERS THAT ALL

3    QUESTIONS INCLUDING PERSONAL AND PRIVATE NATURE QUESTIONS

4    REGARDING THE CIRCUMSTANCES OR FACTS SURROUNDING THE DEATH

5    AND POST-DEATH OF TODD SOMMER AND THE ARREST OF PLAINTIFF

6    SHOULD NOT BE ABLE TO BE ASKED OF HER.  AND I'M SAYING TO

7    YOU, AND I THINK QUITE CLEARLY THAT WHEN YOU ACCUSE THE

8    GOVERNMENT AND THE DA'S OFFICE AND ALL THE INVESTIGATORS OF

9    DELIBERATELY FABRICATING EVIDENCE TO WRONGFULLY CONVICT YOUR

10   CLIENT, YOU PUT IN PLAY THE FACT THAT, WELL, IS SHE INNOCENT

11   OR IS SHE NOT INNOCENT AND ALL THOSE CIRCUMSTANCE COME IN.

12         MR. ROSENTHAL:  I HEAR WHAT YOU'RE SAYING.  BUT

13    BEFORE YOU GET TO THAT --

14         THE COURT:  I HAVE ALREADY GOTTEN TO THAT, I HATE

15    TO SAY.

16         MR. ROSENTHAL:  WHAT?

17         THE COURT:  I HAVE ALREADY GOTTEN TO THAT.

18         MR. ROSENTHAL:  WHAT EVIDENCE IS THERE THAT'S BEEN

19    FABRICATED?  WHAT EVIDENCE IS THERE THAT WE'RE ASSERTING

20    HAS BEEN FABRICATED.  THAT EVIDENCE, CLEARLY THEY HAVE A

21    RIGHT TO GO INTO.

22         THE COURT:  THEY HAVE A RIGHT TO GO INTO ANY

23    EVIDENCE THEY WANT THAT IS RELEVANT TO THE CASE AND SO IF

24    THEY UNFORTUNATELY, HOLD ON, HOLD ON.  WHEN I'M TALKING,

25    MR. ROSENTHAL, YOU DON'T TALK AND VICE VERSA.  OKAY?

```
 1              MR. ROSENTHAL:  OKAY.  I APOLOGIZE.

 2              THE COURT:  NO PROBLEM.  WHEN WE'RE TALKING ABOUT

 3    WHAT ARE THE RELEVANT AREAS OF DISCOVERY, AND I'M NOT

 4    ASKING ABOUT PARTICULAR QUESTIONS BECAUSE SOME OF THOSE

 5    QUESTIONS, I HAD QUESTIONS ABOUT MYSELF.  BUT I'M ASKING

 6    ABOUT TOPIC AREAS.  BECAUSE YOUR PROTECTIVE ORDER IS TO

 7    PRECLUDE QUESTIONING ON TOPIC AREAS THAT HAVE ANYTHING TO

 8    DO WITH THE DEATH AND IMPOSED DEATH OF TODD SOMMER AND THE

 9    ARREST OF MS. SOMMER, ETC. AND FROM READING THE

10    GOVERNMENT'S PAPERS, THEY WANT TO BE ABLE TO COUNTER

11    ALLEGATIONS THAT THEY MALICIOUSLY PROSECUTED YOUR CLIENT BY

12    SAYING THEY HAD A GOOD FAITH BASIS TO INVESTIGATE THESE

13    THINGS AND IN FACT THESE THINGS EXISTED.  THAT THEY HAVE A

14    RIGHT TO LOOK INTO WHETHER SHE'S INNOCENT OR NOT.  THEY

15    HAVE A RIGHT TO EXPLORE WHAT EVIDENCE YOU BELIEVE OR THE

16    PLAINTIFF BELIEVES WAS FABRICATED BY THEM AND EXCULPATORY

17    EVIDENCE THEY MIGHT HAVE HIDDEN.  ALL CLAIMED FALSE

18    EVIDENCE IN THE WARRANT CAN GO INTO.  ALL THOSE ARE AREAS

19    THAT THESE, SOME OF THESE QUESTIONS IMPINGE UPON.

20         A MOTIVE TO MURDER SOMEONE IS CLEARLY THE CENTER OF

21    THIS CASE AND IT CLEARLY RELEVANT AND I DON'T SEE HOW YOU

22    GET AROUND THAT, IN TERMS OF THOSE TOPIC AREAS.  HOW DO YOU

23    GET AROUND THAT?

24              MR. ROSENTHAL:  WHAT THEY BELIEVED, WHAT EVIDENCE

25    THEY WERE AWARE OF OR KNEW OF, WHETHER IT BE FOR A TOPIC
```

```
 1    AREA, WHETHER IT BE FOR MOTIVE, WHATEVER THE TOPIC AREA

 2    THEY PERCEIVED THEY HAD EVIDENCE OF OR SHOULD HAVE HAD

 3    EVIDENCE OF AT THE TIME OF THE ARREST, AT THE TIME OF THE

 4    TRIAL, PRIOR TO TRIAL, THAT'S WHAT WAS IN THEIR MIND, WHAT

 5    THEY HAD IN THEIR BRIEFCASE.

 6         THE COURT:  NO.  THAT'S WHAT YOU SAY.  BUT I DON'T

 7    AGREE WITH YOU BECAUSE ONE OF THE PREMISES OF YOU'RE GOING

 8    INTO TRIAL IS TO TELL THE JURY MY CLIENT IS INNOCENT AND

 9    THEREFORE SHE HAS THIS HUGE NUMBER OF DAMAGES.

10         THEIR PREMISE CAN BE, NO SHE'S NOT.  SHE IS NOT

11    INNOCENT AND SHE HAS NO DAMAGES, IN FACT SHE'S GUILTY AND

12    THAT CAN BE A CLEAR WAY OF TRYING THIS CASE.  AND IF THAT'S

13    THE CASE, I THINK THEIR ENTITLED TO EXPLORE ALL THE EVIDENCE

14    THEY HAD THAT THEY THINK SHE'S GUILTY, WHETHER SHE IS OR

15    NOT, I MEAN THIS IS DISCOVERY.  THIS ISN'T A MOTIONS IN

16    LIMINE.  ALL THOSE MOTIONS WILL BE PRESENTED TO THE DISTRICT

17    COURT JUDGE TO DECIDE WHETHER THEY'RE ADMISSIBLE OR NOT.

18    THE GOVERNMENT IS ONLY ASKING TO BE ABLE TO EXPLORE THESE

19    AREAS TO PREPARE THE DEFENSE.

20         MR. ROSENTHAL:  I HEAR WHAT YOU'RE SAYING.  I

21    RESPECTFULLY DISAGREE.  I THINK THAT --

22         THE COURT:  WELL HERE IS THE PROBLEM WITH WHAT YOU

23    THINK.  YOU HAVEN'T GIVEN ME ANY LAW AND IN FACT IN

24    PREPARATION TODAY, I HAVE READ THE DEVEREAUX CASE.  I HAVE

25    READ THE GALBRAITH CASE.  I HAVE PULLED THE JURY
```

1    INSTRUCTIONS AND THESE CASES CLEARLY TELL ME, DEVEREAUX WAS

2    A QUALIFIED IMMUNITY CASE IN A MOTION FOR SUMMARY JUDGMENT.

3    IN DEVEREAUX, IN ORDER FOR YOU TO EVEN SURVIVE A QUALIFIED

4    IMMUNITY ATTACK, YOU HAVE TO PROVE EITHER THAT YOUR CLIENT,

5    NOT YOUR CLIENT, THE DEFENDANTS CONTINUED THEIR

6    INVESTIGATION OF THE PLAINTIFF DESPITE THE FACT THEY KNEW

7    OR SHOULD HAVE KNOWN SHE WAS INNOCENT.  SO CLEARLY,

8    EVIDENCE OF GUILT WOULD COME IN THERE.  OR THEY USED

9    INVESTIGATIVE TECHNIQUES THAT WERE SO COERCIVE THAT THEY

10   SHOULD HAVE KNOWN THESE TECHNIQUES WOULD HAVE LEAD TO FALSE

11   INFORMATION.  THAT'S A HIGH BURDEN.  THAT'S ONLY HAVING TO

12   DO WITH QUALIFIED IMMUNITY.

13        THE GALBRAITH CASE WAS A FOURTH AMENDMENT CASE BECAUSE

14   THE PERSON IN THAT TRIAL WAS ACTUALLY ACQUITTED.  THEY WERE

15   ARGUING SOLELY ON THE WARRANT AND THE FALSE INFORMATION IN

16   THE WARRANT AND WHAT PROVEN IN THE WARRANT.  THE ELEMENTS

17   ARE AND THERE REALLY ISN'T ANY PARTICULAR JURY INSTRUCTION

18   ON DELIBERATE FABRICATION OF EVIDENCE, BUT CLEARLY YOU HAVE

19   TO SHOW THE DEFENDANTS DEPRIVED YOUR CLIENT OF DUE PROCESS

20   RIGHTS, MAINLY THAT THEY DELIBERATELY FABRICATED EVIDENCE.

21        SO I DON'T SEE HOW IF THAT'S THE PREMISE OF THE CASE,

22   THAT EVIDENCE THAT THEY DISCOVERED THROUGH THE COURSE OF

23   INTERVIEWING YOUR CLIENT OR ANYBODY ELSE THAT INDICATES

24   SHE'S GUILTY, WOULD NOT BE RELEVANT FOR TRIAL.

25        MR. ROSENTHAL:  BUT ISN'T WHAT WE CLAIM THEY HAVE

11

1    FABRICATED, DOESN'T THAT OPEN THE DOOR TO THAT SPECIFIC

2    TOPIC AREA?  NOT A BROAD BRUSH APPROACH TO EVIDENCE BECAUSE

3    A LOT OF WHAT THEY'RE GOING INTO, WE'RE NOT CLAIMING WAS

4    FABRICATED.  WE'RE NOT CLAIMING WAS UNTRUE.

5         THE COURT:  IT DOESN'T MATTER.  YOU DON'T HAVE TO

6    CLAIM ANYTHING.  THE MERE FACT YOU'RE CLAIMING THAT YOUR

7    CLIENT WAS WRONGLY, THAT THEY FABRICATED EVIDENCE TO

8    CONVICT HER AND THAT THERE WAS A CONSPIRACY OF SORTS

9    BETWEEN THE DA'S OFFICE TO PROMOTE THEIR OWN REPUTATION AND

10   TO HIDE EVIDENCE AND TO UNDERCOVER EVIDENCE, AND IN FACT

11   THERE WAS A POLICY DO SO, THE UNDERLYING FOUNDATIONAL

12   PREDICATE IN ALL OF THIS IS YOUR CLIENT IS INNOCENT AND SHE

13   WAS WRONGLY PICKED ON, WRONGLY ARRESTED AND WRONGLY

14   CONVICTED.

15       ALL I'M SAYING IS THEY HAVE A RIGHT, UNDER THE

16   DISCOVERY RULES TO EXPLORE ANY RELEVANT EVIDENCE THAT HAS TO

17   DO WITH YOUR CLIENT'S GUILT, MOTIVE IN IMPEACHING HER AND

18   THEN THE DAMAGES.  I MEAN, IF YOUR CLIENT IS REALLY GUILTY,

19   AND I'M JUST SAYING THIS AS A HYPOTHETICAL, PLEASE DON'T

20   TAKE IT THE WRONG WAY, IF YOUR CLIENT WAS GUILTY, THE DAMAGE

21   ISSUE KIND OF GOES AWAY.  DOESN'T IT?  YOU ARE NOT GOING TO

22   BE ARGUING SHE WAS DAMAGED FOR BEING IN JAIL IF INDEED SHE'S

23   GUILTY AND SUPPOSE THEN SHE'S CONVICTED, WOULD YOU BRING

24   THIS LAWSUIT?  PROBABLY NOT.

25         MR. ROSENTHAL:  NO.  I'M NOT QUESTIONING THEIR

12

```
1    RIGHT TO GO INTO DAMAGES.
2             THE COURT:  I DON'T THINK YOU SHOULD.  ALL I'M
3    SAYING IS THAT I'M RULING THAT THEY'RE ALLOWED TO GO INTO
4    THE AREAS WHERE THEY WANT TO EXPLORE WHETHER SHE WAS
5    GUILTY.  HER CONDUCT AND THAT IS THE COUNTY SPECIFICALLY
6    WANTS TO GO INTO AREAS TO SHOW THAT THE DEFENDANTS, THE
7    EMPLOYEES THERE IN THE COUNTY, WERE INVOLVED IN THE
8    ACTIVITIES THEY WERE INVOLVED IN THAT LED THEM TO BELIEVE
9    THAT YOUR CLIENT KILLED HER HUSBAND, AND THAT'S ALL FAIR
10   GAME TOO.
11            I MEAN WHAT IT REALLY BOILS DOWN TO, I THINK, AND WHAT
12   CONCERNS ME IS, IS THE EXTRANEOUS NATURE OF SOME OF THESE
13   QUESTIONS AS YOU POINTED OUT.  I MEAN, WHEN SHE WAS 12 YEARS
14   OLD, WAS SHE DOING DRUGS.  SOME OF THESE QUESTIONS HAVE TO
15   BE STRUCK BECAUSE THEY DON'T REALLY RELATE TO ISSUES IN THE
16   CASE.
17            BUT IN TERMS OF THE TOPIC AREAS, I THINK YOU ARE BEING
18   NEARSIGHTED TO THINK THAT THE ONLY EVIDENCE THEY CAN GO INTO
19   IS WHAT THEY BELIEVE AT THE TIME OF THE PROSECUTION AND AT
20   THE TIME OF THE ARREST.  I THINK IT'S A PREDICATE AND
21   FUNDAMENTAL ELEMENT OF THIS CASE THAT YOUR CLIENT WAS
22   INNOCENT AND THEY WRONGLY ARRESTED HER AND PROSECUTED HER.
23   THEY FABRICATED EVIDENCE WHICH IS THE BASIS OF THIS WHOLE
24   CASE.  THEY DELIBERATELY FABRICATED EVIDENCE TO CONVICT YOUR
25   CLIENT.
```

```
1          SO THAT BEING THE CASE, DO YOU WANT TO ADD ANYTHING
2     ELSE?
3               MR. ROSENTHAL:  I'M NOT GOING TO STATE MUCH ELSE
4     OTHER THAN TO SAY THE FABRICATION OF EVIDENCE IS ONE OF
5     VARIOUS CLAIMS WITH REGARDS TO THEIR CONDUCT.
6               THE COURT:  WELL TELL ME THE CONSTITUTIONAL
7     VIOLATION THEN, BECAUSE THE CONSTITUTIONAL VIOLATION I READ
8     FROM YOUR COMPLAINT, SPECIFICALLY THAT THEY INTENTIONALLY
9     OR NEGLIGENTLY FABRICATED OR CONTAMINATED EVIDENCE THEY
10    KNEW OR SHOULD HAVE KNOWN WAS FALSE, THAT IS A FEDERAL TORT
11    CLAIM, THE 1983 ACTION, IS ALMOST A BOILER PLATE OF THAT
12    AND THAT'S THE CONSTITUTIONAL RIGHT THAT YOU ARE ALLEGING,
13    YOU ARE ALLEGING THE DUE PROCESS AND FOURTH AMENDMENT RIGHT
14    HAVING TO DO WITH THE FABRICATION OF FALSE EVIDENCE.  WHAT
15    ELSE IS OUT THERE BESIDES?
16              MR. ROSENTHAL:  WELL, I BELIEVE OUR CLAIMS ALSO
17    ALLEGE UNDER THE FEDERAL TORT CLAIMS ACT THAT THEY KNEW OR
18    SHOULD HAVE KNOWN THAT THE EVIDENCE WAS TAINTED OR WAS NOT
19    ACCURATE, WAS POSSIBLY CONTAMINATED.  I MEAN THE CLAIMS,
20    WE'RE GETTING OFF BASE HERE BECAUSE IT'S REALLY NOT
21    RELEVANT TO THE MOTIONS.
22              THE COURT:  IT'S NOT.
23              MR. ROSENTHAL:  THERE ARE OTHER CLAIMS.  I JUST
24    DIDN'T WANT TO LOOK LIKE I'M IMPLYING THAT I AGREE THAT THE
25    ONLY CLAIM THAT WE HAVE IS BASED ON FABRICATION OF
```

14

```
 1   EVIDENCE.
 2           THE COURT:  NO.  BUT THAT'S THE THRUST OF YOUR
 3   CONSTITUTIONAL VIOLATION THAT I READ FROM YOUR COMPLAINT,
 4   IS THE CONSTITUTIONAL RIGHT THAT WAS VIOLATED HAS TO DO
 5   WITH BEING DELIBERATE FABRICATION OF EVIDENCE AND THE
 6   FEDERAL TORT CLAIM ACT HAS A RELEVANCE STANDARD.
 7           MR. ROSENTHAL:  RIGHT.
 8           THE COURT:  OKAY.  I'M SORRY.  I'M LOSING MY
 9   VOICE.
10       MS. CLUKEY, DO YOU WANT TO ADD ANYTHING TO YOUR
11   PAPERS?
12           MS. CLUKEY:  NO, YOUR HONOR.
13           THE COURT:  MR. HILL?
14           MR. HILL:  I JUST WANT TO EMPHASIZE MY
15   DISAGREEMENT WITH PLAINTIFF ON THE NATURE OF THE CLAIMS IN
16   THIS CASE.  AS FAR AS MY CLIENTS ARE CONCERNED, THIS IS
17   SOLELY A DEVEREAUX CASE AND A GALBRAITH CASE.  THERE'S NO
18   STATE CLAIMS NOR MALICIOUS PROSECUTION CLAIM NOR ARREST.
19   MY BURDEN IN THIS CASE IS TO SHOW THAT THE PLAINTIFF IS NOT
20   INNOCENT.  I DON'T HAVE TO PROVE SHE WAS GUILTY.  I JUST
21   HAVE TO SHOW THAT MY CLIENT REASONABLY BELIEVED SHE WAS NOT
22   INNOCENT AND THE REASONS WHY THEY BELIEVE SHE WAS NOT
23   INNOCENT GO BEYOND THE SIMPLY, WHAT WAS PRESENTED IN COURT
24   AT THE CRIMINAL TRIAL EVEN THOUGH THAT WAS ENOUGH FOR THE
25   JURY TO BELIEVE SHE WAS GUILTY.  THERE WAS NEVER ANY
```

15

EVIDENCE IN THIS CASE THAT MS. SOMMER OBTAINED ARSENIC OR
ADMINISTERED ARSENIC TO HER HUSBAND.  IT WAS ALL
CIRCUMSTANTIAL AND CIRCUMSTANTIAL IS GOOD TO GO ON THAT.

          THE COURT:  I'M NOT DISAGREEING WITH YOU.  I'M NOT
NECESSARILY AGREEING WITH YOUR CHARACTERIZATION.  YOUR
CLIENT FACES A 1983 ACTION AND THE GALBRAITH AND DEVEREAUX
ARE 1983 ACTIONS AND EVERYTHING I STATED ABOUT DELIBERATE
FABRICATION OF EVIDENCE FALLS DIRECTLY IN WHAT YOUR CLIENT
IS ACCUSED OF DOING.

          MR. HILL:  CORRECT.

          THE COURT:  AND IT WAS A CIRCUMSTANTIAL CASE
BECAUSE IT'S A CIRCUMSTANTIAL CASE AND BECAUSE QUITE
FRANKLY, SHE HASN'T BEEN ACQUITTED.  IT WAS DISMISSED FOR A
VARIETY OF REASONS, NOT BASED ON EVIDENCE.  I THINK IT WAS
BASED ON BURDEN OF PROOF AND LACK OF EVIDENCE.  THERE IS NO
STATUTE OF LIMITATION AND IF THEY FIND MORE EVIDENCE, THEY
EARN THEIR RIGHT TO RE-PROSECUTE.

          MR. HILL:  EXACTLY.  AND THAT'S WHY THE DA HAS
SUCCESSFULLY OPPOSED PLAINTIFF'S MOTION TO REQUEST TO
DISMISS WITH PREJUDICE.  THE DISMISSAL IS WITHOUT PREJUDICE
SPECIFICALLY BECAUSE EVEN THOUGH THERE'S NO CASE THAT'S
PENDING NOW OR THAT IS ABOUT TO BE FILED, THERE IS THAT
POSSIBILITY THAT IS VERY REAL.

          THE COURT:  RIGHT.  I'M SAYING THOUGH, THAT THIS
MIGHT BE PREMATURE, I THINK MR. ROSENTHAL IS ASKING FOR ANY

1    EVIDENCE THAT, SUBSEQUENT TO THIS PROSECUTION THAT THEY

2    UNCOVERED THAT MIGHT BE EXCULPATORY.  ISN'T THAT TRUE, MR.

3    ROSENTHAL?

4            MR. ROSENTHAL:  YES.

5            THE COURT:  SO I MEAN WHAT'S GOOD FOR THE GOOSE IS

6    GOOD FOR THE GANDER, YOU HAVE THE CONTINUING INVESTIGATION,

7    YOU OBVIOUSLY THINK IT'S RELEVANT TO PROVE HER INNOCENCE

8    AND SOMETHING YOU PROBABLY BRING TO TRIAL AND WHY SHOULDN'T

9    THEY BE ABLE TO DO THE SAME TO QUESTION YOUR CLIENT TO TRY

10   TO ESTABLISH AT LEAST A CIRCUMSTANTIAL CASE OF GUILT, OR AT

11   LEAST TO SUPPORT THE GOOD FAITH INVESTIGATION THAT THEY SAY

12   TOOK PLACE.

13           MR. HILL:  BECAUSE THERE IS NO RECOGNIZED CAUSE OF

14   ACTION TO PRECLUDE A CRIMINAL INVESTIGATION.  THERE IS NONE

15   IN THIS CASE AND THERE ISN'T ANY THAT IS THEORETICALLY

16   POSSIBLE.  THE ONLY THING YOU CAN DO IS A -- THE TYPE OF,

17   THE ONLY CLAIM THAT'S EVER BEEN RECOGNIZED IN THIS CONTEXT

18   HAS BEEN THE TYPE OF CLAIM THAT IS RECOGNIZED IN THE SHELBY

19   GARRISON CASE AND THAT'S TO DETERMINE A BAD FAITH

20   PROSECUTION.  THERE IS NO EXISTING CLAIM IN THIS CASE TO

21   ENJOIN THE FUTURE PROSECUTION OF MS. SOMMER.

22           THE COURT:  I KNOW THAT.  I WASN'T REFERRING TO

23   THAT.

24           MR. HILL:  I UNDERSTAND.  YOU ARE SAYING, "WHY

25   SHOULDN'T THEY BE ABLE TO GET EVIDENCE OF WHAT THE DA IS

1    DOING NOW."

2            THE COURT:  NO.  NO.  I ASKED MS. ROSENTHAL THAT

3    SINCE HE'S ASKING FOR THAT KIND OF EVIDENCE; OBVIOUSLY,

4    IT'S OF CONCERN THAT EVIDENCE OF HER INNOCENCE IS OF

5    CONCERN TO HIM, JUST LIKE EVIDENCE TO SUPPORT HER GUILT IS

6    OF CONCERN TO THE DEFENDANTS.  AND ARE WE ON THE SAME PAGE?

7            MR. HILL:  I UNDERSTAND THAT.  WE'D ALSO LIKE TO

8    FIND OUT WHAT EVIDENCE THAT THE OTHER SIDE HAS, AS FAR AS

9    THAT GOES.  WHAT THEY'RE DOING AS FAR AS PLANNING THEIR

10   DEFENSE AGAINST FUTURE PROSECUTION.  THAT'S JUST NOT PART

11   OF THIS CASE RIGHT NOW.

12           THE COURT:  NO.  IT'S NOT.  BUT DISCOVERY IS AND

13   ALL WE'RE DEALING WITH RIGHT NOW IS HER DEPOSITION AND WHAT

14   KIND OF QUESTIONS YOU CAN ASK HER AND WHETHER THE QUESTIONS

15   YOU'RE GOING TO ASK HER ARE GOING TO BE KNOWING AND

16   EMBARRASSING AND I THINK TO ADDRESS THE REQUEST FOR

17   PROTECTIVE ORDER, WE HAVE TO ADDRESS WHAT AREA OF DISCOVERY

18   IN TERMS OF QUESTIONS OF MS. SOMMER WE CAN BEGIN TO THE AND

19   IN THE THREE AREAS THAT I'VE DELINEATED FROM YOUR MOVING

20   PAPERS ARE THE DEFENDANT DESIRED TO SUBSTANTIATE

21   INFORMATION THEY HAD ABOUT MS. SOMMER WHICH LED THEM TO

22   BELIEVE SHE WAS GUILTY OF HOMICIDE.  DAMAGES IN QUESTIONING

23   HER ABOUT SUSPICIOUS BEHAVIOR OR ANYTHING THAT MIGHT HAVE

24   TO DO WITH HER GUILT IN THE HOMICIDE, WHETHER OR NOT YOUR

25   CLIENTS RELIED ON THAT OR NOT.

```
1            MR. HILL:  I THINK ONE AND THREE OR ESSENTIALLY
2       THE SAME.
3            THE COURT:  NO.  THEY'RE NOT.  I THINK
4       MR. ROSENTHAL MAKES THE DISTINCTION AS WELL, BECAUSE THREE
5       IS, IT MIGHT BE INFORMATION THAT HAS TAKEN PLACE SINCE THE
6       CONVICTION THAT MIGHT TEND TO PROVE HER GUILT OR INNOCENCE
7       AND I THINK THAT'S FAIR GAME AS WELL.
8            MR. HILL:  WELL, WE'RE NOT PLANNING TO GO INTO
9       MS. SOMMER CURRENT BEHAVIOR OR ACTIONS, ETC.
10           THE COURT:  WELL, THEN THAT, YOU DON'T HAVE TO
11      ADDRESS THAT TODAY.  SO THAT BEING SAID, I'M GOING TO FIND
12      THAT THE REQUEST FOR PROTECTIVE ORDER, AT LEAST AT THIS
13      TIME WILL BE DENIED.  I DON'T THINK THERE'S GOOD CAUSE IN
14      TERMS OF THOSE TOPIC AREAS.  AND SINCE THE MOVING PAPERS OF
15      MS. ROSENTHAL LISTED IN A VERY BROAD AND KIND OF OVER
16      GENERAL REQUEST FOR AN ORDER DENYING QUESTIONING IN AREAS I
17      THINK ARE RELEVANT, IT IS TO BE DENIED.
18           NOW HE LISTED A SERIES OF QUESTIONS THAT WERE, I
19      GUESS, AN EXAMPLE.  THERE WASN'T ANY REAL RELEVANT LAW OR
20      WHY THEY WERE RELEVANT OR IRRELEVANT BUT THE GOVERNMENT THEN
21      RESPONDED WITH A VERY SHORT OR SOMEWHAT UNINTELLIGIBLE
22      REASONS WHY THEIR RELEVANT, THINGS LOOK MOTIVE, THAT DOESN'T
23      TELL ME ANYTHING.  SO THAT BEING THE CASE, THE NEXT QUESTION
24      IS, DO WE WANT TO GO THROUGH EACH AND EVERY QUESTION NOW?
25      HAVE THESE QUESTIONS BEEN ASKED ALREADY AND ANSWERED?  OR
```

```
 1   ARE THESE THE ONES THAT WERE OBJECTED TO?  ARE THERE OTHER

 2   QUESTIONS THAT NEED TO BE ADDRESSED RIGHT NOW BECAUSE THE

 3   BOTTOM LINE, I'M GOING TO LET HER BE DEPOSED AND I'M GOING

 4   GIVE ENOUGH TIME FOR BOTH SIDES TO DEPOSE HER.  I DON'T WANT

 5   MR. ROSENTHAL TO INTERRUPT MAKING RELEVANCE OBJECTIONS, NOW

 6   THAT YOU KNOW MY RULING THAT THESE AREAS ARE RELEVANT, BUT I

 7   DON'T WANT HER ANSWERING QUESTIONS, I DON'T WANT

 8   OVERLY-EMBARRASSING QUESTIONS THAT REALLY HAVE NOTHING TO DO

 9   WITH THESE TOPIC AREAS.

10          MS. CLUKEY:  FROM MY CLIENT'S VIEW, YOUR HONOR,

11    WE'RE NOT ASKING THESE QUESTIONS TO EMBARRASS HER AND I

12    GAVE YOU REASONS AND IF YOU WANTED TO TALK ABOUT THEM, WE

13    CAN.

14          THE COURT:  I CAN'T HEAR YOU.  YOU ARE BREAKING

15    UP, MS. CLUKEY.

16          MS. CLUKEY:  I REJECT THE IDEA I ASKED THESE

17    QUESTIONS TO EMBARRASS HER OR HARASS HER --

18          THE COURT:  WELL, FIRST OF ALL, NOBODY IS TALKING

19    TO YOU ABOUT YOUR INTENT.  I'M JUST SAYING THAT BY THEIR

20    NATURE, THEY CAN BE EMBARRASSING.  IF SOMEONE ASKED ME A

21    QUESTION LIKE THAT, IT WOULD BE EMBARRASSING.  THAT IS NOT

22    THE NECESSARILY, THE GUIDEPOST HERE.  THE GUIDEPOST IS IF

23    IT'S A RELEVANT QUESTION, SHE HAS TO ANSWER IT.  BUT SOME

24    OF THEM ARE SO TANGENTIALLY RELEVANT THAT THEY BECOME

25    EMBARRASSING AND I'M NOT GOING TO LET YOU ASK.  THAT'S ALL
```

```
1    I'M SAYING.  I'M NOT SAYING YOU DID ANYTHING WRONG OR THAT
2    YOU HAD ANY INTENT TO EMBARRASS HER.  YOU ARE TRYING TO DO
3    YOUR JOB AND I'M JUST SAYING SOME OF THESE QUESTIONS MIGHT
4    BE SO TANGENTIALLY REMOVED FROM, YOU KNOW, MAYBE PARTIALLY
5    RELEVANT BUT THE KIND OF THINGS THAT I MIGHT NOT ALLOW.
6         MS. CLUKEY:  WELL THAT GETS ME A LITTLE WORRIED
7    BECAUSE TO ME, I SEE THE RELEVANCE SO I'M NOT SURE.  CAN
8    YOU POINT TO A COUPLE OF THEM THAT YOU THINK ARE ON THE
9    FRINGE SO THAT I CAN MAYBE GET AN IDEA.  ALL OF THESE
10   QUESTIONS SHOWED UP IN THE NCIS ROI OR MCIA SO FROM MY
11   POINT OF VIEW, THEY ALL CONFIRM OR REFUTE FACTS THAT ARE
12   STATED IN THE ROIS.
13        THE COURT:  FIRST OF ALL, ROI'S MEANING THE REPORT
14   OF INVESTIGATION?  I CAN'T HEAR YOU, MS. CLUKEY.
15        MS. CLUKEY:  CORRECT.
16        THE COURT:  I DON'T HAVE THAT IN FRONT OF ME.  I
17   DON'T KNOW WHAT THE RELEVANCE OF THAT IS.  I CERTAINLY
18   DON'T KNOW WHY YOU WOULD EVEN SAY THAT.  THIS IS NOT IN
19   FRONT OF ME.  WHY WOULD I CARE IF THEY ARE ROI'S OR NOT?
20   THIS HAS TO DO WITH A CIVIL DEPOSITION AND YOU ARE A LAWYER
21   AND ARE THEY RELEVANT OR NOT RELEVANT, WHAT RELEVANT
22   EVIDENCE IS IT GOING TO LEAD TO THAT AT AGE 12, SHE WAS
23   DOING DRUGS?
24        MS. CLUKEY:  THAT GOES TO DAMAGES, YOUR HONOR.
25        THE COURT:  HOW?
```

```
1              MS. CLUKEY:  FOR EXAMPLE, SHE WAS SEEN BY HER

2     PSYCHIATRIST AND SHE HAS BEEN DOING AND HAS BEEN DOING DRUG

3     AND HAS A HISTORY OF DRUGS, THE LIKELIHOOD OF HER FALLING

4     BACK INTO ADDICTIVE BEHAVIOR IN THE FUTURE IS IMPAIRED.  IF

5     SHE'S SEEKING FUTURE WAGES, WE CAN BRING OUT HOW LONG HER

6     DRUG HISTORY HAS BEEN.

7              THE COURT:  WHAT DO YOU SAY TO THAT, MR.

8     ROSENTHAL?  THAT SOUNDS CONVINCING.

9              MR. ROSENTHAL:  I'M SORRY, YOUR HONOR.  I DIDN'T

10    HEAR WHAT MS. CLUKEY HAD TO SAY.

11             THE COURT:  BASICALLY MS. CLUKEY IS SAYING THAT

12    QUESTION ABOUT WHEN SHE WAS 12, WAS SHE DOING DRUGS WOULD

13    BE PROBABLY A FACTOR THAT SOMEONE WHO IS AN EXPERT MIGHT

14    TAKE INTO CONSIDERATION IN DETERMINING WAGE LOSS, WAS IT?

15             MS. CLUKEY:  YES.  THE FACT THAT SHE HAS BEEN,

16    SUFFERED FROM THIS ADDICTION FROM AN EARLY AGE UNTIL AT

17    LEAST 2003 SPEAKS TO THE ISSUE OF DAMAGES, BECAUSE IT SHOWS

18    THAT SHE PERHAPS IN THE FUTURE HAS AN IMPAIRED FUTURE

19    EARNINGS CAPABILITY BECAUSE SHE SHOWED A LONG TERM HISTORY

20    OF DRUG ADDICTION.

21             MR. ROSENTHAL:  WELL DOING DRUGS AT AGE 12 AND

22    DRUG ADDICTION ARE NOT NECESSARILY CONSISTENT WITH DRUGS AS

23    A GENERAL TERM.  DOING DRUGS IS NOT CONSISTENT WITH

24    ADDICTION AND TO MAKE THE LEAP THAT WHAT YOU DO AT AGE 12

25    IS REPRESENTATIVE OF DAMAGES OR YOUR ABILITY OR INABILITY
```

1    TO ACQUIRE A JOB OR TO BE ADDICTED TO DRUGS AT AGE 36 OR

2    34, 28 WHATEVER THE AGE MAYBE, THAT'S A JUMP.  THAT'S A

3    QUANTUM LEAP.

4         THE COURT:  I HAVE A FEELING THAT IT WAS PROBABLY

5    A FOUNDATIONAL QUESTION IN A SERIES OTHER QUESTIONS, IS

6    THAT RIGHT, MS. CLUKEY.

7         MS. CLUKEY:  YES.  THAT'S PARTS OF THE MY

8    CONTENTION WITH ALL OF THESE.  THEY'RE TAKEN OUT OF

9    CONTEXT.  IN THE FUTURE, I'LL ADHERE TO THE THREE AREAS YOU

10   HAVE ALLOWED US TO ASK ABOUT AND I'LL TRY TO KEEP WITHIN

11   THE PERIMETERS WITHOUT EVEN GETTING TO THE EDGES.

12        THE COURT:  WELL THE PROBLEM IS IF THIS HAS DO

13   WITH DAMAGES AND YOU ARE ESTABLISHING A FOUNDATION AND

14   GOING THROUGH THAT SHE HAS A LIMITED EARNING CAPACITY OR

15   WHATEVER, IT THEN BECOMES A RELEVANT QUESTION.  AGAIN, THIS

16   IS NOT A MOTION IN LIMINE.  IT'S RELEVANT.  WAS SHE CAUGHT

17   SHOPLIFTING AT 15?  ON ITS FACE, IT LOOKS LIKE IT'S NOT

18   RELEVANT UNLESS YOU ARE USING IT TO IMPEACH HER, BUT THEN

19   YOU GET THE CONVICTION OR WHATEVER, TO THE JUVENILE RECORD.

20        MR. ROSENTHAL:  AGAIN, THESE ARE JUVENILE.  I MEAN

21   I THINK ALL OF THESE WITH ALL DUE RESPECT, I THINK THAT'S A

22   GIANT QUANTUM LEAP.  I MEAN, IT'S ONE THING IF SHE WAS

23   DOING DRUGS TWO YEARS PRIOR.  IT'S ONE THING IF YOU ASKED

24   HER, HAVE YOU EVER BEEN REFUSED EMPLOYMENT BECAUSE OF A

25   DRUG ADDICTION.  IT'S ONE THING.

```
 1            THE COURT:  YOU KNOW WHAT I THINK WE NEED TO DO ON
 2   THIS?  JUST BECAUSE I THINK WE'RE GOING TO GET BOGGED DOWN.
 3   I THINK BEFORE WE DO THE DEPOSITION, THERE'S GOING TO HAVE
 4   TO BE SOME PERIMETERS AND ON SOME OF THESE THAT DON'T HAVE
 5   TO DO WITH THE IMMEDIATE BEHAVIOR AROUND THE TIME OF THE
 6   DEATH OF MR. SOMMER OR ABOUT THE MOTIVE AND THIS SORT OF
 7   THING, THE QUESTIONS THAT GO BACK LIKE THIS TO PAGE 15,
 8   SHOPLIFTING, DRUG USE, MAYBE SEXUAL BEHAVIOR BEFORE SHE WAS
 9   MARRIED, I THINK WHAT WE NEED IS SOME TOPIC AREAS IN TERMS
10   OF THE ACTUAL OBJECTIONABLE INFORMATION AND WHAT THE
11   POSITION IS OF EACH PARTY, INSTEAD OF JUST TO KIND OF KNEE
12   JERK THIS, TAKE IT OUT OF CONTEXT AND TO COME UP WITH A
13   DECISION.  WE COULD BE HERE ALL DAY AND THIS IS JUST A
14   PARTIAL AMOUNT OF QUESTIONS.  THE MAJORITY OF THE QUESTIONS
15   HAVING TO DO WITH, YOU KNOW, HER BEHAVIOR THAT THE AGENTS
16   OR THE INVESTIGATORS RELIED ON TO INVESTIGATE HER, WHAT
17   THEY FELT WAS SUSPICIOUS, I THINK IT IS FAIR GAME AND I
18   DON'T THINK WE NEED TO GO OVER THOSE QUESTIONS.  BUT SOME
19   OF THE OTHER ONES, WE NEED TO MEET AND CONFER AND COME UP
20   WITH A LIST OF TOPICS AND THEN BEFORE THE DEPOSITION, MAYBE
21   WE SHOULD GET ON THE PHONE AND GO OVER IT, SO WE KNOW A
22   LITTLE MORE, HAVE A LITTLE MORE PRIORITY AND DURING THE
23   DEPOSITION, THE WHOLE DEPOSITION ISN'T SPENT OBJECTING TO
24   EACH OTHER.
25            MS. CLUKEY:  YES, YOUR HONOR.
```

```
 1              MR. HILL:  THIS IS MORRIS HILL.  CAN I MAKE A

 2    COMMENT ON THIS?

 3              THE COURT:  YEAH.  SURE.

 4              MR. HILL:  ONE OF THINGS THAT BETH DID JUST

 5    MENTION JUST NOW THAT I THINK IT'S SOMETHING THAT IS GOING

 6    TO BE BEFORE YOU, YOUR HONOR, I THINK VERY SOON NOW IN THE

 7    NEXT FEW WEEKS, BECAUSE IT'S GOING TO BE INVOLVING ANOTHER

 8    MOTION THAT WILL BE POPPING UP SOON.  AND THE PLAINTIFF

 9    WANTS US TO ANSWER AN INTERROGATORY, I THINK, ABOUT WHAT

10    EVIDENCE DO WE HAVE THAT PLAINTIFF IS AN UNFIT MOTHER.  WE

11    HAVEN'T ALLEGED SHE'S AN UNFIT MOTHER AND THEY WANT US TO

12    IDENTIFY EVIDENCE TO THAT EFFECT.  THAT OPENS UP AN AWFUL

13    LOT BECAUSE IN THIS CASE ONE OF THE MAIN DAMAGES CLAIM IS

14    THAT WE HAVE DEPRIVED THE MOTHER OF HER CHILDREN, THAT WE

15    SEPARATED HER FROM HER CHILDREN.  AND THAT GETS INTO A VERY

16    BROAD AREA.

17         I'D LIKE TO JUST TAKE A MOMENT HERE AND READ WHAT

18    MS. SOMMER'S BROTHER HAS WRITTEN ABOUT HER REGARDING THE

19    CHILDREN.

20              MR. ROSENTHAL:  I'M GOING TO OBJECT.  THIS ISN'T

21    BEFORE THE COURT RIGHT NOW, YOUR HONOR.

22              THE COURT:  I DON'T WANT TO GET INTO IT RIGHT NOW

23    EITHER.  THAT IS A SEPARATE AREA.  OBVIOUSLY, IF THESE ARE

24    THE AREAS YOU WANT TO GET INTO AT THE DEPO, THESE ARE THE

25    THINGS YOU NEED TO MEET AND CONFER, MAKE A LIST ABOUT AND
```

25

```
1    WE'LL TALK ABOUT FILE SOMETHING WITH ME AND GIVE ME A HEADS
2    UP.
3            MS. CLUKEY:  OKAY.
4            THE COURT:  WHEN IS IT YOU WERE PLANNING TO HAVE
5    THE DEPOSITION?
6            MR. ROSENTHAL:  WE HAVE NOT RESCHEDULED PENDING
7    YOUR RULING.
8            MR. HILL:  MIGHT I SAY SOMETHING IN THAT REGARD?
9            THE COURT:  YES.
10           MR. HILL:  WE HAVE JUST GOTTEN THE PLAINTIFFS
11   AMENDED PRIVILEGE LOG AND WE HAVE JUST GOTTEN AN AMENDED
12   RESPONSE TO PRODUCTION FROM THE PLAINTIFF AND WE HAVE, WE
13   HAVE ALSO GOTTEN A RENUMBERING.  WE HAVE A LOT OF PROBLEMS
14   IS THE WAY TO CUT THROUGH THIS.  AND I AM NOT COMFORTABLE
15   GOING FORWARD WITH THE PLAINTIFF'S DEPOSITION GIVEN WHAT I
16   BELIEVE IS A SUBSTANTIAL FAILURE TO COMPLY WITH DISCLOSURE
17   REQUIREMENTS AT THIS POINT.
18           THE COURT:  AND ARE YOU TALKING ABOUT PRIVILEGE
19   LOG OR WHAT ARE YOU TALKING ABOUT?
20           MR. HILL:  IT'S THE PRIVILEGE LOG.  IT IS THE FACT
21   THERE ARE MISSING DOCUMENTS THAT WERE MISSING OUT OF
22   SEQUENCE DOCUMENTS, DOCUMENTS THAT HAVE BEEN NEVER BEEN
23   IDENTIFIED OR ACKNOWLEDGED.  DOCUMENTS THAT ARE CLAIMED AS
24   PRIVILEGED AND WE ARE GOING TO KEY THIS UP FOR A MOTION.
25   WE HAVE A TELEPHONIC WITH ALEXA SCHEDULED FOR THIS
```

1   THURSDAY.  THERE'S GOING TO HAVE TO BE A MOTION ON IT.

2   ESSENTIALLY, THE SITUATION IS THE ONLY THINGS THE PLAINTIFF

3   HAS ALLOWED TO US HAVE DISCOVERY ON ARE ESSENTIALLY THE

4   AMOUNT OF MONEY WE OWE.

5          EVERYTHING ELSE IS OFF LIMITS CLAIMED AS PRIVILEGE OR

6   WORK PRODUCT OR SOMETHING ELSE.

7          UNDER THOSE CIRCUMSTANCE, I'M NOT COMFORTABLE GOING

8   FORWARD WITH PLAINTIFF'S DEPOSITION WHEN I KNOW BASED ON THE

9   PRIVILEGE LOG THAT THERE'S A LOT OF DOCUMENTS OUT THERE THAT

10  ARE NOT PRIVILEGED THAT OUGHT TO BE PRODUCED THAT WE SHOULD

11  BE ABLE TO REVIEW BEFORE WE TAKE THIS DEPOSITION.

12          THE COURT:  OKAY.  AND WHEN WE'RE TALKING ABOUT

13  PRIVILEGED DOCUMENTS, WE'RE TALKING ABOUT ATTORNEY/CLIENT

14  DOCUMENTS, CORRECT?

15          MR. HILL:  SOME OF THEM ARE ATTORNEY/CLIENT, YES.

16          THE COURT:  WHAT WOULD BE THE OTHER ONES?

17          MR. HILL:  THEY'RE TALKING ATTORNEY WORK PRODUCT.

18          THE COURT:  OKAY.  SO YOU HAD UNTIL AUGUST 1ST FOR

19  FACT DISCOVERY.  IT SOUNDS LIKE THIS ISSUE, AS WELL AS THE

20  ISSUE IN TERMS OF THE TOPIC AREAS AS WELL AS THE

21  INTERROGATORIES HAVE TO BE CLEARED UP BEFORE YOU CAN DO HER

22  DEPOSITION, RIGHT?

23          MR. HILL:  THAT IS WHAT I'M SAYING.

24          THE COURT:  MS. ROSENTHAL, DO YOU AGREE?  WELL, I

25  GUESS YOU DON'T REALLY CARE.

```
1              MR. ROSENTHAL:  I WILL SAY THIS, YOUR HONOR.  WE

2     HAVE BEEN TRYING TO WORK COOPERATIVELY WITH ONE ANOTHER ON

3     THAT.  I HAVE JUST PROVIDED MR. HILL WITH THE DOCUMENTS AND

4     RESPONSES, THE PRIVILEGE LOG AND RENUMBERING THAT HE'S

5     SPEAKING OF.  I INTEND TO MEET AND CONFER WITH HIM AND MAKE

6     SURE THAT HIS CONCERNS ARE ADDRESSED.

7              THE COURT:  I MEAN THIS SHOULDN'T BE, THIS KIND OF

8     STUFF, YOU KNOW, YOU REALLY DON'T NEED ME TO DO THIS.  THIS

9     IS --

10             MR. ROSENTHAL:  I AGREE.  I AGREE.  THAT'S WHY I

11    SAID, WE WILL MEET AND CONFER.  WE'VE BEEN TRYING TO WORK

12    IT OUT AND IF AT THE END OF THE DAY, IF WE'RE NOT ABLE TO

13    WORK IT OUT, THAT'S WHAT YOU'RE HERE FOR.

14             THE COURT:  OKAY.  SO YOU ARE GOING TO DO THAT.

15    THE ONLY OTHER ISSUE, I THINK IS HOW LONG IS THE DEPO GOING

16    TO LAST?  BUT I THINK WE NEED TO RESOLVE THE QUESTIONING

17    TOPIC AREAS SO THAT WE'RE NOT GOING TO GET BOGGED DOWN WITH

18    OBJECTIONS.

19        IS IT CORRECT, MR. HILL, YOU HAVEN'T EVEN HAD A CHANCE

20    TO QUESTION YET?

21             MR. HILL:  THAT IS CORRECT.

22             THE COURT:  AND GIVEN THE TOPIC AREAS, THE GENERAL

23    CATEGORY TOPIC AREAS, MS. CLUKEY, HOW MUCH MORE TIME DO YOU

24    THINK YOU'RE GOING TO NEED?

25             MS. CLUKEY:  ACTUALLY, TWO HOURS.
```

```
 1            THE COURT:  MR. HILL, HOW MUCH TIME DO YOU THINK
 2   YOU'LL NEED?
 3            MR. HILL:  I JUST DON'T KNOW.  IT DEPENDS ON HOW
 4   MUCH MS. CLUKEY, INFORMATION SHE GETS.  YOU KNOW, I WANT TO
 5   GO INTO ALL THE AREAS THAT WERE DEVELOPED IN MY CLIENT'S
 6   SIDE OF THE CASE.  SO HOW LONG THAT'S GOING TAKE, I DON'T
 7   KNOW.
 8            THE COURT:  WELL ONE OF YOU HAD, MS. CLUKEY HAS
 9   ALREADY HAD QUESTIONED SEVEN HOURS, OF THAT SEVEN HOURS,
10   HOW MUCH OF IT WAS QUESTIONING AND HOW MUCH OF IT WAS
11   ARGUING BACK AND FORTH?
12            MR. HILL:  ALL I HEARD WAS REALLY ARGUMENT.  I
13   DIDN'T HEAR A SINGLE THING THAT I THOUGHT WAS ENLIGHTENING
14   FOR OUR SIDE OF THE CASE.
15            MR. ROSENTHAL:  YOUR HONOR, WHILE I INTERJECTED
16   OBJECTIONS, THERE WERE TIMES WHEN WE ARGUED.  I DID NOT
17   INSTRUCT MY CLIENT NOT TO ANSWER ANY QUESTION.  SO, AT
18   LEAST, THAT'S MY RECOLLECTION.
19            THE COURT:  SO SHE ANSWERED ALL THESE QUESTIONS?
20            MR. ROSENTHAL:  YES.
21            THE COURT:  SO I DON'T EVEN SEE WHY WE WOULD NEED
22   TO GO ON WITH THESE QUESTIONS AGAIN, IF SHE ALREADY
23   ANSWERED THEM.
24            MR. HILL:  I KNOW I DON'T NEED TO GO OVER
25   QUESTIONS THAT HAVE BEEN ANSWERED FOR MS. CLUKEY.
```

```
 1            THE COURT:  RIGHT.  HERE IS THE WAY I SEE IT.  I'M
 2    INCLINED TO GIVE A FULL SEVEN HOUR SESSION.  I'VE GIVEN THE
 3    PLAINTIFF A BUNCH MORE.  I THINK 11 DEPOSITIONS MORE.  THEY
 4    WERE TRYING TO WORK TOGETHER.  WE DID GET A LITTLE BOGGED
 5    DOWN HERE BECAUSE OF THE TOPIC AREA, COMPLEX CASE, HIGHLY
 6    EMOTIONAL CASE.  THESE ARE PERSONAL AREAS.  THERE ARE
 7    ALLEGATIONS OF MURDER AND THIS SORT OF THING THAT PEOPLE
 8    TAKE VERY SERIOUSLY.  IT'S A VERY EMOTIONALLY CHARGED CASE
 9    AND BECAUSE OF THAT, I CAN UNDERSTAND THE PARTIES'
10    POSITIONS.  I'M NOT REALLY BLAMING ANYONE BUT I REALLY
11    THINK WE NEED TO HAVE HER DEPOSED CALMLY WITH VERY RELEVANT
12    AND COMPLETE QUESTIONS.  I'M GOES TO GIVE YOU SEVEN HOURS.
13    I DON'T WANT TO SCHEDULE IT UNTIL YOU RESOLVED ALL THESE
14    MATTERS.
15        I WANT YOU TO MEET AND CONFER AND ABOUT THE PRIVILEGE
16    ISSUE, ABOUT THE INTERROGATORY ISSUE AND NOW ABOUT THE
17    TOPICS THAT MIGHT BECOME, MIGHT BE VIEWED AS NOT VERY
18    RELEVANT, BUT VERY EMBARRASSING AND HARASSING AND SO I CAN
19    HAVE A LOOK AT THEM AND THEN I CAN GIVE YOU MY TWO-CENTS
20    WHICH IS TURNING OUT TO BE AN ORDER SO.
21        TWO-CENTS IS WORTH MORE TODAY, I GUESS.  I'M NOT GOING
22    TO ORDER SANCTIONS AGAINST ANYONE.  I DON'T THINK THAT'S
23    APPROPRIATE AT THIS TIME.
24        SO THAT LEAVE THE BALL KIND OF IN YOUR COURT TO MEET
25    AND CONFER AND THEN YOU WILL CALL ALEXA.  I'M NOT GOING TO
```

```
1    HERE NEXT WEEK -- ABOUT THE PRIVILEGE ISSUE AND YOU'LL ALSO
2    CALL HER ABOUT WHEN YOU HAVE A LIST OF THE KIND OF QUESTIONS
3    THAT MIGHT BECOME HOT TOPICS THAT WOULD BOG DOWN THE
4    DEPOSITION.  OKAY?
5              MR. HILL:  VERY GOOD.
6              THE COURT:  ANYTHING FURTHER?
7              MR. HILL:  NO.
8              THE COURT:  I WAS GOING TO HAVE THIS IN PERSON BUT
9     MS. ROSENTHAL, YOU'RE OUT OF TOWN A PRETTY FAIR DISTANCE?
10             MR. ROSENTHAL:  I'M IN MONTERREY, YOUR HONOR.  I
11    APPRECIATE YOUR TAKING THIS TELEPHONICALLY.
12             THE COURT:  YEAH.  SO I DON'T LIKE THE TELEPHONIC
13    BUT BECAUSE OF THAT, I'M GOING TO TRY TO DO IT
14    TELEPHONICALLY UNLESS IT BECOMES SOMETHING WHERE WE'RE
15    GOING TO BE HERE THREE OR FOUR HOURS, AND THEN WE'LL HAVE
16    PEOPLE IN PERSON.
17             MR. ROSENTHAL:  APPRECIATE THAT.
18             THE COURT:  ALL RIGHT.  THANK YOU AND HAVE A
19    PLEASANT WEEKEND AND TALK TO YOU IN THE NEAR FUTURE.
20             MS. CLUKEY:  THANK YOU.
21             MR. ROSENTHAL:  THANK YOU.
22             THE CLERK:  WE'RE OFF THE RECORD.
23                      (END OF PROCEEDING)
24    //
25
```

```
 1

 2   SAN DIEGO, CALIFORNIA          )
                                    ) SS:
 3   COUNTY OF SAN DIEGO            )

 4

 5

 6

 7         I, ELIZABETH M. CESENA, CSR 12266, AN OFFICIAL

 8   REPORTER OF THE UNITED STATES DISTRICT COURT, SOUTHERN

 9   DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT I TRANSCRIBED

10   THE PROCEEDINGS, TO THE BEST OF MY ABILITY, IN THE

11   ABOVE-ENTITLED CAUSE AND THAT THE FOREGOING TRANSCRIPT,

12   NUMBERED FROM PAGES 1 TO 31, INCLUSIVE, IS A FULL, TRUE AND

13   CORRECT TRANSCRIPT OF PROCEEDINGS HELD ON MAY 20, 2011.

14

15

16         SAN DIEGO, CALIFORNIA, DATED THIS 7TH DAY OF

17   MAY, 2011.

18

19
                       /S/ ELIZABETH CESENA
20                     _____

21                     ELIZABETH M. CESENA, CSR 12266
                       OFFICIAL COURT REPORTER
22

23

24

25
```