UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA SOMMER,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA, COUNTY OF SAN DIEGO MEDICAL EXAMINER'S OFFICE, GLENN N. WAGNER, COUNTY OF SAN DIEGO DISTRICT ATTORNEY'S OFFICE, BONNIE DUMANIS, LAURA GUNN,<br><br>　　　　　　　　　　Defendants. | Civil No.   09cv2093-WQH (BGS)<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS; (2) DENYING PLAINTIFF'S REQUEST FOR SANCTIONS**<br><br>**[Doc. No. 83.]** |

Plaintiff Cynthia Sommer filed suit against various defendants, including the District Attorney, Bonnie Dumanis ("Dumanis"), and a former Deputy District Attorney, Laura Gunn ("Gunn"), alleging Defendants violated her civil rights by investigating, arresting, and charging her with murder despite knowing or having had reason to know that the evidence against her was false and fabricated. (Doc. No. 1 at ¶¶ 64-65.) Pending before the Court is Plaintiff's motion to compel Defendants Dumanis and Gunn (herein collectively "Defendants") to produce certain documents identified on their privilege log. (Doc. No. 82.) Plaintiff seeks to compel production of documents being withheld by Defendants on the basis of the attorney-client privilege, work product immunity, and prosecutorial immunity. Having considered the parties' briefs and accompanying submissions, pursuant to Civil Local Rule 7.1(d)(1) the Court finds this matter suitable for disposition on the papers submitted.

**FACTUAL BACKGROUND**

Plaintiff Cynthia Sommer initiated this action by filing a Complaint September 24 ,2009. (Doc. No. 1). Plaintiff has claims for: (1) violation of 42 U.S.C. § 1983 and (2) violation of the Federal Tort Claims Act ("FTCA").  Plaintiff alleges the following.

In February of 2002, her husband, Todd Sommer, a 23-year old Sergeant in the United States Marine Corps, died of a cardiac arrhythmia. (Doc. No. 1 at ¶ 1.) Todd Sommer collapsed in the early morning of February 18, 2002, and was pronounced dead at the hospital approximately half an hour later. *Id.* at ¶¶ 12-13.  Dr. Stephen L. Robinson performed an autopsy and concluded that Todd Sommer had died of cardiac arrhythmia but did not find any signs of poisoning. *Id.* at ¶¶ 14-18.  Dr. Robinson forwarded the report to Dr. Brian D. Blackbourne, then the Chief Medical Examiner for the County of San Diego and he agreed with Dr. Robinson that Todd Sommer had died of natural causes. *Id.* at ¶ 19.  Dr. Blackbourne issued a death certificate which identified the manner of death as natural and the probable cause of death as cardiac arrhythmia of undetermined etiology. *Id.*

Plaintiff further alleges that despite the results of the autopsy and the Medical Examiner's opinion, "Defendants refused to accept those results and embarked upon an investigation intended to find criminal conduct" by Plaintiff. *Id.* at ¶ 21.  Plaintiff alleges that Defendants were "[d]esperate for any evidence to justify their continued investigation" and sent tissue samples to the Environmental Division of the Armed Forces Institute of Pathology ("AFIP"). *Id*. at ¶ 23.  AFIP "purportedly found extremely high levels of arsenic in two of six tissue samples," which Plaintiff contends showed that "the samples were negligently or intentionally contaminated" because "arsenic is ubiquitous." *Id*. at ¶ 24. Plaintiff alleges all of the tissue samples, as well as Todd Sommer's blood and urine, "should have shown high levels of arsenic" if the test results were accurate. *Id.* Plaintiff alleges Jose Centeno, the lab director, "believed that the two tissue [samples] that tested positive for arsenic had likely been contaminated, possibly coming into contact with arsenic . . . ." *Id.* Plaintiff alleges Defendants knew or should have known that AFIP was not a competent testing facility and that Defendants chose the lab because they knew "a competent testing facility would conclusively prove that Todd Sommer did not die of arsenic poisoning." *Id.* at ¶ 25.

Plaintiff also alleges "[d]uring their investigation prior to Mrs. Sommer's arrest, Defendants consulted with several qualified independent forensic toxicologists . . . . [who] refused to concur in the

results of the testing performed by AFIP [because] the results were demonstrably false." *Id*. at ¶ 29. Plaintiff alleges Defendants Dumanis and Gunn "knew or should have known during the investigation . . . that there was no evidence" that Plaintiff killed Todd Sommer but that they "believed that a high-profile arrest and conviction would serve their personal goals and make the D[istrict] A[ttorney's] O[ffice] famous." *Id.* at ¶¶ 32- 34. Plaintiff alleges Dumanis and Gunn convinced Wagner, who had left his position as head of AFIP to become the Chief Medical Examiner for the County of San Diego during the Sommer investigation, to change the death certificate to homicide. *Id*. at ¶ 35.

Plaintiff alleges Wagner "knew or should have known that the AFIP test results were corrupt, false, and possibly fabricated," especially in light of an email exchange between Wagner and Centeno, the scientist who conducted the test. *Id.* at ¶ 36. Plaintiff alleges Wagner emailed Centeno to ask for an explanation of the high level of arsenic found in two samples while the other four samples and Todd Sommer's blood and urine were negative and that Centeno replied that he did not have a good explanation and suspected the tissue samples had become contaminated. *Id*. Plaintiff also alleges Wagner knew or should have known that the test results were fabricated, but nonetheless changed Todd Sommer's cause of death to cover up the problems at AFIP and avoid "public embarrassment" and protect his "professional image." *Id*. at ¶ 39.

Plaintiff was arrested and charged with murdering Todd Sommer on November 30, 2005, and convicted of her husband's murder on January 30, 2007. *Id.* at ¶¶ 49-50. On November 30, 2007, her conviction was overturned and she was granted a new trial. *Id.* at ¶ 52.  Before a new trial took place, additional tissue samples were located, and Defendants had these additional samples "tested at a highly respected private testing facility in Canada." *Id.* at ¶ 54. Plaintiff alleges that "[n]one of the tissue samples showed the presence of any arsenic whatsoever . . . . prov[ing] . . . Mrs. Sommer had been convicted of a crime that had never occurred." *Id*. On April 17, 2008, Plaintiff was released from custody. *Id*. at ¶ 56.

In support of Plaintiff's claim for violation of § 1983, Plaintiff alleges the "State Defendants," including Dumanis and Gunn, "knew or had reason to know that the results of the testing conducted by AFIP Environmental were corrupt, false, fabricated, and completely lacking in credibility." *Id.* at ¶ 64. Plaintiff alleges the State Defendants "knew or should have known that the deliberate fabrication of false evidence . . . would result in [Plaintiff's] wrongful arrest, incarceration, and subsequent conviction

. . . ." *Id.* at ¶ 65. Plaintiff alleges the state defendants acted with "malice and with the intent to vex, annoy, and harass Plaintiff" and to "inflict severe emotional distress" on her. *Id*. at ¶ 67. Plaintiff alleges the District Attorney's Office and the Medical Examiner's Office "had a policy and custom of using, authorizing, ratifying, and/or covering up the use of corrupt, false, and fabricated evidence during their investigations." *Id.* at ¶ 68.

In support of her claim for violation of the Federal Tort Claims Act, Plaintiff alleges agents and employees of the United States "negligently or intentionally used fabricated or contaminated evidence they knew or should have known was corrupt, false, and completely lacking in credibility" against Plaintiff. *Id.* at ¶ 79. Plaintiff alleges this constitutes "fraud, negligence, false imprisonment, assault, battery, defamation, intentional and negligent infliction of emotional distress, and invasion of privacy." *Id*. at ¶ 81.

### I.     **Plaintiff's Motion to Compel**

In her motion to compel, Plaintiff argues that Defendants should be compelled to produce documents responsive to her request for production of documents, set one, served on July 16, 2010. (Doc. No. 83-1 at 2; Decl. Barber, Doc. 83-2, Ex. A.)  In the alternative, Plaintiff seeks an in-camera review of the documents Defendants are withholding.  (*Id*.)  Plaintiff made 39 requests for production and apparently seeks to compel Defendants to produce any responsive document withheld on the basis of attorney-client privilege, work product immunity, or prosecutorial immunity.  (*Id*.)  Defendants privilege log consists of 43 items withheld from production.  (Doc. No. 83-2, Ex. C.)  Significantly, Defendants are withholding Plaintiff's criminal prosecution files on the basis that the documents are protected work product.  (*Id*.)  Defendants also argue that Plaintiff's requests call for disclosure of criminal prosecution strategy that is protected from discovery by absolute quasi-judicial immunity. (Doc. No. 83-2, Ex. B.)  Defendants privilege log consists of 43 items withheld from production.  (*Id*. at Ex. C.)

Plaintiff argues that the documents being withheld contain information that will reveal Defendants "true motive for bringing criminal charges against her" and are necessary to prove that "Defendants conspired to fabricate evidence to charge Plaintiff with [murder]." (Doc. No. 83-1 at 3-4.) Specifically, Plaintiff identifies that the documents relating to proof of charges, evaluation of the matter,

investigative information, and inferences drawn from interviews are relevant to her claims as well as to Defendants' defenses. (*Id*. at 4-5.)

On August 18, 2010, in response to Plaintiff's request for production of documents, set one, Defendants produced a log of privileged documents. (Decl. Barber ISO Mot. Compel, Doc. No. 83-2, Ex. C.) The privilege log identifies the bates number of the withheld document along with a description of the document and the nature of the privilege being asserted. Defendants originally asserted the attorney-client privilege for two documents, the attorney work product immunity doctrine for 42 documents, and made one objection to production based on the personal privacy rights on the part of potential Superior Court jurors that completed questionnaires during the jury selection process. (*Id*.) In addition, Defendants argue that it is withholding a number of documents because they bear on areas protected by prosecutorial immunity and thus are shielded from discovery. (Doc. No. 89 at 5.) In their opposition to Plaintiff's motion to compel, Defendants state that on April 8, 2011, they produced many of the documents listed on their privilege log.[1] Yet, other than the documents identified by Bates Nos. DA/ME007056-DA/ME007066, Defendants did not specify the documents produced.

**Discovery Standard**

The Federal Rules allow for broad discovery in civil actions: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This provision is liberally construed to provide wide-ranging discovery of information necessary for parties to evaluate and resolve their dispute. *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1995). In addition, "documents are not shielded from discovery merely because they are confidential." *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 685 (D. Kan. 2004).

///

///

---

[1] The declaration Morris Hill, Esq. submitted in support of Defendants' opposition to Plaintiff's motion to compel states that on April 8, 2011, he produced "54 items [ ] that had been withheld as work product." (Decl. Hill ISO Opp'n, Doc. No. 89-1 at ¶ 3.)

A. **Attorney-Client Privilege**

**1. Legal Standard**

The burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it. *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 2005). The Ninth Circuit typically applies an eight part test to determine whether material is protected by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th Cir.1992) (quoting *United States v. Margolis (In re Fischer)*, 557 F.2d 209, 211 (9th Cir.1977)). "The privilege is limited to 'only those disclosures-necessary to obtain informed legal advice-which might not have been made absent the privilege.'" *Id.* at 1070 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). "The attorney-client privilege [also protects] an attorney's advice in response" to a client's request for legal advice. *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir.1997) (citation omitted).

**2. Analysis**

The only documents Defendants withheld on the basis of the attorney-client privilege are identified by Bates Nos. DA/ME006875-6877. (Decl. Barber ISO Mot. Compel, Doc. No. 83-2, Ex. C.) One document is described as an email exchange on May 23, 2008, between defendant Glenn Wagner and his attorney Deborah McCarthy. (*Id*.) The subject of the communication involves the present litigation. (*Id*.) The other document is an October 14, 2009 email from Nancy Woodford, a Medical Examiner's Office employee, to William Pettingill, Esq. (*Id*.) The subject of this communication also involves litigation strategy pertaining to this case. (*Id*.) Plaintiff's motion does not offer any argument to lead the Court to believe that the attorney-client privilege does not cover written communications between an attorney and a defendant regarding the present litigation. Similarly, Plaintiff has not alleged that the privilege was waived. Thus, the Court finds that these documents are covered by the attorney-client privilege and are not subject to production.

### B.   Work Product Immunity

**1.  Legal Standard**

Asserting the work product doctrine is not an assertion of a privilege, but an assertion of a qualified immunity. *Admiral Ins. v. U.S.D.C. (Ariz.)*, 881 F.2d 1486, 1494 (9th Cir. 1989). The work product doctrine protects from discovery material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509-12 (1947). The primary purpose of the work product rule is to "prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins.*, 881 F.2d at 1494.

Work product is divided into two general categories: (1) ordinary work product—also known as "qualified" work product, and (2) opinion work product—also known as "absolute" work product. "Qualified" work product protects an attorney's factual investigations, and "absolute" work product protects an attorney's mental impressions, legal strategies and so forth. *See Baker v. General Motors Corp.,* 209 F.3d 1051, 1054 (8th Cir. 2000). The party seeking qualified work product has the burden of demonstrating a substantial need for work product, as well as an inability to obtain the information from other sources without undue hardship. *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981); *see also* Fed. R. Civ. P. 26(b)(3)(A)(ii). In contrast, because opinion work product enjoys almost absolute immunity, a party seeking such work product "must make a showing beyond the substantial need/undue hardship test . . . . [O]pinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir. 1992).

**2. Analysis**

Defendants assert the work product doctrine with respect to documents created during the underlying criminal investigation and prosecution. None of the documents were created in connection with this case. Some of the documents being withheld were created prior to Plaintiff's arrest and others were created during the pretrial process, the criminal trial, and in preparation for Plaintiff's potential retrial. (Decl. Barber ISO Mot. Compel, Doc. No. 83-2, Ex. C.) Defendants contend that the documents reflect attorney strategy and tactics. Defendants further contend that the documents fall within the protection of the work product doctrine and accordingly satisfy the requirements of Federal Rule of Civil Procedure 26(b)(3) because: (1) the memoranda, notes, emails and other correspondence are

documents or tangible things; (2) the documents were prepared in anticipation of a criminal trial; and (3) the documents were prepared on behalf of a party. (Doc. No. 89 at 6-7.)

### a. Rule 26(b)(3) Only Protects Against Disclosure of Work Product from the Criminal Case When Prepared By or For a Party to Both the Prior and Current Litigation

While it is true that the documents in the district attorney's file used to prosecute Plaintiff constituted work product in the criminal case, they may no longer benefit from that protection. *See F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983). The parties currently asserting that these documents are protected work product are the District Attorney, Bonnie Dumanis, and former Deputy District Attorney, Laura Gunn. Neither defendant was a party in Plaintiff's criminal case and the relevant work product was prepared on behalf of the People of the State of California. *See Doubleday v. Ruh,* 149 F.R.D. 601, 606 (E.D. Cal. 1993); *Shepherd v. Superior Court of Alameda County*, 17 Cal.3d 107, 122 (1976) (holding the work product doctrine inapplicable because "The district attorney is not an "attorney" who represents a "client" as such. He is a public officer, under the direct supervision of the Attorney General. . . .). Moreover, Defendants implicitly concede that the documents were not created for a party to this litigation by stating that "[t]he documents are communications to or from prosecuting attorneys representing the State of California, as encompased by Rule 26(b)(3)(A). (Doc. No. 89 at 7.)

In *Doubleday,* the court held that neither the County of Sacramento nor the non-party district attorneys could assert the work product immunity in the civil litigation with respect to the district attorney's criminal prosecution file. The court reasoned that the immunity may only be asserted by the "person/entity [that] is a party (or a party's representative) to the litigation in which the immunity is asserted" or by the party/entity on whose behalf the work product was created. *Doubleday*, 149 F.R.D. at 605-606. Although the County of Sacramento was a party to the civil litigation, it was not a party to the criminal case, therefore the work product was not prepared on its behalf. The district attorney's who prepared the work product in the criminal case could not assert the immunity because they were not parties to the civil action. *Id*. at 606.

1  Unlike in *Doubleday*, some of the attorneys who prepared the work product in Sommer's
2  criminal case are parties to the current litigation—Gunn and Dumanis.[2]  Therefore, documents prepared
3  by Dumanis or Gunn are subject to work product protection in this case.  But because the San Diego
4  District Attorney's Office was not a party to the criminal case and the State of California is not a party
5  to the present civil action, the work product doctrine does not apply to documents created by anyone
6  other than Dumanis or Gunn.

7  Accordingly, the following documents identified on Defendants' privilege log are not protected
8  by the work product rule and must be produced for the Court's *in camera* review: Bates Nos.
9  DA/ME006878 (Memorandum from Jesse Rodriguez); DA/ME006881 (Sommer Investigation Index;
10 Entry for June 2005); DA/ME007067-78 (Memo dated 4/10/06 from a subordinate regarding research
11 about the theory of murder by poison and financial gain); DA/ME007123-24 (investigative report by
12 Dan Schmitt dated 7/7/08 concerning inferences drawn from interviews); DA/ME007482 (memo from
13 Genaro Ramirez containing inferences drawn from interviews); DA/ME007483 (Progress Report Notes
14 prepared by Genaro Ramirez).

15 Because of the sensitive nature of these documents and because what would constitute relevant
16 discovery for the *Devereaux* claim that Defendants fabricated evidence and continued their investigation
17 after they knew or should have known that Plaintiff was innocent is limited; the Court will first review
18 these documents *in camera*.  After its review, the Court will produce to Plaintiff any documents that
19 appear reasonably likely to lead to the discovery of admissible evidence.[3]

20 **b.  Compelling Need**

21 As noted above, Rule 26(b)(3) allows the disclosure of work product containing the "mental
22 impressions, conclusions, opinions or legal theories" of counsel or a party's representative where the
23 attorneys' mental impressions are at issue and the need for the work product is compelling.  *Holmgren*,
24 976 F.2d at 577.  In this case, the documents Defendants identify in their privilege log constitute what is

---

[2] "Attorneys who prepared the work product are holders of the work product immunity in addition to the party for whom the work product was prepared." *Doubleday*, 149 F.R.D. 601 at n.5.

[3] Plaintiff herself proposed that the Court could conduct an in camera review to determine whether the documents are discoverable.  (Doc. No. 83-1 at 2.)

referred to as opinion or absolute work product. Thus, for the Court to order disclosure the attorneys' mental impressions must be at issue and the Plaintiff's need for the work product must be compelling.

In this case Plaintiff intends to prove that Defendants Dumanis and Gunn investigated and prosecuted her for murdering Todd Sommer despite knowing that AFIP's test results were corrupt, false, fabricated, and completely lacking in credibility. Doc. No. 1 at ¶ 64. It is clear that the mental workings of the defendant prosecutors are at issue. To the extent that the prosecutors' notes reveal that they knew test results were false or fabricated, those notes constitute the heart of Plaintiff's case. A review of the privilege log indicates that the documents contain the attorneys' evaluation of the criminal case, specifically regarding evidence and investigative information. (Decl. Barber ISO Mot. Compel, Doc. No. 83-2, Ex. C.) Plaintiff contends that a compelling need for the documents is present because of the potential importance of the documents and because these records are the best indication of what the prosecutors knew about the possible fabrication of evidence.

Other courts have permitted discovery of documents created by a district attorney's office for a prior criminal proceeding. *See, e.g., Carter v. City of Philadelphia,* 2000 WL 632988 (E.D. Penn. May 5, 2000); Doubleday, 149 F.R.D. 601; *see also Schultz v. Talley*, 152 F.R.D. 181, 184 (W.D. Mo. 1993) (ordering production of assistant attorney general's investigatory file in subsequent civil litigation). The Court in *Doubleday* ordered disclosure because, like here, "plaintiff's attorney [was] seeking information directly pertinent to the issues in [the] civil case, [was] not seeking the information because he [was] too 'lazy' to develop the information himself, and [was] seeking information solely within the possession of the prosecuting agency." 149 F.R.D. at 606.

The Court finds that the attorneys' mental impressions are at issue in this case. Because the information is not available elsewhere, the need for the work product is compelling. Furthermore, assuming *arguendo* that the documents addressed in the previous section are protected work product, Plaintiff has established a compelling need for those as well. Accordingly, in addition to the documents identified previously, the following documents must also be produced in un-redacted form: Bates Nos. DA/ME006878; DA/ME006879; DA/ME006881; DA/ME006882-83; DA/ME006884; DA/ME006885-86; DA/ME006887-88; DA/ME00689-90; DA/ME006891; DA/ME006892-97; DA/ME006898-6901; DA/ME006903-08; DA/ME006911-14; DA/ME006916-6923; DA/ME006924-39; DA/ME006940-42; DA/ME006943; DA/ME006944; DA/ME006945-60; DA/ME006961-6971; DA/ME006972-7055;

DA/ME007067-78; DA/ME007079; DA/ME007102; DA/ME007103-7112; DA/ME007113-7122; DA/ME007123-24; DA/ME007125-26; DA/ME007129-7143; DA/ME007482; DA/ME007483.

That said, because what would constitute relevant discovery for the *Devereaux* claim that Defendants fabricated evidence and continued their investigation after they knew or should have known that Plaintiff was innocent is limited; the Court will first review these documents *in camera.* After its review, the Court will produce to Plaintiff any documents that appear reasonably likely to lead to the discovery of admissible evidence.

### C.    Prosecutorial Immunity

**1. Legal Standard**

Prosecutors are absolutely immune from suit for actions taken in their capacity as prosecutors. *See, e.g., Waggy v. Spokane County Wa.*, 594 F.3d 707, 710 (9th Cir. 2010). "'A state prosecuting attorney enjoys absolute immunity from liability under § 1983 for [her] conduct in pursuing a criminal prosecution insofar as [s]he acts within [her] role as an advocate for the State and her actions are intimately associated with the judicial phase of the criminal process.'" *Id.* (alterations in original) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009)). When prosecutors are acting in their official capacity, but not performing prosecutorial functions, they are protected only by the qualified immunity that protects all public officials. *See, e.g., Buckley v. Fitzimmons*, 509 U.S. 259, 278 (1993). There is a presumption that "qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties," and only uniquely prosecutorial functions will justify granting absolute immunity to prosecutors despite that presumption. *Id*. The burden rests on the prosecutor to show that she is entitled to prosecutorial immunity. *Id.*

In *Buckley*, the lead case on prosecutorial immunity, the plaintiff alleged that "during the early stages of the investigation" of a kidnaping prosecutors knowingly selected an expert who was "allegedly well known for her willingness to fabricate unreliable expert testimony." *Id*. at 262-63. Plaintiff alleged that prosecutors had "shopped for experts until they found one who would provide the opinion they sought." *Id*. at 273. Plaintiff further alleged the prosecutors conspired to manufacture this evidence after three separate studies conducted by state and federal forensic experts failed to link the plaintiff to the evidence. *Id*. at 262. The Supreme Court held that these alleged acts were investigatory, not prosecutorial, and that prosecutorial immunity does not apply when a prosecutor is acting in an

11                                                           09cv2093

investigative capacity "during the preliminary investigation of an unsolved crime." *Id*. at 275. "When the functions of prosecutors and detectives are the same . . . the immunity that protects them is also the same," therefore the prosecutors' actions were only protected by qualified, rather than absolute, immunity. *Id*. at 276. "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial." *Id.* Before probable cause exists to arrest anyone, "[a] prosecutor neither is, nor should consider himself to be, an advocate." *Id.* at 274.

"As the Supreme Court has acknowledged, the distinction between the roles of 'prosecutor' and 'investigator' is not always clear." *al-Kidd v. Ashcroft*, 580 F.3d 949, 958 (9th Cir. 2009). "While the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom, absolute prosecutorial immunity will be given only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Id*. (citations omitted). In essence, if a prosecutor is not "preparing to prosecute or prosecuting criminal violations," then her actions are not protected by absolute immunity. *Bishop Paiute Tribe v. County of Inyo*, 291 F.3d 549, 565 (9th Cir. 2002) (citation omitted). The operative question is "whether the prosecutor's actions are closely associated with the judicial process." *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) (quoting *Milstein v. Cooley*, 257 F.3d 1004, 1009 (9th Cir. 2001)).

In *Devereaux*, the Ninth Circuit recognized "a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that is deliberately fabricated by the government." *Devereaux*, 263 F.3d at 1075. In order to state a § 1983 claim based upon a prosecutor's deliberate fabrication of evidence, a plaintiff must plead facts that, if true, would establish that: "(1) Defendants continued their investigation of [the plaintiff] despite the fact that they knew or should have known that [the plaintiff] was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Id*. at 1076. Accusations that evidence was improperly or negligently collected do

not support a § 1983 claim. *See id.* at 1076-77. "Failing to follow guidelines or carry out an investigation in a manner that will ensure an error-free result is one thing; intentionally fabricating false evidence is quite another." *Id.*

Immunity is generally a threshold issue that should be resolved at the earliest possible stage of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The significant benefit of official immunity, whether qualified or absolute, is the "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). This is why the denial of a motion for absolute or qualified immunity is immediately appealable—because once the case proceeds past the pleading stage the immunity from suit is effectively lost.

**2. Analysis**

Judge Hayes concluded that Plaintiff's "Complaint contains sufficient factual allegations to support a § 1983 claim against Dumanis and Gunn for deliberate fabrication of evidence during the investigation of Todd Sommer's death." (Doc. No.36 at 11.) The court determined that Plaintiff made "specific, non-conclusory allegations that, if proven, would be sufficient to establish that Dumanis and Gunn continued to investigate Plaintiff despite knowing or having sufficient evidence that they should have known that Todd Sommer was not murdered." *Id.* The court found that Plaintiff's allegations mirrored those made by the plaintiff in *Buckley* and specifically denied Dumanis and Gunn's motion to dismiss all claims against them based on prosecutorial immunity. *Id.* at 12.

Because Defendants lost their motion to dismiss they are no longer immune from suit and at this stage immunity can only protect them from liability. "If a plaintiff passes this initial hurdle, he or she is entitled to enough discovery to permit the court to rule on a defendant's subsequent summary judgment motion brought under Rule 56." *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 964 (2004) (citing *Mitchell,* 472 U.S. at 526).

In support of their argument to shield documents from discovery, Defendants cite to *Imbler v. Pachtman*, 424 U.S. 409 (1976.) But Defendants' reliance on *Imbler* is misplaced. Significantly, *Imbler*, was at a different procedural stage. The Supreme Court decided *Imbler* on an appeal from a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Id*. at 416. Unlike in *Imbler*, Plaintiff survived the pleading stage, thus Defendants are not immune from discovery. Since Plaintiff survived Defendants' motion to dismiss brought on the basis of prosecutorial immunity, the Court cannot  foreclose her the

discovery necessary to prove her allegations. Plaintiff will be afforded the opportunity to discover and present evidence that Dumanis and Gunn fabricated evidence during the preliminary criminal investigation. Accordingly, Defendants cannot refuse to produce documents at this stage by claiming prosecutorial immunity.

### D.     Documents Not Likely to Lead to the Discovery of Admissible Evidence

After a thorough review of Defendants' privilege log, the Court concludes that a number of the listed documents are not relevant to the claims or defenses in this litigation. Simply put, they are not likely to lead to the discovery of admissible evidence regarding whether Defendants used fabricated or contaminated evidence they knew or should have known was corrupt or false in order to investigate and prosecute Plaintiff.

Specifically, the trial witness calendar identifying trial witness names and their anticipated order of testimony (Bates No. DA/ME006902 and DA/ME006915); notes regarding prosecutor's request that the court impose limits on defense counsel's communications with the media (DA/ME006909-10); case trial notes regarding opening statements and power point presentation slides (DA/ME007080-7099); notes regarding discovery motion (DA/ME007100); email from subordinate regarding research on criminal defense attorney Robert Udell ( DA/ME007101); email regarding defense motion for new trial (DA/ME007127); email regarding developments in court reviewing rulings in criminal case (DA/ME007128); completed juror questionnaires prepared prior to jury selection in criminal case (DA/ME007144-7411) do not fall within the proper scope of discovery. Therefore, Defendants need not produce these categories of documents.

### E.     Sanctions

Plaintiff requests sanctions for "[t]he intransigence of counsel for Defendants in refusing to provide further responses to their existing discovery. . . ." (Decl. Barber ISO Mot. Compel, Doc. No. 83-2 at ¶ 12.) Plaintiff argues that Defendants actions in discovery are an attempt to "unreasonably annoy, embarrass, harass, oppress and intimidate Plaintiff . . . ." *Id.* The Court disagrees. This is a contentious case that the parties continue to zealously litigate. The Court does not find that Defendants have used the discovery process for any improper purpose. Consequently, Plaintiff's request for sanctions is denied.

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Plaintiff's motion to compel. Defendants are ORDERED to produce for the Court's in camera review the documents identified within 5 days of the filed date of this order. The Court will inform the parties when its review is complete and will provide any relevant documents to Plaintiff thereafter.

IT IS SO ORDERED.

DATED: September 22, 2011

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court