1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                            SOUTHERN DISTRICT OF CALIFORNIA

10

11   CYNTHIA SOMMER,                          Civil No.    09cv2093-WQH (BGS)

                                Plaintiff,
12                                            **ORDER: (1) REQUIRING PRODUCTION**
                                              **OF PLAINTIFF'S UN-REDACTED FEE**
13              v.                            **STATEMENTS FOR** *IN CAMERA*
                                              **REVIEW; (2)DENYING DEFENDANT**
14   UNITED STATES OF AMERICA, COUNTY         **DUMANIS'S MOTION TO COMPEL**
     OF SAN DIEGO MEDICAL EXAMINER'S          **PRODUCTION DOCUMENTS**
15   OFFICE, GLENN N. WAGNER, COUNTY
     OF SAN DIEGO DISTRICT ATTORNEY'S         **[Doc. No. 82.]**
16   OFFICE, BONNIE DUMANIS, LAURA
     GUNN,
17
                                Defendants.
18

19                                           I.

20                                    INTRODUCTION

21        Plaintiff Cynthia Sommer filed suit against various defendants, including the District Attorney,

22   Bonnie Dumanis ("Dumanis"), alleging Dumanis violated her civil rights by investigating, arresting, and

23   charging her with murder despite knowing or having had reason to know that the evidence against her

24   was false and fabricated.  (Doc. No. 1 at ¶¶ 64-65.)  Pending before the Court is Dumanis's motion to

25   compel Plaintiff to produce certain documents identified as privileged.  (Doc. No. 82.)  Dumanis seeks

26   to compel production of documents being withheld on the basis of the attorney-client privilege and work

27   product immunity.  Having considered the parties' briefs and accompanying submissions, pursuant to

28   Civil Local Rule 7.1(d)(1) the Court finds this matter suitable for disposition on the papers submitted.

                                             1

## II.

## FACTUAL BACKGROUND

Plaintiff Cynthia Sommer initiated this action by filing a Complaint September 24, 2009. (Doc. No. 1.)  Plaintiff has claims for: (1) violation of 42 U.S.C. § 1983 and (2) violation of the Federal Tort Claims Act ("FTCA").  Plaintiff alleges the following:

In February of 2002, her husband, Todd Sommer, a 23-year old Sergeant in the United States Marine Corps, died of a cardiac arrhythmia. (Doc. No. 1 at ¶ 1.) Todd Sommer collapsed in the early morning of February 18, 2002, and was pronounced dead at the hospital approximately half an hour later. *Id.* at ¶¶ 12-13.  Dr. Stephen L. Robinson performed an autopsy and concluded that Todd Sommer had died of cardiac arrhythmia but did not find any signs of poisoning. *Id.* at ¶¶ 14-18.  Dr. Robinson forwarded the report to Dr. Brian D. Blackbourne, then the Chief Medical Examiner for the County of San Diego and he agreed with Dr. Robinson that Todd Sommer had died of natural causes. *Id.* at ¶ 19. Dr. Blackbourne issued a death certificate which identified the manner of death as natural and the probable cause of death as cardiac arrhythmia of undetermined etiology. *Id.*

Plaintiff further alleges that despite the results of the autopsy and the Medical Examiner's opinion, "Defendants refused to accept those results and embarked upon an investigation intended to find criminal conduct" by Plaintiff. *Id.* at ¶ 21.  Defendants were "[d]esperate for any evidence to justify their continued investigation" and sent tissue samples to the Environmental Division of the Armed Forces Institute of Pathology ("AFIP"). *Id.* at ¶ 23.  AFIP "purportedly found extremely high levels of arsenic in two of six tissue samples," which Plaintiff contends showed that  "the samples were negligently or intentionally contaminated" because "arsenic is ubiquitous." *Id.* at ¶ 24.  All of the tissue samples, as well as Todd Sommer's blood and urine, "should have shown high levels of arsenic" if the test results were accurate. *Id.*  Jose Centeno, the lab director, "believed that the two tissue [samples] that tested positive for arsenic had likely been contaminated, possibly coming into contact with arsenic . . . ." *Id.* Accordingly, Defendants knew or should have known that AFIP was not a competent testing facility and that Defendants chose the lab because they knew "a competent testing facility would conclusively prove that Todd Sommer did not die of arsenic poisoning." *Id.* at ¶ 25.

///

09cv2093

1   "During their investigation prior to Mrs. Sommer's arrest, Defendants consulted with several

2   qualified independent forensic toxicologists . . . . [who] refused to concur in the results of the testing

3   performed by AFIP [because] the results were demonstrably false." *Id*. at ¶ 29.  Defendants Dumanis

4   and Gunn "knew or should have known during the investigation . . . that there was no evidence" that

5   Plaintiff killed Todd Sommer but that they "believed that a high-profile arrest and conviction would

6   serve their personal goals and make the D[istrict] A[ttorney's] O[ffice] famous." *Id*. at ¶¶ 32- 34.

7   Dumanis and Gunn convinced Wagner, who had left his position as head of AFIP to become the Chief

8   Medical Examiner for the County of San Diego during the Sommer investigation, to change the death

9   certificate to homicide. *Id*. at ¶ 35.

10   In addition, Wagner "knew or should have known that the AFIP test results were corrupt, false,

11   and possibly fabricated," especially in light of an email exchange between Wagner and Centeno, the

12   scientist who conducted the test. *Id.* at ¶ 36. Wagner emailed Centeno to ask for an explanation of the

13   high level of arsenic found in two samples while the other four samples and Todd Sommer's blood and

14   urine were negative and that Centeno replied that he did not have a good explanation and suspected the

15   tissue samples had become contaminated. *Id*.  Although Wagner knew or should have known that the

16   test results were fabricated, he nonetheless changed Todd Sommer's cause of death to cover up the

17   problems at AFIP and avoid "public embarrassment" and protect his "professional image." *Id*. at ¶ 39.

18   Plaintiff was arrested and charged with murdering Todd Sommer on November 30, 2005, and

19   convicted of her husband's murder on January 30, 2007. *Id*. at ¶¶ 49-50. On November 30, 2007, her

20   conviction was overturned and she was granted a new trial. *Id.* at ¶ 52.  Before a new trial took place,

21   additional tissue samples were located, and Defendants had these additional samples "tested at a highly

22   respected private testing facility in Canada." *Id.* at ¶ 54.  "None of the tissue samples showed the

23   presence of any arsenic whatsoever . . . . prov[ing] . . . Mrs. Sommer had been convicted of a crime that

24   had never occurred." *Id*. On April 17, 2008, Plaintiff was released from custody. *Id*. at ¶ 56.

25   In support of Plaintiff's claim for violation of § 1983, Plaintiff alleges the "State Defendants,"

26   including Dumanis and Gunn, "knew or had reason to know that the results of the testing conducted by

27   AFIP Environmental were corrupt, false, fabricated, and completely lacking in credibility." *Id.* at ¶ 64.

28   The State Defendants "knew or should have known that the deliberate fabrication of false evidence . . .

would result in [Plaintiff's] wrongful arrest, incarceration, and subsequent conviction . . . ." *Id.* at ¶ 65.

1   Thus, the state defendants acted with "malice and with the intent to vex, annoy, and harass Plaintiff" and

2   to "inflict severe emotional distress" on her. *Id*. at ¶ 67.  Plaintiff also alleges the District Attorney's

3   Office and the Medical Examiner's Office "had a policy and custom of using, authorizing, ratifying,

4   and/or covering up the use of corrupt, false, and fabricated evidence during their investigations." *Id.* at ¶

5   68.

6        In support of her claim for violation of the Federal Tort Claims Act, Plaintiff alleges agents and

7   employees of the United States "negligently or intentionally used fabricated or contaminated evidence

8   they knew or should have known was corrupt, false, and completely lacking in credibility" against

9   Plaintiff. *Id.* at ¶ 79. This constitutes "fraud, negligence, false imprisonment, assault, battery,

10  defamation, intentional and negligent infliction of emotional distress, and invasion of privacy." *Id*. at ¶

11  81.

12                              **III.**

13                    **DUMANIS'S MOTION TO COMPEL**

14       In her motion to compel, Dumanis argues that Plaintiff should be compelled to produce

15  documents responsive to her request for production of documents, set one, served on September 22,

16  2010.  (Doc. No. 82-1 at 2; Doc. No. 82-5, Ex. A.)  According to Dumanis, Plaintiff identified 1,945

17  pages of documents in 36 categories as privileged from discovery.  (Doc. No. 82-1 at 2.)  Dumanis

18  requests that the documents identified on the privilege log be produced. (*Id*.)  Specifically, Dumanis

19  seeks to compel Plaintiff to produce documents responsive to request nos. 4-9; 12,13; 19-21; 25-27; 34-

20  36; 38-41; and 44-46.  (*Id*.)  Dumanis also seeks un-redacted versions of documents Plaintiff produced

21  in support of her claim for attorney's fees as economic damages.  (*Id*; Doc. No. 82-5, Ex. F.)

22       Dumanis contends that the documents being withheld contain the following relevant information:

23  (1) documents supporting Plaintiff's claims for economic damages; (2) documents related to arsenic

24  poisoning and speciation; (3) documents addressing fabrication of false evidence; (4) documents relating

25  to Plaintiff's criminal defense attorney Robert Udell; (5) documents relating to Plaintiff's criminal

26  defense attorney Allen Bloom; (6) documents relating to testing Todd Sommer's biological tissues; (7)

27  discovery in the criminal case; (8) criminal investigation material; (9) and character evidence research.

28  (Doc. No. 82-1.)  Dumanis primarily argues that Plaintiff implicitly waived her right to assert attorney-

    client privilege and work product immunity by filing claims that cannot be refuted unless defendants are

1  provided with the privileged materials. (*Id.*)  In addition, Dumanis contends that Plaintiff failed to

2  timely and adequately assert the privilege with respect to: (1) redacted attorney's fees statements and (2)

3  the communications between Plaintiff's defense investigator or counsel and an expert witness, Alphonse

4  Poklis. (*Id.*)

5        In her opposition to Dumanis's motion to compel, Plaintiff states that upon further review of

6  email communications between her criminal defense attorney and expert witnesses in the criminal case,

7  she would produce "communications and reports to the extent they were to or from the testifying expert

8  and relate to the subject matter of their testimony in the criminal proceeding." (Doc. No. 91 at 2.)  Thus,

9  many of the communications between Plaintiff's investigator or counsel and Mr. Poklis are no longer at

10  issue for the purpose of this motion to compel.

11        In addition, Plaintiff contends: (1) there is no support for Dumanis's claim that Plaintiff

12  impliedly waived the attorney-client privilege and work product immunity by filing an action alleging

13  defendants knew or had reason to know that the results of the testing conducted by AFIP Environmental

14  were corrupt, false, fabricated, and completely lacking in credibility; (2) Dumanis has not demonstrated

15  that any of Plaintiff's work product qualifies for an exception such that the Court should order

16  disclosure; and (3) her privilege claims were adequately and timely asserted. (*Id.*)

17        **A.**      **THE ATTORNEY-CLIENT PRIVILEGE'S APPLICATION TO FEE STATEMENTS**

18            **1. Legal Standard**

19        "Parties may obtain discovery regarding any matter, ***not privileged***, that is relevant to the claim

20  or defense of any party. . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added).  The burden of proving that the

21  attorney-client privilege applies rests not with the party contesting the privilege, but with the party

22  asserting it. *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 25 (9th Cir.

23  2005). The Ninth Circuit typically applies an eight part test to determine whether material is protected

24  by the attorney-client privilege:

25        (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his
      capacity as such, (3) the communications relating to that purpose, (4) made in confidence

26        (5) by the client, (6) are at his instance permanently protected (7) from disclosure by
      himself or by the legal adviser, (8) unless the protection be waived.

27  *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th Cir.1992) (quoting *United States v.*

28  *Margolis (In re Fischer)*, 557 F.2d 209, 211 (9th Cir.1977)).  "The privilege is limited to 'only those

disclosures—necessary to obtain informed legal advice—which might not have been made absent the

      09cv2093

1  privilege.'" *Id.* at 1070 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).  "The

2  attorney-client privilege [also protects] an attorney's advice in response" to a client's request for legal

3  advice. *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir.1997) (citation omitted).

4  Ninth Circuit "decisions have recognized that the identity of the client, the amount of the fee, the

5  identification of payment by case file name, and the general purpose of the work performed are usually

6  not protected from disclosure by the attorney-client privilege." *U.S. v. Almani,* 169 F.3d 1189, 1194 (9th

7  Cir. 1999) (citing *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992)).  But

8  bills, statements or time records that "also reveal the motive of the client in seeking representation,

9  litigation strategy, or the specific nature of the services provided, such as researching particular areas of

10  law, fall within the privilege." *Clarke,* 974 F.2d at 129 (citations omitted).  "A district court may

11  conduct an in camera inspection of alleged confidential communications to determine whether the

12  attorney-client privilege applies." *Id*.

13  **2. Analysis**

14  Dumanis's Request for Production ("RFP") nos. 4-9 ask for documents supporting Plaintiff's

15  claims for economic damages.  (Doc. No. 82-1 at 11; 82-5, Ex. A.)  In response, Plaintiff produced

16  redacted attorney's fee statements stemming from a matter involving three of her children.  (*Id*. at 12;

17  *see also* Doc. No. 82-5, Ex. F.)  Plaintiff redacted the description of the work performed as well as the

18  amount of the fee charged for each specific item of work.  (Doc. No. 82-5, Ex. F.)  Dumanis argues that

19  Plaintiff implicitly waived the attorney-client privilege with respect to these statements because she is

20  claiming attorney's fees "in child related matters as part of her economic damages."  (Doc. No. 82-2 at

21  12.)

22  Because the attorney-client privilege only protects fee statements to the extent they reveal the

23  motive of the client in seeking representation, litigation strategy, or research into particular areas of law,

24  it is not clear whether the redacted portions of the fee statements are truly privileged.  In order to

25  determine whether the privilege applies to redacted portions of the fee statements, the Court will

26  conduct an in camera inspection of these documents.  Accordingly, Plaintiff must produce un-redacted

27  versions of the fee statements for the Court's in camera review.

28

09cv2093

1    In the event the Court determines that descriptions of the services rendered are not covered by

2    the attorney-client privilege, Plaintiff will be ordered to produce to Dumanis un-redacted copies of those

3    statements.

4    On the other hand, if the Court determines that descriptions of the services rendered reveal

5    Plaintiff's motive in seeking representation, litigation strategy, or particular areas of law researched; for

6    the reasons set forth below, Dumanis's motion to compel on the basis of implied waiver is DENIED.

7    The doctrine of implied waiver exists to prevent a party from using the attorney-client privilege

8    or work product immunity as both a shield and a sword. *See e.g.*, *Chevron Corp. v. Penzoil Co.,* 974

9    F.2d 1156, 1162 (9th Cir. 1992).  To determine whether implied waiver applies, the Ninth Circuit

10   follows a three-part test:

11   First, the court considers whether the party is asserting the "privilege as the result of
     some affirmative act, such as filing suit." Second, the court examines whether "through
12   this affirmative act, the asserting party puts the privileged information at issue." Finally,
     the court evaluates whether "allowing the privilege would deny the opposing party access
13   to information vital to its defense."

14   *U.S. v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1995) (quoting *Home Indem. Co. v. Lane Powell Moss &*

15   *Miller*, 43 F.3d 1322, 1326 (9th Cir.1995) (citations omitted)). "When the sought-after evidence is 'only

16   one of several forms of indirect evidence about an issue,' the privilege has not been waived." *U.S. v.*

17   *Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (quoting *Hamilton v. Lumsden* (*In re Geothermal*

18   *Resources Int'l, Inc.*), 93 F.3d 648, 653 (9th Cir.1996) (per curiam) (internal citations omitted).

19   Dumanis argues Plaintiff has put the privileged information contained in the fee statements at

20   issue by claiming attorney's fees incurred in her child related matters as an aspect of economic damages.

21   (Doc. No. 82-1 at 12.)  Dumanis further argues that Plaintiff waived the privilege with respect to  these

22   billing statements because she produced portions identifying the amount charged but redacted portions

23   providing the description of the work performed. (*Id*.)

24   Dumanis's contention is unavailing.  "Mere relevance to defendant's case is not sufficient" to

25   order disclosure. *1st Security Bank of Washington v. Eriksen,* No. 06-cv-1004, 2007 WL 188881, at * 3

26   (W.D. Wash. Jan. 22, 2007).  Plaintiff has not placed the attorney-client relationship directly at issue by

27   including attorneys' fees as a measure of damages in this civil suit.  Plaintiff properly produced what she

28   believes are the non-privileged portions of the billing statements and only redacted what would

potentially fall under the protection of the privilege.  The legal advice and services Plaintiff received

1    during child related matters is not an aspect of her claims or Dumanis's defenses in this civil suit.

2    Moreover, the information that would be found in privileged communications are not vital to defending

3    against Plaintiff's allegation that Dumanis and other state defendants violated her constitutional rights.

4    Thus, the Court does not find that Plaintiff waived the attorney-client privilege with respect to validly

5    privileged portions of the billing statements.

6    **B.**      **DOCUMENTS PREPARED BY PLAINTIFF'S CRIMINAL DEFENSE ATTORNEYS AND THEIR AGENTS QUALIFY AS PROTECTED WORK PRODUCT**

7

8    **1. Legal Standard**

9    Asserting the work product doctrine is not an assertion of a privilege, but an assertion of a

10    qualified immunity. *Admiral Ins. v. U.S.D.C. (Ariz.)*, 881 F.2d 1486, 1494 (9th Cir. 1989). The work

11    product doctrine protects from discovery material obtained and prepared by an attorney or the attorney's

12    agent in anticipation of litigation or preparation for trial. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329

13    U.S. 495, 509-12 (1947). The primary purpose of the work product rule is to "prevent exploitation of a

14    party's efforts in preparing for litigation." *Admiral Ins.*, 881 F.2d at 1494.

15    Work product is divided into two general categories: (1) ordinary work product—also known as

16    "qualified" work product, and (2) opinion work product—also known as "absolute" work product.

17    "Qualified" work product protects an attorney's factual investigations, and "absolute" work product

18    protects an attorney's mental impressions, legal strategies and so forth. *See Baker v. General Motors*

19    *Corp.,* 209 F.3d 1051, 1054 (8th Cir. 2000). The party seeking qualified work product has the burden of

20    demonstrating a substantial need for work product, as well as an inability to obtain the information from

21    other sources without undue hardship. *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981). In

22    contrast, because opinion work product enjoys almost absolute immunity, a party seeking such work

23    product "must make a showing beyond the substantial need/undue hardship test . . . . [O]pinion work

24    product may be discovered and admitted when mental impressions are at issue in a case and the need for

25    the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.

26    1992).

27    ///

28    ///

## 2. Analysis

The documents Dumanis's RFPs seek constitute Plaintiff's criminal defense attorneys' files from the underlying murder trial.  These documents qualify as protected work product because they were prepared on behalf of Plaintiff—a party to both the prior and current litigation.  *See F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983); *see also Tennison v. City and County of San Francisco, et. al.,* 226 F.R.D. 615, 620 (N.D. Cal. 2005) (applying work product protection to documents generated in a prior criminal case where the plaintiff in the current civil action was the criminal defendant).   Dumanis seeks both "qualified" work product, as well as "absolute" or "opinion" work product created during Plaintiff's criminal case.

RFP Nos. 12-13

Dumanis's RFP nos. 12 and 13 ask for all documents related to arsenic and arsenic speciation. (Doc. No. 82-1 at 12.)  Plaintiff withheld documents such as journal articles regarding arsenic poisoning, case law research, notes and memoranda prepared by defense attorneys and their agents, notes relating to testing performed by AFIP, emails and memoranda to and from defense consultants regarding arsenic poisoning and speciation, etc.  (Doc. No. 81-5 at Ex. D.)  All of these documents were used in developing case strategy to defend against murder allegations.  Dumanis, however, contends that Plaintiff implicitly waived work product protection by filing this civil suit alleging defendants "knew or had reason to know that the results of the testing conducted by AFIP Environmental were corrupt, false, fabricated, and completely lacking in credibility."  (Doc. No. 1 at ¶ 65.)

As explained above, the doctrine of implied waiver exists to prevent a party from using the attorney-client privilege or work product immunity as both a shield and a sword.  *See e.g.*, *Chevron Corp.,* 974 F.2d at 1162.

Dumanis cites to *Tennison* in support of her contention that Plaintiff implicitly waived work product protection.  226 F.R.D. 615; *see also* Doc. No. 82-1 at 9-10.  The Court finds *Tennison* inapposite.  In *Tennison*, plaintiff alleged that defendants violated his constitutional rights by suppressing exculpatory evidence and relying on perjured testimony.  226 F.R.D. at 622.  To prove his claim, plaintiff also had to establish that at the time of his criminal trial neither he nor his attorney new about the exculpatory evidence.  *Id.*  This is because a *Brady* violation does not occur if the defendant knew or should have know the essential facts permitting him to take advantage of any exculpatory

1   information.  *Id.* (referring to *Brady v. Maryland,* 373 U.S. 83 (1963)).  Thus, plaintiff's and his

2   counsel's knowledge was "relevant to both the existence of a substantive constitutional violation as well

3   as causation of damages" in the civil action.  *Id.*  The court reasoned that to the extent the defense

4   attorney's documents disclose "knowledge of evidence suppressed or falsity of the testimony procured,"

5   the documents are vital to the opposing party's defense against plaintiff's constitutional claims.  *Id.*  The

6   court, however, made sure to narrowly tailor the waiver and limited disclosure to what was necessary to

7   assure fairness to defendants.  *Id*. at 623.  Accordingly, the court limited the waiver solely to fact work

8   product, reasoning that there was no need to explore the attorney's mental impressions and opinions.  *Id.*

9   The court emphasized: "All that is relevant is what [counsel] knew or was told, not his subjective

10  opinions."  *Id.*

11          Unlike a claim alleging a *Brady* violation, Plaintiff's *Devereaux* claim does not put privileged

12  information at issue.  *See Devereaux v. Abbey,* 263 F.3d 1070 (9th Cir. 2001).  In this case, Plaintiff

13  filed suit alleging Dumanis and other state defendants violated her constitutional rights by fabricating

14  false evidence and continuing to investigate and prosecute her for murder despite knowing that she was

15  innocent.  To succeed on her *Devereaux* claim, she must, at a minimum, point to evidence that supports

16  the proposition that "Defendants continued their investigation of [her] despite the fact that they knew or

17  should have known that [s]he was innocent."  *Devereaux,* 263 F.3d at1076.  Thus, Plaintiff's civil suit is

18  not predicated on what she or her attorney knew during the criminal proceedings.  Rather, her claim is

19  based on what ***Defendants*** knew at that time.  Neither ordinary work product nor the opinions and

20  mental impressions of Plaintiff's defense attorneys have any bearing on Dumanis's ability to defend

21  herself in this case.

22          Because Plaintiff is not using the privilege as both a sword and a shield, and because the

23  information in her attorneys' files is not vital to Dumanis's defense, the Court does not find that Plaintiff

24  impliedly waived the attorney-client privilege or work product immunity.  Thus, Dumanis's motion to

25  compel further production on the basis of implied waiver is DENIED.

26          RFP Nos. 19-21

27          Dumanis's RFP nos. 19 through 21 ask for all documents related to the fabrication of false

28  evidence by Gunn, Dumanis or Wagner.  (Doc. No. 82-1 at 14.)  Plaintiff responded to the request and

    identified documents including portions of the criminal trial transcript and certain exhibits as being

1   responsive to the requests.  (*Id*. at 15.)  Dumanis, however, argues that Plaintiff's response is

2   "frivolously non-responsive."  (*Id*.)   Dumanis further contends that Plaintiff "should either be required

3   to produce responsive documents that relate to fabrication of false evidence by defendants Gunn,

4   Dumanis or Wagner, or respond that she knows of no such documents, or else forfeit any claims or

5   contentions that [they] were involved in any way with fabrication of false evidence.  (*Id.)*

6         Plaintiff represents that "she has identified all documents in her possession responsive to this

7   request."  (Doc. No. 91 at 8.)  Dumanis has not provided the Court with any facts or argument indicating

8   that Plaintiff's response is not truthful.  Thus, the Court finds that Plaintiff adequately responded to

9   these RFPs and no further production is warranted.  Accordingly, Dumanis's motion to compel is

10   DENIED.

11   RFP Nos. 25 and 26

12         RFP nos. 25 and 26 ask for all documents that mention or relate to Robert Udell or Allen

13   Bloom—Plaintiff's criminal defense attorneys.  (Doc. No. 82-1 at 15; *see also* Doc. No. 82-5, Ex. A at

14   6.)  Plaintiff objected to the request as calling for the production of attorney-client privileged

15   communications and work product.  Plaintiff also objected to the requests as being vague, ambiguous,

16   overbroad, and calling for documents outside the scope of relevant discovery.  (Doc. No. 82–5, Ex. B at

17   26.)

18         In her motion to compel, Dumanis appears to contend that she needs documents mentioning or

19   relating to Mr. Udell and Mr. Bloom because Plaintiff's largest item of claimed economic damages

20   stems from their fees.  (Doc. No. 82-1 at 16-18.)  Dumanis also argues that she is entitled to discovery of

21   any documents mentioning or referring to Mr. Udell and Mr. Bloom because they will "shed light" on

22   why the claims asserted against defendants in this civil action are "thoroughly inconsistent with the

23   strategy and tactics employed by Mr. Udell and Mr. Bloom in the criminal case."  (*Id.* at 18.)

24         Documents mentioning or relating to Mr. Udell and Mr. Bloom that are identified on Plaintiff's

25   privilege log constitute protected work product.  All of these documents were prepared by Plaintiff's

26   attorneys or their agents on her behalf and in anticipation of criminal litigation.  Thus, none of these

27   documents are discoverable unless Dumanis, as the party seeking the work product, demonstrates that

28   the protection should be overcome.

///

09cv2093

1    ///

2        To overcome work product immunity Dumanis must establish that she has a substantial need for

3    the information, as well as an inability to obtain it from other sources without undue hardship.  *Upjohn*

4    *Co.*, 449 U.S. at 400.  For absolute work product, Dumanis must demonstrate that mental impressions

5    are at issue in this case and her need for the work product is compelling.  *Holmgren,* 976 F.2d at 577.

6        Dumanis has not demonstrated that she has a substantial need for qualified work product or that

7    she could not discover the information from other sources without undue hardship.  Dumanis's asserted

8    need for the work product is that Plaintiff's largest claim for economic damages arises from Mr. Bloom

9    and Mr. Udell's fees.  (Doc. No 82-1 at 18-19.)  But Dumanis's desire to more fully understand

10   Plaintiff's justification for claiming significant attorneys' fees as damages does not equate to a

11   substantial need for the wholesale disclosure of sensitive criminal defense files.  Moreover, it is not

12   clear that Dumanis cannot obtain the necessary fee information elsewhere without undue hardship.  In

13   addition, Dumanis has not demonstrated that the mental impressions and opinions of Plaintiff's criminal

14   defense attorneys are at issue in this litigation.  This civil suit arises from what Plaintiff alleges

15   Defendants knew or should have known with respect to the fabrication of false evidence.  The trial

16   strategy and tactics employed by her criminal defense attorneys are not at issue in this case.

17   Furthermore, Plaintiff's work product is not vital to Dumanis's defense against the *Devereaux* claim.

18   Accordingly, Dumanis's motion to compel documents mentioning or relating to Mr. Udell and Mr.

19   Bloom is DENIED.

20   RFP Nos. 27, 34-36, 38-41, and 44-46

21       All of these RFPs seek documents that fall under the protection of the work product doctrine.

22   For example, RFP no. 27 asks for all documents relating to testing or re-testing tissues or other items

23   from Todd Sommer's body.  (Doc. No. 82-1 at 20.)  RFP nos. 34-36, 38-41, and 44-46 all specifically

24   ask for documents described on Plaintiff's original privilege log.  (*Id.* at 20-24.)   For instance, RFP no.

25   34 asks for research regarding arsenic poisoning.  (*Id.* at 20.)  RFP nos. 35 and 36 ask for research and

26   attorney notes regarding discovery issues in the criminal case.  (*Id*. at 21).  RFP no. 38 seeks

27   correspondence between criminal defense counsel and the defense investigator. ( *Id.*)  RFP. No. 39 asks

28   for attorney notes regarding character evidence.  (*Id.* at 22.)  RFP no. 40 seeks attorney notes regarding

     additional tissue testing; no. 41 asks for correspondence between Plaintiff's criminal defense attorneys

1  regarding case strategy; no. 44 asks for correspondence between defense counsel and the defense

2  investigator regarding purchasing arsenic; and P no. 45 seeks case research regarding fatal arsenic

3  poisoning. (*Id*. at 24.)  Lastly, RFP no. 46 asks for Plaintiff's attorneys' notes regarding experts.  (*Id*.)

4  Not surprisingly, Plaintiff objects to producing these documents because they call for disclosure of

5  protected work product.  (Doc. No. 91 at 4-5.)

6          Dumanis contends that these documents are discoverable because Plaintiff implicitly waived

7  work product protection by filing this action claiming that defendants knew or should have known that

8  results of the testing conducted by AFIP Environmental were corrupt, false, fabricated, and completely

9  lacking in credibility.  As addressed earlier, Plaintiff's civil suit does not present an instance where the

10 privilege against disclosure is impermissibly used as both a sword and a shield.  The Court does not find

11 that any of the information being sought in these requests is vital to Dumanis's defense.  Dumanis and

12 the other state defendants are able to defend against Plaintiff's *Devereaux* claim by showing that they

13 did not know or have reason to know that the evidence was false and fabricated.  Their defense does not

14 require any information about what Plaintiff's criminal defense attorneys knew at the time.

15 Significantly, the touchstone for the Court to find implied waiver is fairness.  *U.S. v. Ortland*, 109 F.3d

16 539, 543 (9th Cir. 1997.)  Maintaining the confidentiality of the facts and circumstances surrounding

17 Plaintiff's criminal defense strategy is not in any way unfair.  Accordingly, the Court finds that Plaintiff

18 has not waived work product protection with respect to any of these documents.  Dumanis's motion to

19 compel further production is DENIED.

20          C.      **PLAINTIFF HAS NOT WAIVED THE PRIVILEGE BASED ON AN UNTIMELY OR BLANKET
                ASSERTION**

21

22          **1. Legal Standard**

23          Pursuant to Fed.R.Civ.P. 26(b)(5), when a party withholds information otherwise discoverable

24 by claiming the information is privileged or protected work product, the party must expressly make the

25 claim and describe the nature of the documents not disclosed in a manner that enables other parties to

26 assess the privilege claim.  Fed.R.Civ.P. 26(b)(5).  "Thus, Rule 26 clarifies that a proper assertion of a

27 privilege must be more specific than a generalized, boilerplate objection."  *Burlington Northern & Santa*

28 *Fe Ry. Co. v. United States*, 408 F.3d 1142 (9thCir. 2005).  Fed.R.Civ.P. 34 requires a party to respond

   in writing to a request for production within 30 days of being served with the request.  "[T]he response

1  must either state that inspection . . . will be permitted as requested or state an objection to the request,

2  including the reasons." Fed.R.Civ.P. 24(b)(2)(B).

3                    **2. Analysis**

4          Plaintiff served an initial privilege log on April 20, 2010 in conjunction with her Fed.R.Civ.P.

5  26(a)(1) initial disclosures. (Doc. No. 91 at 3.) Dumanis contends that Plaintiff waived the privilege

6  with respect to documents responsive to RFP nos. 4-9 and 12-13 by failing to assert the privilege for

7  these documents in her original privilege log and by making blanket privilege claims. (Doc. No. 82-1 at

8  12, 15.)

9          Plaintiff, however, did not have an obligation to produce a privilege log at the time she served

10  her initial disclosures because Defendants had yet to propound document requests. *See* Doc. No. 82-5,

11  Ex. A. Fed.R.Civ.P. 26(a)(1)(A)(ii) does not require production of any documents. Rather, Rule

12  26(a)(1)(A)(ii) only requires disclosure of documents that the party intends to use, not documents that

13  may be used to respond to the opposing party's discovery. *See* Advisory Comm. Notes to 2000

14  Amendments. In addition, "[t]he disclosing party does not, by describing documents under [Rule

15  26(a)(1)(A)(ii)], waive its right to object to production on the basis of privilege or work product

16  protection. . . ." Advisory Committee Notes to 1993 Amendments. Therefore, the fact that Plaintiff did

17  not serve a comprehensive privilege log with her initial disclosures does not constitute waiver of the

18  privilege due to untimeliness.

19          The Court also does not find that Plaintiff made a blanket assertion of the privilege with respect

20  to redacted portions of her attorney's billing statements. All that Rule 26(b)(5) requires when a party

21  withholds information otherwise discoverable as privileged is that the party make the claim and describe

22  the documents in a manner that enables other parties to assess the claim. Fed.R.Civ.P. 26(b)(5).

23  Plaintiff satisfied this requirement. Because Plaintiff produced redacted versions of the billing

24  statements, Dumanis learned who created the document, the recipient of the communication, the date of

25  the communication, and the overall description of the matter. (Doc. No. 82-5, Ex. F.) All that Plaintiff

26  redacted were itemized descriptions of the services the attorney rendered for each specific billing entry.

27  (*Id*.) The information provided was more than sufficient to enable Dumanis to assess the privilege

28  claim.

14                                                                                      09cv2093

1   Similarly, the Court does not find that Plaintiff's assertion of the privilege with respect to her

2   response to RFP nos. 12 and 13 constituted an impermissible blanket refusal to produce privileged

3   documents.  For each response, Plaintiff asserted the privilege, identified responsive documents by bates

4   number, type of communication, date, and included a brief description of the document's content.  (Doc.

5   No. 82-5, Ex. B.)  Plaintiff also entered responsive documents in her Second and Third Amended

6   Privilege Log. (*Id*. at Ex. B & D.)  Accordingly, the Court does not find that the privilege was

7   inadequately asserted.

8   After analyzing Plaintiff's privilege log and responses to the RFPs, the Court determines that

9   Plaintiff has not waived the attorney-client privilege or work product doctrine due to either an untimely

10  or blanket assertion of the privilege.  Dumanis's motion to compel further production is DENIED.

11                                                    **IV.**

12                                              **CONCLUSION**

13  For the foregoing reasons, the Court **DENIES** Dumanis's motion to compel further production

14  of documents.

15  Plaintiff, however, is **ORDERED** to produce un-redacted billing statements for the Court's in

16  camera review within 5 days of the filed date of this order.  The Court will determine whether the

17  redacted portions are appropriately privileged, and accordingly, whether Plaintiff may be required to

18  produce un-redacted billing statements to Dumanis.

19  IT IS SO ORDERED.

20

21  DATED:  October 3, 2011

22

23  Hon. Bernard G. Skomal
    U.S. Magistrate Judge
24  United States District Court

25

26

27

28